UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ERIC P. MAINS,<br><br>            Plaintiff,<br><br>   v.<br><br>CITIBANK, N.A. as TRUSTEE for the<br>WAMU-HE2 Trust, CHASE BANK, N.A.,<br>CYNTHIA RILEY, NELSON &<br>FRANKENBERGER, P.C., CHRISTINE A.<br>SAUERER, JODI SOBOTTA, BLACK<br>KNIGHT Financial Services, LLC (formerly<br>LPS), WASHINGTON MUTUAL BANK,<br>BOSE MCKINNEY & EVANS, LLP, and<br>UNKNOWN JOHN DOES,<br><br>            Defendants. | Case No. 4:15-cv-00036 SEB-WGH |

**MEMORANDUM IN SUPPORT OF DEFENDANT BLACK KNIGHT INFOSERV,
LLC'S (MISNAMED "BLACK KNIGHT FINANCIAL SERVICES, LLC")
<u>MOTION TO DISMISS</u>**

Defendant Black Knight InfoServ, LLC[1] f/k/a Lender Processing Services, Inc. ("Black

Knight"), hereby files its Memorandum of Law in support of its motion to dismiss.  For the

reasons set forth more fully herein, Plaintiff's Complaint should be dismissed in its entirety.

<u>INTRODUCTION</u>

Plaintiff Mains seeks to improperly have this Court sit as a *de facto* appellate court and

review and set aside the foreclosure judgment rendered by the Clark County Indiana Circuit

Court in *Citibank, N.A. as Trustee for the WaMu Series 2007-HE2 Trust v. Mains*, case number

10C01-1004-MF-000248, and the decision of the Indiana Court of Appeals affirming the

foreclosure judgment, Case No. 10A04-1309-MF-450, *transfer denied*.  As Plaintiff concedes, he

challenged the mortgagee's standing to foreclose and ownership of the promissory note

---

[1]  Misnamed Black Knight Financial Services, LLC in the Complaint.

throughout the state court proceedings. His claims herein are based entirely upon the same theories rejected by both the Circuit Court and the Indiana Court of Appeals.

Black Knight was not a party to the foreclosure. Mains does not allege that it is the lender, loan servicer, mortgagee or holder of the note. Nor does Plaintiff allege that Black Knight ever communicated with him regarding the mortgage or in connection with any attempt to collect payments due on the note. Rather, Plaintiff alleges that Black Knight is a vendor that provides services and software to its customers in the mortgage industry. The only specific factual allegation that Plaintiff directs to Black Knight is that its employees "robo-signed" an assignment of mortgage to Citibank as Trustee that he characterizes as defective and fraudulent. Plaintiff also suggests that software provided by Black Knight to Chase (the loan servicer) or Citibank (the mortgagee) was used to create unspecified, false mortgage-related documents and assist Chase and its counsel in the foreclosure process.

Based upon the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to review and reject the state court judgment rendered in the foreclosure proceeding or to entertain claims for harm resulting from the judgment. Even were this not the case, Plaintiff lacks standing to challenge or base claims upon the allegedly flawed assignment or defects in the securitization process resulting from purported violations of the Pooling and Servicing Agreement.[2]

Moreover, each of the claims asserted by Plaintiff against Black Knight is fatally flawed and should be dismissed pursuant to Rule 12(b)(6).[3] The Complaint violates both Rules 8 and 9,

---

[2] All of Plaintiff's claims are predicated upon the theory that Citibank did not own the note or the mortgage.

[3] While the Complaint is not a model of clarity, Counts One through Four and Ten of the Complaint, on their face, are not directed at Black Knight. If Plaintiff asserts that these Counts were intended to be directed at Black Knight, Defendant reserves its right to address them on Reply as each is also subject to dismissal.

as it is convoluted, confusing, over-long and fails to plead fraud with specificity. Plaintiff cannot, as a matter of law, establish detrimental reliance to support either his claims of negligent misrepresentation or fraud. Nor can he establish that any alleged representation made by Black Knight was material. Further, he cannot and does not allege that false information was provided to him for guidance in his business affairs as is required to support a claim for negligent misrepresentation. He alleges no duty or breach of duty to support his separate negligence claim, which appears to actually only allege misrepresentations.

Plaintiff's statutory claims fare no better. The FDCPA claim must be dismissed because Plaintiff cannot establish that Black Knight was a debt collector or engaged in debt collection activity with respect to his loan. He cannot establish RICO standing as there is no causal connection between the alleged injury and any act by Black Knight. Nor can he establish the existence of a RICO enterprise, pattern or conspiracy.

Plaintiff freely concedes that he defaulted on his mortgage loan in 2009, before the Assignment was even executed. The foreclosure was filed on April 20, 2010. His Answer, filed June 17, 2010 includes affirmative defenses challenging Citibank's standing and ownership of the note. As of 2010, based upon his own allegations, Plaintiff was on notice that a foreclosure was proceeding in which he purportedly did not believe the owner of the note and mortgage was the plaintiff. The instant action was filed on March 20, 2015. The one year statute of limitations bars his claims for FDCPA violations. It appears that other claims may also be untimely, and Black Knight reserves its right to raise this defense if it is required to answer.

Plaintiff's Complaint is fatally flawed in a number of respects. For the reasons set forth herein, the Complaint should be dismissed in its entirety with prejudice.

**<u>ARGUMENT</u>**

Black Knight moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim based upon Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. In determining its subject matter jurisdiction, the Court is required to "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff," yet, if necessary, may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir.2007).

The Supreme Court has advised that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).

The Supreme Court subsequently expanded on its holding in *Twombly* by explaining in *Ashcroft v. Iqbal* that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly* at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*See* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Thus, under the *Iqbal-Twombly* standard, the Court must first identify and reject any legal conclusions unsupported by

factual allegations and disregard them as not being entitled to a presumption of truth. Second, the Court must determine whether, assuming the veracity of the factual allegations, the complaint alleges facts sufficient to suggest that the plaintiff is plausibly entitled to relief.

A.    **The *Rooker-Feldman* Doctrine Divests This Court of Jurisdiction.**

The factual basis underlying all of Plaintiff's claims is broadly stated in Paragraphs 32 and 34 of the Complaint. Amended Complaint (Dkt. 23) ("Complaint"). Mains alleges: that his note and mortgage were not timely transferred into the WAMU HE-2 Trust (the "Trust") and the foreclosure judgment against him was based upon defective or missing documents(¶ 32); that it is "possible" that collateral payments from other sources may not have been credited to his loan (¶ 34A); that the Trust did not properly acquire his loan (¶ 34B); that the transfer of his loan to the Trust was in violation of the Pooling and Servicing Agreement and that documents relating to the transfer were flawed (¶ 34C); and that Citibank as Trustee is not the holder of his note (¶ 34D). In sum, Plaintiff contends that the plaintiff in his foreclosure was not the real party in interest and lacked standing to foreclose. All of these issues were or could have been raised during the foreclosure proceeding and Plaintiff concedes that they were raised both before the trial court and on appeal. *See* Complaint, ¶¶ 51 (listing issues raised before the Clark County Circuit Court), 54-55 (listing issues raised on appeal). Indeed, in his Answer, filed June 17, 2010, Plaintiff asserted in his first affirmative defense that Citibank as Trustee "may not be the real party in interest, the true owner of the obligation." Answer of Defendant, attached hereto as Exhibit "A". Plaintiff improperly seeks to relitigate these issues before this Court. Because the *Rooker-Feldman* Doctrine divests this Court of subject matter jurisdiction to effectively sit as an appellate court and review the rulings made in Mains' foreclosure, this case should be dismissed.

