# EXHIBIT C

*EXECUTION*

WaMu ASSET ACCEPTANCE CORP.,

as Company

and

WASHINGTON MUTUAL BANK,

as Servicer

and

LASALLE BANK NATIONAL ASSOCIATION,

as Trustee

and

CHRISTIANA BANK & TRUST COMPANY,

as Delaware Trustee

POOLING AND SERVICING AGREEMENT

$814,263,307.43

Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE2 Trust

WaMu Asset Acceptance Corp.

Washington Mutual Asset-Backed Certificates

WMABS Series 2007-HE2

Cut-Off Date:  February 1, 2007

*Class R-PX Certificate*: Any one of the Class R-PX Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B, executed, authenticated and delivered by the Trustee, evidencing the ownership of the Class R-PX Interest.

*Clean-up Call Percentage*: 10%.

*Clearing Agency*: An organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended, which initially shall be DTC.

*Close of Business*:  As used herein, with respect to any Business Day, 5:00 p.m. (New York time).

*Closing Date*: March 13, 2007.

*Closing Date Mortgage Loans*:  The Group I Closing Date Mortgage Loans and the Group II Closing Date Mortgage Loans.

*Code*:  The Internal Revenue Code of 1986, as amended.

*Collection Account*:  The account or accounts created and maintained by the Servicer pursuant to Section 3.10(a) with an Eligible Institution, which shall be entitled "Washington Mutual Bank, as Servicer, in trust for holders of Washington Mutual Asset-Backed Certificates, WMABS, Series 2007-HE2."

*Commission*: The Securities and Exchange Commission.

*Company*:  The meaning specified in the introductory paragraph hereof.

*Compensating Interest*:  As defined in Section 3.24.

*Corporate Trust Office*:  The corporate trust office of the Trustee, at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at 135 South LaSalle Street, Suite 1511, Chicago, Illinois, 60603, Attention: Global Securities and Trust Services – WMABS Series 2007-HE2.

*Corporation*:   Any Person (other than an individual, partnership, joint venture or unincorporated organization) incorporated, associated, organized, chartered or existing under the laws of any state or under the federal laws of the United States of America; *provided*, that such Person have indefinite existence under the law of its domicile.

*Corresponding Certificates*: As shown on the following chart:

| REMIC II | REMIC III |
|----------|-----------|
| Class L2-1-A | Class I-A |
| Class L2-2-A1 | Class II-A-1 |
| Class L2-2-A2 | Class II-A-2 |
| Class L2-2-A3 | Class II-A-3 |

Section 2.07 *Acceptance by Trustee.* The Trustee acknowledges receipt (or with respect to any Mortgage Loan subject to a Custodial Agreement receipt by the Custodian thereunder) on behalf of the Trust of the documents (or certified copies thereof as specified in Section 2.05) referred to in Section 2.05 above, but without having made the review required to be made pursuant to this Section 2.07. The Trustee acknowledges that all Mortgage Pool Assets, Mortgage Files and related documents and property held by it at any time are held by it as Trustee of the Trust for the benefit of the holders of the REMIC I Regular Interests and the Class R-1 Residual Interest. The Trustee shall review each Mortgage File on or before the Closing Date and deliver to the Company and the NIMS Insurer a certification in the form attached as Exhibit M hereto, to the effect that, except as noted, all documents required pursuant to the definition of "Mortgage File" and Section 2.05 have been executed and received, and that such documents relate to the Mortgage Loans identified in the Mortgage Loan Schedule. Within 240 days of the Closing Date, the Trustee shall deliver or with respect to the Mortgage Loans held by another Custodian, cause such other Custodian to deliver to the Company, the Seller, the NIMS Insurer and the Servicer a certification substantially in the form of Exhibit M hereto with respect to each Mortgage Loan, with any applicable exceptions noted thereon. In performing such review, the Trustee may rely upon the purported genuineness and due execution of any such document, and on the purported genuineness of any signature thereon. The Trustee shall not be required to make any independent examination of any documents contained in each Mortgage File beyond the review specifically required herein. The Trustee makes no representations as to: (i) the validity, legality, enforceability or genuineness of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any Mortgage Loan.