It is well established that a federal court must first determine whether it possesses subject matter jurisdiction before it proceeds to any aspect of the merits of a case. *Warth v. Seldin*, 422

U.S. 490, 498 (1975).  The *Rooker-Feldman* Doctrine "deprives federal courts of subject matter jurisdiction where a party … sues in federal court seeking to set aside the state court judgment and requesting a remedy for an injury caused by that judgment." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).  The doctrine applies "not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with the state court determination." *Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008).

*Rooker-Feldman* also applies when a plaintiff's action seeks damages rather than equitable relief from the state court judgment.  *Nora v. Residential Funding Co., LLC*,  543 F. App'x 601, 602 (7th Cir. 2013); *Davis v. Countrywide Home Loans, Inc.*, U.S.D.C. S.D. Ind. Case No. 1:10-cv-1303, 2011 WL 837048 at *3 (S.D. Ind. March 4, 2011) (dismissal of federal causes of action for damages including RICO and FDCPA claims based upon allegations of robo-signing).  The doctrine also applies even when the federal action joins new parties that were not parties to the state court proceeding.  *Iqbal v. Patel*, U.S.D.C. N.D. Ind. Case No. 2:12 Cv 56, 2014 WL 1329403 at *5 (N.D. Ind. March 27, 2014) *citing Lambeth v. Miller*, 363 F. App'x 565, 568-69 (10th Cir. 2010) and *Lance v. Dennis*, 546 U.S. 459 (2006).

The Seventh Circuit has recently decided a number of cases seeking to challenge foreclosure judgments and has upheld their dismissals based upon the *Rooker-Feldman* doctrine.  *See Nora v. Residential Funding Co., LLC*,  543 F. App'x 601 (allegations of fraudulent assignments); *Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706-707 (7th Cir. 2013) (same); *Sheikhani v. Wells Fargo Bank*, 577 F. App'x 610, (7th Cir. 2014) (allegations of violations of a pooling and servicing agreement); *Ross-West v. Bank of New York Mellon Corp.*, 523 F. App'x 395, 395-96 (7th Cir. 2013); *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204

(7th Cir. 2011) (alleged RICO conspiracy to foreclose); *Kelly v. Med-1 Solutions, LLC*, 548 F.3d at 605 (allegedly fraudulent foreclosure) (additional citations omitted).

*Rooker-Feldman* "precludes lower federal court jurisdiction over claims seeking review of state court judgments … no matter how erroneous or unconstitutional the state court judgment may be." *Kelly v. Med-1 Solutions, LLC*, 548 F.3d at 603.  The state court litigant's remedy lies within the state appellate process only; only the Supreme Court may review a decision rendered by a state's highest court.  *Id.*  Mains has exhausted his state court appellate remedies.  He appealed the trial court's judgment of foreclosure, it was affirmed and the Indiana Supreme Court denied his Motion to Transfer.  Complaint, ¶¶ 52 – 56.  He apparently did not petition the Supreme Court for review.  He cannot now attempt to have this Court reject the state court's judgment; this Court lacks subject matter jurisdiction to do so.

The injury Plaintiff seeks compensation for is the foreclosure judgment itself.  Where the injury flows from the state court judgment itself, the application of *Rooker-Feldman* is particularly appropriate.  *Sheikhani v. Wells Fargo Bank*, 526 F. App'x 706-707.  Plaintiff may complain that his payments were not properly applied or that collateral payments should have reduced the amount due, however, the trial court specifically held that "the sum of $271,452.17 as of the November 7, 2012" was due and payable to Citibank as Trustee.  Summary Judgment and Decree of Foreclosure, attached hereto as Exhibit "B".[4]  He may claim he does not know who was entitled to foreclose or to whom his payments were due, but this issue was adjudicated as well.  As the Seventh Circuit has stated, "[t]he general rule is that district courts have no jurisdiction to adjudicate 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

---

[4]  The summary judgment was entered on May 2, 2013.  It was amended by Order entered June 5, 2013 to reflect that the Mains had filed a response to Citibank's motion for summary judgment.  The Amendment is included within the exhibit.

district court review and rejection of those judgments." *Nora v. Residential Funding Co., LLC*, 543 F. App'x at 602 *quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This is no reason that this Court should deviate here from the general rule. Plaintiff's Complaint should be dismissed.

### B. Plaintiff Lacks Standing to Base Claims upon Alleged Flaws in the Assignment or Non-Compliance with the Terms of the PSA.

Plaintiff's claims are based entirely upon the theory that the mortgagee was not the proper party to foreclose upon his property because of alleged noncompliance with Pooling and Servicing Agreement ("PSA") governing the Trust[5] and because the May 26, 2009 Assignment was technically flawed. As a matter of law, Plaintiff lacks standing to assert claims based upon the PSA or the Assignment. Plaintiff is not a party to either agreement and, as a stranger to the contract, lacks standing to assert any of his claims.

"The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power." *Hosler ex rel Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 197 (Ind. Ct. App. 1999), *trans. denied*. It is well established law in Indiana that a claim or defense based upon a contract may only be asserted by a party to the agreement. *Nahmias Realty, Inc. v. Cohen,* 484 N.E.2d 617, 623 (Ind. Ct. App. 1985) *citing State v. Williamson Polishing & Plating Co., Inc.*, 384 N.E.2d 1114, 1115 (Ind. Ct. App. 1979); *Cook v. City of Evansville*, 381 N.E.2d 493, 494 (Ind. Ct. App. 1978). A non-party to an assignment, one who is neither the assignor nor the assignee, is a stranger to the contract and lacks standing to challenge its validity. *Wagner v. U.S.,* 573 F.2d 447, 452 (7th Cir. 1978). *See Liu v. T&H Machine, Inc.*,

---

[5] "[A] pooling and servicing agreement is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents are transferred by and between the parties to the trust, and sets forth the various responsibilities of the parties to the trust. The promissory notes, mortgages or deeds of trust, and related loan documents are the trust res." *In re Smoak*, 461 B.R. 510, 515–16 (Bankr.S.D.Ohio 2011).

191 F.3d 790, 797 (7th Cir. 1999) (non-party lacks standing to challenge assignment on the basis of lack of authority or authenticity of signatures). Plaintiff, as a non-party to the Assignment, lacks standing to challenge it or base claims upon its alleged flaws.