If the Trustee finds any document or documents required to be included in the Mortgage File for a Mortgage Loan pursuant to the definition of "Mortgage File" not to have been executed and received, the Trustee shall promptly so notify the Servicer. An exception report delivered by the Custodian to the Servicer shall be deemed to constitute such notice. Upon notice from the Trustee or the Custodian that any document required to be included in the Mortgage File for a Mortgage Loan has not been executed and received, the Servicer shall promptly notify the Seller of such defect and take appropriate steps on behalf of the Trust to enforce the Seller's obligation, pursuant to Section 2.4 of the Mortgage Loan Purchase Agreement, to correct or cure such defect or repurchase or substitute for such Mortgage Loan, in accordance with and subject to the time limitations set forth in such Section 2.4; *provided, however,* that the Servicer shall not require or permit the Seller to repurchase a Mortgage Loan pursuant to such Section 2.4 of the Mortgage Loan Purchase Agreement more than two years after the Closing Date unless (a) such defect would cause the Mortgage Loan to be other than a "qualified mortgage" (as defined in the Code), (b) such Mortgage Loan is in default, or default is in the judgment of the Servicer reasonably imminent, or (c) the Servicer, at the expense of the Seller, delivers to the Trustee an Opinion of Counsel addressed to the Trust and the Trustee to the effect that the repurchase of such Mortgage Loan will not give rise to a tax on a prohibited transaction, as defined in Section 860F(a) of the Code; *provided, further,* that in the event that such defect consists solely of the failure of the Seller to deliver any Recording Document with respect to such Mortgage Loan, due to a delay on the part of the recording office, then the Servicer shall instead notify the Seller of such defect and take appropriate steps on behalf of the Trust to enforce the Seller's obligation, pursuant to Section 2.3 of the Mortgage Loan Purchase Agreement, to comply with the procedure described in such Section 2.3.

In connection with the enforcement of the Seller's repurchase or substitution obligation pursuant to Section 2.4 of the Mortgage Loan Purchase Agreement, the Servicer and the Trustee shall comply with the additional provisions set forth in Section 2.10 hereof.

Section 2.08   *Representation and Warranty of the Company Concerning the Mortgage Loans*.  The Company hereby represents and warrants to the Trust that, immediately upon the transfer and assignment contemplated by Section 2.04, the Trust shall have good title to, and will be the sole legal owner of, each Mortgage Loan, free and clear of any encumbrance or lien, other than any lien arising under this Agreement.

The representation and warranty set forth in this Section 2.08 shall survive delivery of the respective Mortgage Files to the Trustee or the Custodian, as the case may be, and shall continue throughout the term of this Agreement. Upon discovery by any of the Company, the Servicer or the Trustee of a breach of the foregoing representation and warranty which materially and adversely affects the value of the related Mortgage Loans or the interests of the Trust in the related Mortgage Loans, the party discovering such breach shall give prompt written notice to the others.  Within 90 days of its discovery or its receipt of notice of breach, the Company shall repurchase or substitute for the affected Mortgage Loan or Mortgage Loans or any property acquired in respect thereof by the Trust, unless it has cured such breach in all material respects. Any such substitution shall be made within the three-month period commencing on the Closing Date (or within the two-year period commencing on the Closing Date if the related Mortgage Loan is a "defective obligation" within the meaning of Section 860G(a)(4)(B)(ii) of the Code and Treasury Regulation Section 1.860G-2(f)).   Any such repurchase shall be made at the Repurchase Price; *provided, however,* that no Mortgage Loan shall be repurchased pursuant to this Section 2.08 unless (a) the Mortgage Loan to be repurchased is in default, or default is in the judgment of the Servicer reasonably imminent, or (b) the Servicer, at the expense of the Company, delivers to the Trustee an Opinion of Counsel addressed to the Trust and the Trustee to the effect that the repurchase of such Mortgage Loan will not give rise to a tax on a prohibited transaction, as defined in Section 860F(a) of the Code.  If such breach would cause the Mortgage Loan to be other than a "qualified mortgage" (as defined in the Code), then notwithstanding the previous sentence, the repurchase or substitution must occur within the sooner of (i) 90 days from the date the defect was discovered or (ii) in the case of substitution, two years from the Closing Date.

Any number of Substitute Mortgage Loans may be substituted for any number of Reacquired Mortgage Loans and a Substitute Mortgage Loan may be substituted for a defective Mortgage Loan that is itself a Substitute Mortgage Loan, in each case subject to limitations in the next sentence.  A Substitute Mortgage Loan substituted for a Reacquired Mortgage Loan pursuant to the terms of this Agreement or the Mortgage Loan Purchase Agreement must, on the date of such substitution, (i) have an outstanding principal balance (or in the case of a substitution of more than one mortgage loan for a Reacquired Mortgage Loan, an aggregate principal balance), after application of all scheduled payments of principal and interest due during or prior to the month of substitution, not in excess of, and not more than 5.00% less than, the outstanding principal balance of the Reacquired Mortgage Loan as of the Due Date in the calendar month during which the substitution occurs, (ii) have a Mortgage Rate not less than (and not more than one percentage point in excess of) the Mortgage Rate of the Reacquired Mortgage Loan, (iii) if the Substitute Mortgage Loan is an Adjustable Rate Mortgage Loan, have