Indiana law provides that an assignee of a mortgage acquires all the rights of the original mortgage holder. *Strafford v. Lane*, 24 N.E. 683, 685 (1890). The recording of an assignment, as a matter of statute, is intended to protect future third party purchasers or lienholders, not the mortgagor. *Rowe v. Small Business Administration*, 446 N.E.2d 991, 993 (Ind. Ct. App. 1983). A mortgagor is not a third party beneficiary to an assignment. *Id.* Only a person that a statute is intended to protect has standing to invoke that statute. *Id.; In the Matter of James Wilson Associates*, 965 F.2d 160, 168 (7th Cir. 1992). Plaintiff, the mortgagor, is not the party intended to be protected by Indiana's recording statute and lacks standing to challenge the assignment.

Plaintiff's argument that the transfer of the mortgage loan to the Trust was untimely and is void because it violates the PSA fares no better; Plaintiff lacks standing to assert such a claim. As an initial matter, Black Knight is not alleged to be, nor is it, a party to the PSA and had no obligations or duties under that Agreement. Excerpts of the PSA are attached hereto as Exhibit "C".[6] As a result it cannot be held liable for a breach of its terms.

In addition, Section 10.10 of the PSA specifically provides that "nothing in this Agreement or in any Certificate, expressed or implied, shall give to any Person, other than the parties hereto and their respective successors hereunder, any separate trustee or co-trustee appointed under Section 8.10 and the Certificateholders, any benefit or any legal or equitable

---

[6] Plaintiff attaches what he contends to be a copy of the PSA as Exhibit 1 to the Complaint. That copy is incomplete. As Plaintiff notes in paragraph 46 of the Complaint, the PSA is available online on the SEC's EDGAR database. The full document is 330 pages in length. As a result, only applicable excerpts are attached hereto. Upon request, the complete document will be filed. Black Knight is entitled to introduce these materials as part of this Motion because Plaintiff has specifically described the document and attached a portion of it to his Complaint. *Williamson v. Curran,* 714 F.3d 432, 435-36 (7th Cir. 2013). It is also a public record and can be introduced on that basis as well.

right, remedy or claim under this Agreement." So the PSA itself establishes that Plaintiff has no rights under the Agreement to assert any claim for its alleged violation.

The terms of the PSA also establish that Plaintiff's allegations of late delivery of the mortgage loan to the Trust do not support his theory that there was a violation of that Agreement. Section 2.07 of the PSA provides in applicable part that:

> If the Trustee finds any document or documents required to be included in the Mortgage File for a Mortgage Loan pursuant to the definition of "Mortgage File" not to have been executed and received, the Trustee shall promptly so notify the Servicer. An exception report delivered by the Custodian to the Servicer shall be deemed to constitute such notice. Upon notice from the Trustee or the Custodian that any document required to be included in the Mortgage File for a Mortgage Loan has not been executed and received, the Servicer shall promptly notify the Seller of such defect and take appropriate steps on behalf of the Trust to enforce the Seller's obligation, pursuant to Section 2.4 of the Mortgage Loan Purchase Agreement, to correct or cure such defect or repurchase or substitute for such Mortgage Loan, in accordance with and subject to the time limitations set forth in such Section 2.4

Section 2.07 of the PSA contemplates that in some circumstances the documentation necessary to complete the transfer of a mortgage loan to the Trust may be flawed or incomplete and expressly provides the right to secure such documentation at a later time in order to cure any defect in delivery. As a result, Plaintiff's allegation that his loan was delivered to the trust late is not a breach of the PSA.

Plaintiff seeks to establish his standing to base a claim upon alleged violations of the PSA based upon an unreported New York trial court decision cited at paragraph 53 of his Complaint, *Wells Fargo Bank, N.A. v. Erobobo*, 2013 WL 1831799 (N.Y. Sup. Ct., April 29, 2013). *Erobobo* held that a transaction in violation of a trust agreement renders the transaction void as a matter of <u>New York</u> statutory law and therefore can be raised by a borrower. There is a

fundamental problem with this theory. Plaintiff concedes in his Complaint that the Trust is a Delaware trust. *See* Complaint, ¶ 42. The PSA itself provides that it "shall be construed in accordance with the laws of the State of Delaware without giving effect to its conflicts of laws provisions and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws…" PSA, Section 10.05. Delaware law provides that an action of or transfer by a trustee that is in violation of the trust agreement or is otherwise *ultra vires* is merely voidable at the election of the beneficiary, not void. *Hardy v. Hardy*, 2014 WL 3736331 at *10 (Del. Ch. July 28, 2014) (beneficiary may ratify act or omission of trustee); *Walls v. Peck*, 1979 WL 26236 at *2 (Del. Ch. Oct. 24, 1979) (improper real estate transaction by trustee is voidable only); *In re Cornerstone Therapeutics Litigation*, 2014 WL 4418169 at *6, n.43 (Del. Ch. Sept. 10, 2014) (improper action of trustee is voidable by beneficiaries). Because Plaintiff is not a party to or beneficiary of the PSA, he possesses no right to challenge compliance with that Agreement.

Even if *Erobobo* were applicable to the Delaware Trust, which it is not, to say that *Erobobo* has been heavily criticized and broadly rejected would be an understatement. *Wells Fargo Bank v. Betts-Gaston*, 2015 WL 1306981 at *6 (Ill. App. March 23, 2015) ("A simple search on Westlaw reveals that over 40 courts have declined to follow, or distinguished, *Erobobo*). Among these courts is the Second Circuit Court of Appeal, which flatly held that *Erobobo* is contrary to New York law. *Rajamin v. Deutsche Bank National Trust Co.*, 757 F.3d 79 (2d Cir. (N.Y.) 2014). In *Rajamin* the Second Circuit, citing numerous New York opinions, rejected arguments that a borrower possesses standing to challenge compliance with a PSA on either a breach of contract or a breach of trust theory. *Id.* at 86-89. The court held that, under New York law, a stranger to the contact cannot assert rights of others that have not asserted

them. *Id.* at 86 *citing Mendel v. Henry Phipps Plaza West, Inc.*, 844 N.E.2d 748 (N.Y. 2006); *Cimmering v. Merrill Lynch Mortgage Investors, Inc.*, 2012 WL 2332358 at *8 (N.Y.Sup. Ct. June 13, 2012) (additional citations omitted). The court also held that only beneficiaries of the trust possess standing to enforce its terms. *Rajamin*, at 88 *citing Matter of the Estate of McManus*, 390 N.E.2d 773 (N.Y. 1979)(additional citations omitted). Further, as a matter of law, the court determined that a transfer into a trust that allegedly violates the terms of the trust is voidable (by the beneficiaries) not void. *Rajamin* at 90 (collecting cases).[7] The Southern District of New York has also confirmed that the holding that a non-party to a PSA lacks standing to raise non-compliance with its terms as a claim or defense follows "the weight of the caselaw around the country." *Tran v. Bank of New York*, 2014 WL 1225575 at *4, n.7 (S.D. N.Y. Mar. 24, 2014)(collecting cases).

Plaintiff also appears to contend that the alleged breach of the terms of the PSA also violates the REMIC statute, 26 U.S.C. §860D. Complaint, ¶ 93. This contention is easily addressed. There is no private right of action for an alleged violation of the REMIC statutes. *Williams v. Bank of New York Mellon*, 2015 WL 430290 at *4, n. 4 (E.D.N.Y. Feb. 2, 2015); *Mohlman v. Long Beach Mortgage*, 2013 WL 490112 at *5 (E.D.Mich. Feb. 8, 2013) *mot. for relief from judgment denied* 2013 WL 827221.