If three or more Certificateholders (hereinafter referred to as "applicants") apply in writing to the Trustee, and such application states that the applicants desire to communicate with other Certificateholders with respect to their rights under this Agreement or under the Certificates and is accompanied by a copy of the communication which such applicants propose to transmit, then the Trustee shall, within five Business Days after the receipt of such list from the Certificate Registrar, afford such applicants access during normal business hours to the most recent list of Certificateholders held by the Trustee. If such a list is as of a date more than 90 days prior to the date of receipt of such applicants' request, the Trustee shall promptly request from the Certificate Registrar a current list as provided above, and shall afford such applicants access to such list promptly upon receipt.

Every Certificateholder, by receiving and holding the same, agrees with the Servicer, the Company, the Trust, the Trustee and the Delaware Trustee that none of the Servicer, the Company, the Trust, the Trustee or the Delaware Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Certificateholders hereunder, regardless of the source from which such information was derived.

Section 10.05 *Governing Law*.  This Agreement shall be construed in accordance with the laws of the State of Delaware without giving effect to its conflict of laws provisions and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws without giving effect to conflict of laws provisions.

Section 10.06 *Notices*.  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered or certified mail, return receipt requested, or overnight courier to the applicable Notice Address. Notices to the Rating Agencies shall also be deemed to have been duly given if mailed by first class mail, postage prepaid, to the above listed addresses of the Rating Agencies. Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such Holder as shown in the Certificate Register. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder receives such notice.

Section 10.07 *Compliance With Regulation AB*.  Each of the parties hereto acknowledges and agrees that the purpose of Section 3.20, Section 8.18 and the fourth sentence of the second paragraph of Section 2.05 is to facilitate compliance by the Company, the Trust and Washington Mutual Mortgage Securities Corp. with the provisions of Regulation AB, as it may be amended or clarified from time to time. Each of the Servicer and the Trustee acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, consensus among participants in the asset-backed securities markets, advice of counsel, or otherwise, and agrees to comply with reasonable requests made by the Company, the Trust or Washington Mutual Mortgage Securities Corp. in good faith for delivery of information under the provisions of Regulation AB on the basis of evolving interpretations thereof, and to deliver any other information necessary in the good faith determination of the Company, the Trust or Washington Mutual Mortgage Securities Corp. to permit the Company, the Trust and Washington Mutual Mortgage Securities Corp. to comply with the provisions of Regulation AB. Each of the Trust and Washington Mutual

Mortgage Securities Corp. shall be a third-party beneficiary of the Servicer's and the Trustee's respective obligations under Section 3.20, Section 8.18 and this Section 10.07.

Section 10.08 *Severability of Provisions*.   If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the Holders thereof.

Section 10.09 *Counterpart Signatures*.   For the purpose of facilitating the recordation of this Agreement as herein provided and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.

Section 10.10 *Benefits of Agreement*.   Except as expressly provided herein, nothing in this Agreement or in any Certificate, expressed or implied, shall give to any Person, other than the parties hereto and their respective successors hereunder, any separate trustee or co-trustee appointed under Section 8.10 and the Certificateholders, any benefit or any legal or equitable right, remedy or claim under this Agreement.

Section 10.11 *Notices and Copies to Rating Agencies.*

(a)   The Trustee shall notify the Rating Agencies, the NIMS Insurer and the Swap Counterparty of the occurrence of any of the following events, in the manner provided in Section 10.06:

(i)   the occurrence of an Event of Default pursuant to Section 7.01, subject to the provisions of Section 8.01(d); and

(ii)   the appointment of a successor Servicer pursuant to Section 7.02;

(b)   The Servicer shall notify the Rating Agencies, the NIMS Insurer and the Swap Counterparty of the occurrence of any of the following events, or in the case of clauses (iii), (iv), (v), (vii) and (viii) promptly upon receiving notice thereof, in the manner provided in Section 10.06:

(i)   any amendment of this Agreement pursuant to Section 10.01;

(ii)   the appointment of a successor Trustee or successor Delaware Trustee pursuant to Section 8.08;

(iii)   the filing of any claim under or the cancellation or modification of any fidelity bond and errors and omissions coverage pursuant to Section 3.14 with respect to the Servicer;

(iv)   any change in the location of the Collection Account, or the Distribution Account;