Plaintiff lacks standing to either challenge the effectiveness of the Assignment or complain of alleged violations of the PSA. Because Plaintiff's claims are predicated upon the theory that the mortgagee was not the proper party to foreclose as a result of alleged flaws in the

---

[7] In addition, a securitized mortgage trust is a business trust under New York law. Section 11-1.1(a) of New York Trust Law explicitly excludes business trusts such from the general provisions of New York trust law and establishes that Plaintiff lacks standing here. *In re Doble*, No. 10-90308, 2011 Bankr. LEXIS 1449, at *39–40 n.22 (Bankr. S.D. Cal. Apr. 14, 2011) (citing *Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140, 1141 (2d Cir. 1979)).

Assignment and non-compliance with the PSA, his lack of standing requires the dismissal with prejudice of each of Plaintiff's claims.

### C.     **Plaintiff's Complaint Violates Both Rules 8 and 9, Fed. R. Civ. P.**

Plaintiff's Complaint spans 90 pages, excluding exhibits, and includes 228 paragraphs. It is far from a model of clarity, dedicating pages to a criticism of mortgage loan securitization and alleged harm to investors (Complaint, pp. 4-8, 10). It does not even begin to discuss what Black Knight is alleged to have done until paragraph 66 at page 27. It quotes in mass, roughly verbatim, federal and state statutes or regulations without any factual allegations. Complaint, pp. 50-51, 54-55, 56-58, 61-63. The recitation of the Complaint's first Count does not appear until page 50. The individual Counts, themselves, are not clear regarding which Defendants are joined in them. The Complaint is rife with speculation and legal conclusions.

### 1.     **Plaintiffs' Complaint Violates Rule 8.**

Rule 8(a)(2) requires a party to make a "short plain statement of the claim showing that the pleader is entitled to relief. A complaint should be drafted "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages" to determine what is alleged. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). The fact that a RICO claim is asserted does not make Rule 8 any less applicable. *Id. See Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990) (district court should have dismissed 125 page RICO complaint as violative of Rule 8). One can plead with particularity while still complying with the letter and spirit of Rule 8. *Thornton v. Evans*, 692 f.2d 1064, 1082, n. 41 (7th Cir. 1982).

Plaintiff's Complaint does not comply with Rule 8. It is replete with extraneous and repetitive material and a party must read through dozens of pages before reaching factual allegations specifically directed at any defendant. Its sheer length renders it difficult to respond to. One must wade through 41 paragraphs before learning that there was a previous foreclosure

proceeding (Black Knight was not a party to that action). It is another 25 paragraphs before any specific substantive allegation is made against Black Knight. The first cause of action is alleged on the 50th page. Throughout the Complaint, Plaintiff makes generalized allegations against the "Defendants" without providing fair notice of what is being alleged against them individually.

### 2. Plaintiff's Complaint Violates Rule 9.

Rule 9(b) requires that allegations of fraud be made with particularity. To satisfy the particularity requirement of Rule 9, a pleader must identify "the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir) *cert denied*, 498 U.S. 941 (1990). A plaintiff must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). Further, where there are multiple defendants, the pleading must "reasonably notify the defendants of their purported role in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (7th Cir. 1987). Vague allegations of "fraud", particularly when attributed to "defendants", is insufficient. *Mills v.Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). The alleged fraudulent acts of each defendant must be identified. *Balbanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1493 (N.D. Ill. 1988).

In pleading a RICO action the predicate acts must be identified with specificity in addition to the requirements for allegations of fraud. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Moreover, each element of a predicate act must be pled with specificity as well. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). Here, Plaintiff alleges generally that the "defendants" committed mail or wire fraud. The elements are: (1) a defendant's participation in a scheme to defraud; (2) commission of an act

with the requisite intent to defraud: and (3) use of mails or wire communication to further the fraudulent scheme. *US v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993).

Notwithstanding Plaintiff's prolixity, Plaintiff fails to plead his fraud and RICO claims (which are allegedly based upon mail or wire fraud) with specificity. While broad swaths of conduct are generally alleged to improper or fraudulent, there is no explanation regarding why the conduct is not merely a breach of the note or mortgage by the lender or loan servicer. For example, it is alleged that "Mains' Note and Mortgage transaction was void due to fraud in the factum" and Plaintiff demands discovery to show "how truly corrupt and fraudulent the entire process" was. Complaint, ¶ 34C. But the fraud is unidentified. Plaintiff claims that "due to the fraud that occurred with his loan transaction, his loan has in fact never defaulted." Complaint, ¶ 40. But he does not specifically explain how. Plaintiff alleges that "the Chase Assignment was fraudulent as well." Complaint, ¶ 66. But while he claims there were flaws in its execution, he does not identify what was allegedly false. In both his RICO claim as well as his fraud count, Plaintiff frequently conflates the parties together, referring to them collectively as "Defendants" without stating what acts he alleges that each undertook. This is particularly troubling with regard to Black Knight because his fraud claim appears to be predicated upon the allegation that "Defendants" intended to coerce him to pay his mortgage loan (Complaint, ¶ 158), however, he fails entirely to make any allegation that Black Knight ever requested a payment from him and, notably, he ceased making payments months before the May 26, 2009 assignment (the only act specifically attributed to Black Knight). *See* Complaint, ¶¶ 39-40 (Mains ceased making payments because he could not afford them and had gone 90 days without making a payment by April or May, 2009).

Plaintiff's RICO claims similarly lack specificity. Mains alleges generally that wire or mail fraud took place, stating that "the fictitious document fabrication process then begins and fabricated documents are transmitted by wire and mail to the public records offices in order to give the appearance of substantial compliance with judicial foreclosure processes." Complaint, ¶88b. But the documents are not identified and there is no discussion of why they are false or fraudulent. Mains states that the "Pattern of Racketeering Activity in Mains case includes multiple instances of mail fraud and wire fraud in Violation of 18 U.S.C. §§ 1341- 1343, attempts to coerce unlawful debt through mail and phone in violation of the FDCPA, etc., all of which are described in Mains' complaint." Complaint, ¶ 209. Again, neither the materials allegedly transmitted are identified nor any details regarding debt collection provided.[8] Plaintiff also fails entirely to identify any predicate acts in connection with his RICO claim. With regard to Black Knight, he rests upon the allegation of the execution of a single assignment of mortgage. Complaint, ¶ 66.

He has also conflated the defendants together and does not distinguish between their individual alleged conduct. The Complaint is particularly flawed in this respect. He alleges that the loan was originated in December, 2006 with Washington Mutual as the initial lender (Complaint, ¶20), that the loan was securitized some time before Washington Mutual "failed" in 2008 with Citibank as the Trustee (Complaint, ¶¶ 29, 32), that JP Morgan Chase became the servicer in May 2009 (Complaint, ¶ 38), and that Black Knight executed an assignment of mortgage on May 26, 2009 (Complaint, ¶¶ 66 – 67). While separated in time, Plaintiff alleges that all these acts were part of the RICO "conspiracy" to defraud. Why these acts were fraudulent is not explained. What false statements were allegedly made is not explained. What

<hr />

[8] Plaintiff makes no allegation that any representative or employee of Black Knight contacted him directly via either mail or telephone.

the predicate acts of mail or wire fraud were is not explained. Who committed them is not identified. The details of the who, what, when, where and how of the creation of the "enterprise" is not discussed. While the Complaint is sorely over-long, it nonetheless lacks the detail necessary for a Defendant to respond.

Because the Complaint violates Rule 9, it should be dismissed.

### D.    Plaintiff's Common Law Claims Should Be Dismissed.

Plaintiff asserts three common law claims against Black Knight: Count Five, negligent misrepresentation; Count Six, fraud; and Count Seven, Negligence.[9] Each of these counts fails to state a cause of action upon which relief may be granted and should be dismissed with prejudice pursuant to Rule 12(b)(6).

Detrimental reliance is an element of both negligent misrepresentation as well as fraud. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007); *Craig v. ERA Mark Five Realtors*, 509 N.E.2d 1144, 1147 (Ind. Ct. App. 1987); *Eby v. York – Division, Borg-Warner,* 455 N.E.2d 623, 628-29 (Ind. Ct. App. 1983). Based upon his own allegations, Plaintiff cannot establish detrimental reliance. His Complaint is based upon the premise that the mortgagee or its servicer lacked the right to foreclose and did not hold either his note or his mortgage. He concedes in his Complaint that he challenged the mortgagees' standing to foreclose, the assignment and chain of title and the transfer of the loan to the Trust during his foreclosure before both the trial court as well as the appellate court. Complaint, ¶¶ 51, 54-55. He did not rely upon any representation that Citibank as Trustee of the Trust possessed the right to foreclose. To the contrary, he contested this issue throughout the foreclosure proceedings. On

---

[9] Plaintiff's additional common law claims, Count Four, negligent or intentional infliction of emotional distress, and Count Ten, Conversion, are, on their face, directed to Chase and Citibank, not Black Knight. If Plaintiff, in his response to this Motion, claims that he intended to assert these claims against Black Knight, Black Knight reserves its right to raise arguments on Reply that these claims should also be dismissed.

this basis alone, Plaintiff's fraud and negligent misrepresentation claims should be dismissed with prejudice.

In addition, an element of a claim for fraud, whether constructive or actual, is that the alleged misrepresentation that was made by the defendant be material. *Smith v. Taulman*, 20 N.E.3d 555, 566 (Ind. Ct. App. 2014); *Eby v. York – Division, Borg -Warner,* 455 N.E.2d at 628. Again, the only conduct that is specifically attributed to Black Knight is the alleged execution of the Assignment. The Assignment cannot constitute a material representation, as a matter of law, for two reasons. First, the recording of an assignment is for the protection of future third party purchasers or lien holders, not the mortgagor. *Rowe v. Small Business Administration*, 446 N.E.2d at 993. A mortgagor is not a third party beneficiary to an assignment. *Id.* Only a person that a statute is intended to protect has standing to invoke that statute. *Id.; In the Matter of James Wilson Associates*, 965 F.2d at 168. Second, Plaintiff concedes that his note was endorsed in blank.[10] Complaint, ¶ 62. An endorsement of a note in blank converts the note into a bearer instrument enforceable by its holder. *Damron v. GMAC Mortgage, LLC,* 973 N.E.2d 104 (table), 2012 WL 3555219 at *2 (Ind. Ct. App. Aug. 20, 2012) *citing* Indiana Code sections 26-1-3.1-109(a)(2) and 26-1-3.1-301(1). The negotiation or assignment of a note, as a matter of law, operates as an assignment of the mortgage. *Id. citing Egbert v. Egbert*, 226 Ind. 346, 351 (1948). *See also Singo v. Deutsche Bank National Trust Co Americas*, 2013 WL 152481 at *6. Because the endorsement of the note in blank also assigned the mortgage by operation of law, the Assignment was superfluous and could not constitute a material representation. Even without the assignment, Citibank, as holder of the note, could foreclose. *Singo* at *6.

---

[10] Plaintiff, correctly, does not allege that Black Knight had any role in the endorsement of the note.

The tort of negligent misrepresentation is limited to cases where a defendant "supplies false information for the guidance of others in their *business transactions*" (emphasis added). *Pain Center of SE Indiana, LLC v. Origin Healthcare Solutions LLC*, 2014 WL 6750042 (S.D. Ind. Dec. 1, 2014). *See also Eby v. York – Division, Borg -Warner,* 455 N.E.2d at 628. A contractual relationship is generally required between the plaintiff and defendant as well. *Thomas v. Lewis Engineering, Inc.*, 848 N.E.2d 758, 761 (Ind. Ct. App. 2006). Plaintiff cannot allege that any information was provided to him for guidance in a "business transaction." His claims derive from a foreclosure of Plaintiff's "primary residence." Complaint, ¶ 20. Nor can Plaintiff allege that there is any contractual relationship between him and Black Knight, business-related or otherwise.

Because Plaintiff cannot establish the element of detrimental reliance for his fraud and negligent misrepresentation claims, the element of materiality for his fraud claim or the elements of information provided for guidance in business transactions and a contractual relationship required for his negligent representation claim, Counts Four and Five should be dismissed with prejudice.

Count Seven of the Complaint is labelled "negligence." However, its allegations do not appear to sound in negligence but rather in some form of misrepresentation. Paragraph 175 of the Complaint alleges that "Defendants held themselves as servicers, or parties in interest to Mains' transaction, with the Mains as their customers. As a result, Defendants' (sic.) falsely created a customer relationship with Defendant (sic.)." For the reasons set forth above, these allegations do not sustain a claim for either fraud or negligent misrepresentation.

Assuming that Plaintiff is seeking to assert a claim sounding in pure negligence, the elements of such a claim include that Black Knight owed him a duty and breached that duty,

causing him damages. *Hanson v. St. Luke's United Methodist Church*, 682 N.E.2d 1314, 1320 (Ind. Ct. App. 1997) *vacated on other grounds* 704 N.E.2d 1020 (Ind. 1998). Count Seven does not allege what duty Black Knight owed to Plaintiff or that any such duty was breached.[11] This alone mandates dismissal of Count Seven.

Even if he could allege the existence of a cognizable duty and a breach of duty, Plaintiff would, nonetheless, not be entitled to assert a negligence claim. He concedes the existence of a contractual relationship with his lender in the form of a note and a mortgage, both of which are attached to the Complaint. Complaint, ¶ 20 and Exhibit 4. His remedy, if any lies in the law of contracts, not torts. Indiana's economic loss rule limits a plaintiff to his contractual remedies for purely economic losses resulting from a service provided. *Indiana-Marion Public Library. Charlier Clark & Linard, P.C.*, 929 N.E.2d, 722, 726-27 (Ind. 2010). The rule applies even where there is no privity of contract between the plaintiff and the defendant. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 156 (Ind. 2005). As a result, any negligence claim asserted by Plaintiff is barred by the economic loss rule.

Because none of Plaintiff's common law claims state any cause of action against Black Knight, Counts Five, Six and Seven should properly be dismissed with prejudice.

**E.     Plaintiff's FDCPA Claim Should Be Dismissed.**

In evaluating Plaintiff's FDCPA claim, it is important to distinguish between what is and is not alleged by Plaintiff. The only allegation that specifically identifies any conduct by Black Knight is the contention that it executed the Assignment on May 26, 2009. There is no allegation in the Complaint that Black Knight ever contacted or communicated with Plaintiff at

---

[11]  With regard to causation, Plaintiff expressly concedes that he defaulted on his loan. He states that he stopped making the increased payments he could no longer afford to make." Complaint, ¶ 39. Thus the cause of the foreclosure, and his alleged damages, was his own default, not any act by Defendants.

all, let alone regarding any debt.[12]  Nor is there any contention that Plaintiff made any payment to Black Knight.  The Plaintiff in the foreclosure was Citibank as Trustee for the Trust.  The servicer of the loan was Chase, who attended the settlement conference with Plaintiff.  Complaint, ¶ 46.  Plaintiff acknowledges that the underlying foreclosure action in dispute was initiated by a Defendant law firm representing Citibank, N.A., not by Black Knight.  *See* Complaint, ¶ 41.  Black Knight was not the mortgagee and is not alleged to have any interest in the mortgage.  Nor was Black Knight the holder of the note.  Plaintiff's allegations do not support Plaintiff's conclusory contention that Black Knight was a debt collector or that it engaged in any attempt to collect on Plaintiff's loan.

The elements of a claim under the FDCPA are: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Flores v. I.C. System, Inc.,* 2014 WL 1379046 at *3 (U.S.D.C. S.D. Fla. April 8, 2014). *See also Gburek v. Litton Loan Servicing, LP,* 614 F.3d at 384.  In order to state a claim under the FDCPA, Plaintiff must allege that Black Night was a "debt collector" as defined under the FDCPA, and violated a section of the Act in connection with debt collection.  *See Id.*

Plaintiff claims that the Defendants violated 15 U.S.C § 1692c (communications in connection with debt collection), 15 U.S.C § 1692e (misrepresentations in connection with debt collection) and § 1692f (the use of unfair means to collect a debt).  *See* Compl. at ¶¶182-191.  A debt collector is one who "obtains payment or liquidation of the debt, either by personal solicitation or legal proceeding."  *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *Laubach v. Arrow Servs. Bureau,* 987 F. Supp. 625, 631 (N.D. Ill. 1997) (a debt collector "direct[s] the

---

[12] The absence of a demand for payment is a factor to be considered in deciding if a defendant has engaged in debt collection but is not determinative.  *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 381 (7th Cir. 2010).

debtors to submit payment"). Violations of 15 U.S.C. § 1692e (misrepresentations) and § 1692f (unfair practices) must be made "in connection with" or "used" in the collection of debt. *See South v. Midwestern Audit Serv., Inc.*, 2010 U.S. Dist. LEXIS 129474, at *19 n.6 (E.D. Mich. Aug. 12, 2010); *Mabbitt v. Midwestern Audit Servs. Inc.*, 2008 U.S. Dist. LEXIS 20446, at *8- *10 (E.D. Mich. March 17, 2008) (§ 1692e and § 1692f regulate a "demand or attempt to obtain payment of a debt").

Plaintiff makes the conclusory allegation that Black Knight is a debt collector without setting forth any facts to justify the use of this label. Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The allegations in a complaint that a defendant is a Debt Collector must be supported by facts; it is insufficient to simply state that a defendant is a Debt Collector. *Simpson v. Safeguard Properties, L.L.C.,* 2013 WL 2642143 (U.S.D.C. N.D. Ill, June 12, 2013).

Allegations regarding a "defective" assignment of a mortgage cannot render Black Knight a debt collector even if the assignment is used by others in foreclosure litigation. *See Munger v. Deutsche Bank*, 2011 U.S. Dist. Lexis 77790, at *7 (N.D. Ohio July 18, 2011) (mere defective assignment of mortgage does not render MERS a "debt collector," even though assignment was used by others in subsequent litigation). Additionally, courts have held that foreclosure actions themselves are not debt collection activity. *See Trent v. Mortgage Electronic Registration Systems, Inc*., 618 F. Supp. 2d 1356 (M.D. Fla. 2007), *aff'd*, 288 Fed. Appx. 571 (11th Cir. 2008); *Long v. One W. Bank, FSB*, 11 C 703, 2011 WL 3796887, at *4 (N.D. Ill.

2011). The Assignment assigned to Citibank as Trustee only the mortgage, not the note. The note was transferred via the blank endorsement separate and apart from the Assignment. Complaint, ¶ 62. The Assignment conveyed no right to collect upon the note.

Mains' allegedly defective assignment does not violate the FDCPA. A representation that merely notifies a person that a debt is transferred from one entity to another is not made in "connection with the collection of debt." *Gillespie v. Chase Home Fin., LLC*, 3:09-CV-191-TS, 2009 WL 4061428, at *5 (N.D. Ind. 2009). Moreover, a representation that does not demand payment or provide terms of payment or deadlines does not qualify as a debt collection communication under the statute. *Id.* Because the Assignment was merely transferring a loan between lenders several years before the foreclosure litigation, they were not made "in connection with" debt collection.

Plaintiff claims that Black Knight qualifies as a debt collector because its software applications are used by law firms and lenders in the foreclosure process. The District of Maryland addressed substantially the same allegations against Black Knight's predecessor, Lender Processing Services, Inc., regarding the same software and concluded that the plaintiff had failed to establish that the company was a debt collector. *Chalk v. Lender Processing Services, Inc.*, 2013 WL 6909425 at *5 (D. Mary. Dec. 31, 2013). Plaintiff claims that this software allows the Defendants to create assignments where "documentation is lacking" and the documents are false claims of authority. Plaintiff claims the Assignment and other documents were signed without authority, "robo-signed", false and void. *See* Complaint, ¶¶ 68, 73, 78-80, 88. Plaintiff, however, fails to identify which "documents" the Desktop software allegedly created and printed. Plaintiff does contend that the Assignment was executed for Black Knight's "customers." Complaint, ¶ 76.

Even if the Assignment or other unidentified documents allegedly prepared by Black Knight were used by Chase or Citibank, there is no vicarious liability under the FDCPA; accordingly, Black Knight cannot be a "debt collector" based on the actions of others. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107-08 (6th Cir. 1996) (Nelson, J.); *Williams v. Citibank*, 565 F. Supp. 2d 523, 529 (S.D.N.Y. 2008). Furthermore, back office companies performing "ministerial duties" on behalf of creditors, servicers, or law firms are not "debt collectors." *See White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (Posner, J.). Where such companies do not request payments, have no direct contact with the debtor, do not initiate, settle or try the collection action, do not receive a contingent fee or success fee, and the creditor or servicer has ultimate control over the debt collection, the vendor does not qualify as a "debt collector" under the FDCPA. *See Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1041 (S.D. Ohio 1997) (company that managed and mailed collection letters was not a "debt collector"); *Laubach v. Arrow Service Bureau, Inc.*, 987 F. Supp. 625, 631-32 (N.D. Ill. 1997)(company provided ministerial duties where it had no contact with debtor and was not paid a contingent fee); *Trull v. Lason Sys., Inc.*, 982 F. Supp. 600, 607-08 (N.D. Ill. 1997) (vendor lacked "ultimate authority" regarding settlement and was not a debt collector). This is true even if the vendor's services enhance the efficacy of debt collection. *See Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 929-30 (N.D. Cal. 1998) (Western Union not a "debt collector" even though its software and mailing services prepared and sent collection letters on Western Union letterhead, which had an unrivaled "impact" on debtors); *Passa v. City of Columbus*, 748 F. Supp. 2d 804, 811-812 (S.D. Ohio 2010) (King, M.J.) (City operated a mediation program which sent notices and other correspondence relating to defaulted debt; City was not a "debt collector" because there was no request for payment).

Here, the Complaint does not allege that Black Knight or its software applications requests payment from the debtor, collects money, contacts the debtor, or that Black Knight has the authority to negotiate a resolution. *See* Complaint, ¶¶ 68, 73, 78-80, 88. Indeed, the complaint alleges that LPS Desktop performs only the administrative functions of "creating", "generating" or "printing" documents. *Id*. None of these ministerial actions render Black Knight a "debt collector," nor do they amount to a misrepresentation or unfair practice made "in connection with the collection of debt."

Plaintiff alleges that Black Knight is culpable as an indirect debt collector due to the use of its software and the alleged direction of law firms in debt collection. "To prove that a company is an "indirect" debt collector, a plaintiff must demonstrate that the company shares an interdependence with a "direct" debt collector that renders them a "single economic enterprise." *Wells v. McDonough*, 97 C 3288, 1999 WL 162796, at \*1 (N.D. Ill. 1999)(internal citations omitted). Here, the Complaint fails to allege that Black Knight is somehow interdependent with and other co-defendant or non-party "debt collector."

Plaintiff's FDCPA is also time-barred. The statute of limitations for an FDCPA claim is one year. 15 U.S.C. §1692k(d). The Assignment, which is the only document specifically attributed to Black Knight, was executed on May 29, 2009 and recorded May 14, 2010. Plaintiff freely concedes that he defaulted on his mortgage loan in 2009, before the Assignment was even executed. The foreclosure was filed on April 20, 2010. His Answer, filed June 17, 2010 includes affirmative defenses challenging Citibank's standing and ownership of the note. As of 2010, based upon his own allegations, Plaintiff was on notice that a foreclosure was proceeding in which he purportedly did not believe the owner of the note and mortgage was the plaintiff. The instant action was filed on March 20, 2015.

Plaintiff contends that the statute of limitations should be equitably tolled. Debt collection necessarily requires a direct and overt act. Here at the latest the statute was triggered by the recording of the Assignment on May 14, 2010 (though a copy was attached to the foreclosure Complaint).[13] Equitable tolling requires "extraordinary circumstances" beyond Plaintiff's control and unavoidable with diligence. *Coursen v. Shapiro & Fishman, GP*, 588 Fed. Appx. 882, 886 (11th Cir. 2014). *See also*, *Goodson v. Bank of Am., N.A.*, 14-5419, 2015 WL 364045, at *6 (6th Cir. 2015) (under the equitable tolling doctrine, the limitations 'period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained' of violation")(internal citations omitted); *Sartori v. Susan C. Little & Associates, P.A.*, 571 Fed. Appx. 677, 681 (10th Cir. 2014)(Statute of Limitations period began to run from date of foreclosure judgment, not from Plaintiff's unsupported and conclusory allegations of a later date).

Plaintiff cannot demonstrate the required extraordinary circumstances. The foreclosure lasted three years. Throughout, he challenged Citibank's ownership of the note and mortgage. Complaint, ¶ 51. During this time, he could have conducted discovery on any issue relevant to the foreclosure. His lack of diligence bars the application of the equitable tolling doctrine.

Because Black Knight is not a debt collector and did not engage in any activity to collect upon Plaintiff's debt, it is not liable under the FDCPA. In addition, this claim is time-barred. Count Eight of the Complaint should be dismissed with prejudice.

## F. Plaintiff Cannot Establish any Basis for a RICO Claim

To state a claim under § 1962(c) Plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.*

---

[13] Even if the date of the 2013 foreclosure judgment is used, Plaintiff's claim is untimely. The judgment was entered May 3, 2013. Complaint, ¶ 52.

*v. Imrex Co.,* 473 U.S. 479, 496 (1985). "In addition, the plaintiff only has standing if ... he has been injured in his business or property by conduct constituting the violation." *Id.; see also*, 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court ..."). Conspiracy to violate § 1962(a), (b), or (c) is a distinct violation under 18 U.S.C. § 1962(d). Plaintiff has failed to plead any of these elements with specificity as discussed above at pp. 14-17. However, the substantive flaws in Mains' RICO claim extend beyond mere pleading defects. As a matter of law, Plaintiff cannot establish any element of a RICO claim.

Mains cannot establish RICO standing. The standing requirement created by 18 U.S.C. §1964(c) requires Plaintiff to allege an adequate causal nexus between his injury and the alleged predicate acts of racketeering activity. *Brandenburg v. Seidel,* 859 F.2d 1179, 1187 (4th Cir. 1988), *overruled on other grounds, Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S. Ct. 1712, 135 L.Ed.2d 1 (1996); *see also Holmes v. Securities Inv. Protection,* 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) (plaintiff must allege defendant's RICO violations are proximate cause of his injuries); *Sedima,* 473 U.S. at 496-97. There must be a direct causal connection between the commission of the predicate act and the injury. *Hemi Group v. City of New York*, 559 U.S. 1, 9 (2010) *citing Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Plaintiffs are required to show both "but-for" and "legal" causation that the predicate acts caused the harm. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 400 (E.D. Va. 2003) ("The pertinent inquiry in determining the existence of proximate, or 'legal' cause, is 'whether the conduct has been so significant and important a cause that the defendant should be held responsible'"). "When mail fraud is the predicate act, the complainant's injury must occur 'by reason of' the scheme to defraud." *Id.*

Plaintiff's alleged harm is that Citibank as Trustee foreclosed upon his home without owning the mortgage or note. The sole predicate act allegedly committed by Black Knight is the execution of the Assignment on May 26, 2009. However, the root cause of Citibank's alleged lack of ownership of the mortgage loan is the purported failure to transfer the loan to the Trust in a timely fashion pursuant to the terms of the PSA, within 3 months of the closing date. The "closing date" of the Trust is defined in the PSA as March 13, 2007. *See* PSA excerpts, Ex. C. Thus, by Mains' own theory, as of June 13, 2007 at the latest, there was no possibility that Citibank as Trustee of the Trust, could ever own the mortgage loan. This would be the case whether or not the Assignment was ever signed.

There can be no RICO causation if the defendant's activity could be removed and the injury would, nonetheless remain. *Walters v. McMahen,* 684 F.3d 435, 444 (4th Cir. 2012) (if the false attestations are "removed from the plaintiffs' narrative," the alleged injury would be the same). It is not the Assignment attributed to Black Knight that caused the Plaintiff's harm, but rather the purported flaws in the transfer to the securitized trust. The Assignment was, at best, a chain in the events that Plaintiffs complain of rather than the source of their alleged harm, and the execution of that document does not provide a basis for RICO causation. *Id. See also Hemi Group, LLC v. City of New York*, 559 U.S. at 10 ("The general tendency of the law, in regard to damages at least, **is not to go beyond the first step**.' . . . Our cases confirm that the 'general tendency applies with full force to proximate cause inquiries under RICO. Because the [Plaintiff's] theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement.") (emphasis added). Nor does Plaintiff's contention that the purpose of these documents was to conceal the alleged flaws in the transfer of the loan to the securitized trust give rise to causation. *See Lerner v. Fleet Bank, NA.,* 318 F.3d

113, 123 (2d Cir. 2003) (Sotomayor, J.) ("concealment of . . . improper [underlying] conduct . . . is too attenuated to satisfy the proximate cause requirement"). Plaintiff cannot establish that Black Knight's alleged predicate act he identifies was the cause of their alleged harm.

Mains also concedes that the cause of his harm was not the Assignment. The cause of Plaintiff's harm is his own admitted failure to make payments on his loan obligation. *See Coursen v. Shapiro & Fishman, GP*, 588 Fed. Appx. 882, 886 (11th Cir. 2014). In *Coursen,* the court determined that the Plaintiff had no RICO damages because her alleged damages were attributable to her own actions in failing to make mortgage payments, not any document alleged executed by Black Knight. Here, Mains admits that he stopped paying his mortgage and thus is likewise responsible for his own damages. *See* Complaint, ¶ 39.

Further, the Assignment, as a matter of law, could not have been a material cause of Mains' injury. "A scheme to defraud must involve material falsehoods." *United States v. Litos*, 2:12-CR-00175-PPS, 2014 WL 2216096, at *3 (N.D. Ind. 2014). The Assignment here was not material because Plaintiff concedes that his note was endorsed in blank. Complaint, ¶ 62. The blank endorsement of the note automatically, by action of law, conveys the mortgage so that the note holder, Citibank, may foreclose. *See* pp. 18-19, above. Again, the Assignment was not required. Under no construction of the facts could the Assignment have been the direct legal cause of Mains' injury. Plaintiff cannot establish RICO standing.

 Nor can Mains establish a RICO enterprise or a pattern of racketeering. The Plaintiff alleges, in a conclusory fashion, that "The RICO Defendants and their co-conspirators in Mains' case constitute an association-in-fact enterprise within the meaning of 18 U.S. Code §§ 1961(4) and 1962(c) . . . Each of the RICO Defendants participated in the operation or management of the Enterprise." *See* Complaint, ¶ 205. In order to allege an association-in-fact enterprise, the

Complaint must "plead facts plausibly alleging that the defendants engaged in a degree of cooperation and coordination 'that fell outside the bounds of the parties' normal commercial relationships.'" *Nesbitt v. Regas*, No. 13 C 8245, 2015 WL 1331291, at *8 (N.D. Ill. Mar. 20, 2015) (*quoting United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.,* 719 F.3d 849, 853-54 (7th Cir. 2013)).  Moreover, the actions of each defendant must be alleged to be taken to further the interests of the <u>enterprise</u> rather than its own interests.  *Id.  See also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) ("A RICO enterprise is more than a combination of persons who commit alleged predicate acts of racketeering; "there must be 'an organization with a structure and goals separate from the predicate acts themselves'") (internal citations omitted). "Absent this limitation, every garden-variety conspiracy or fraud claim would be a RICO claim."  *Rosenbaum v. Seybold*, 2013 WL 2285946, at *8 (N.D. Ind. May 23, 2013).

Here, there are no allegations of an organizational structure, hierarchy and goals separate from the predicate acts themselves.  *Crichton*, 576 F. 3d at 400.  ("We also note that Crichton failed to adequately plead an association-in-fact enterprise because he has not pleaded an organizational structure or hierarchy for the alleged association-in-fact enterprise").  Nor is there any organizational structure.  Plaintiff's own allegations establish that the Defendants engaged in separate acts that were also separated by time and fail to establish any connection between the disparate acts.  *See* p. 17, above.  Accordingly, the Complaint fails to adequately allege a RICO enterprise, and must be dismissed.

Similarly, Black Knight is not alleged to be a direct contributor to Plaintiff's alleged damages (although it is not clear what those are). Simply put, there is no allegation that the scheme would not have succeeded but for the participation of Black Knight.  There is nothing

that Black Knight is alleged to have uniquely performed or provided that materially advanced or facilitated the alleged scheme. In order to state a claim under RICO, Plaintiff must allege (with supporting facts) that Black Knight has exercised, or agreed to exercise, "at least some measure of control" over the enterprise. *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). There is no such allegation. *See also D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, 2013 WL 1286696, at *8 (N.D. Ill. Mar. 28, 2013) ("A RICO violation therefore requires more than that a defendant had a business relationship with a putative RICO enterprise or ... performed services for that enterprise . . . [S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature does not meet the operation or management requirement under RICO.") (internal citations omitted).

Although the Plaintiff does not allege a separate cause of action for conspiracy under 18 U.S.C. §1962(d), there is are allusions to a RICO conspiracy scattered throughout the Complaint. *See e.g.* Compl. ¶ 204. "The touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (citing *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 960 (7th Cir.1996)). So to state a viable claim under the RICO conspiracy statute § 1962(d), the Plaintiff must allege that "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Id.* There are no allegations to that effect. There is no coherent allegation of a plan or a meeting of the minds, and merely saying that there is a conspiracy does not suffice. "Mere allegations of fraud, corruption, or conspiracy, averments to conditions of mind, or referrals to plans and schemes are

too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Shapo v. Engle*, No. 98 C 7909, 2000 WL 876994, at *2 (N.D. Ill. July 3, 2000) (quoting *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir.1989)).

Because Mains cannot establish any element of his RICO claim, Count Ten of his Complaint should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint against Black Knight should be dismissed in its entirety with prejudice.

Respectfully submitted,

s/ Thomas E. Mixdorf
Thomas E. Mixdorf
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100 (Telephone)
(317) 592-4790 (Fax)
philip.whistler@icemiller.com
thomas.mixdorf@icemiller.com

and

Fred O. Goldberg
Berger Singerman
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:     (305) 755-9500
fgoldberg@bergersingerman.com
*Attorneys for Defendant Black Knight*
*Financial Services, LLC (real party in interest*
*Black Knight InfoServ, LLC)*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2015, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Jonathan Michael Schulte
209 E. Chestnut St.
Jeffersonville, IN 47130
jon@smithcarpenterlaw.com

Nathan T. Danielson
Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204
ndanielson@boselaw.com
slaurin@boselaw.com

Michael A. Dorelli
Patrick A. Ziepolt
HOOVER HULL TURNER LLP
111 Monument Circle
Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
mdorelli@hooverhullturner.com
pziepolt@hooverhullturner.com

/s/ Thomas E. Mixdorf
Thomas E. Mixdorf

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100 (Telephone)
(317) 592-4790 (Fax)
thomas.mixdorf@icemiller.com

I\5149697.1