UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION


ERIC P. MAINS
      **PLAINTIFF**

VS.                    CIVIL ACTION NO. 4:15-cv-00036-SEB-WGH

                        **JURY TRIAL DEMANDED**
                        *Electronically filed*

CITIBANK, N.A. as TRUSTEE for the WAMU-HE2 Trust
CHASE BANK, N.A.
NELSON & FRANKENBERGER, P.C.
BOSE MCKINNEY & EVANS, LLP
WYATT, TARRANT & COMBS LLP
BLACK KNIGHT Financial Services, LLC (formerly LPS)
CYNTHIA RILEY
CHRISTINE A. SAUERER
JODI SOBOTTA; and
UNKNOWN JOHN DOE'S
      **DEFENDANTS**


<u>**PLAINTIFF'S RESPONSE OBJECTING TO DEFENDANT BLACK KNIGHT
INFOSERV, LLC'S MOTIONS TO DISMISS.**</u>


    **1.**  <u>**Introduction**</u>

      Plaintiff Eric Mains, by counsel, hereby files his response to Defendant Black
Knight InfoServ, LLC's ("Black Knight") Motions to Dismiss. For the reasons set forth
herein, Defendant's Motions should be denied in its entirety.

      Defendant promotes a number of arguments and theories in its Motion to Dismiss
(Hereinafter "MTD") which it improperly attributes to Plaintiff, and which Plaintiff
clearly never asserted. Further, it raises issues as to Mains' Brief that it has no standing to
raise and are not germane as to Mains' cause(s) of action against Black Knight in his
brief.

First, Defendant asserts that Mains is attempting to retry his case from state court in violation of the *Rooker Feldman Doctrine* and *Res Judicata*. Defendant has failed to recognize that Mains is asserting completely separate and distinct causes of action as against Black Knight in regard to the fraud that it committed and which was recently discovered by Mains. Whether Mains foreclosure action at the state court level had proceeded to conclusion or not, these distinct acts by Black Knight give rise to the liability and damages for which Mains is seeking a redress for, and these claims are barred by neither doctrine. Defendant also seems to ignore that fraudulent acts cannot be the basis for a defense of *Res Judicata*, or that due to its "unclean hands" in the matter by helping to commit and conceal said recently uncovered fraud against Mains, that is estopped from raising these defenses.

Second, Mains has no need to retry his case in the first instance. Defendant Nelson and Frankenberger, P.C. (hereinafter "N&F") voluntarily removed the order for Sheriff sale that had existed on Mains now void note and mortgage in recognition of his validly issued *rescission*. No party came forward to defend against Mains' rescission in the <u>statutorily required 20-day timeframe.</u> If someone intends to appeal the enforcement of Mains' rescission as to his now void note and mortgage back up to the Supreme Court of the United States, ostensibly to inquire with Justice Scalia and the rest of a unanimous court if they "really, really" meant what they said in regard to the Truth in Lending Act (hereinafter "TILA") statute being enforced as written and passed by Congress, that party is not Black Knight by its own admission in its MTD.

Third, and most importantly, nowhere does Black Knight explicitly deny that it committed the fraud Mains' complaint points out. Nor does it deny that this conduct was

2

a direct violation of its multi-state consent order (Please see Exhibit A "Consent Order") or further that they retained N&F to conduct Mains foreclosure while using their own employees to create the fraudulent documents used in executing a false assignment of Mains note.

2. **Standard of Review** Plaintiff adopts and incorporates LPS/Black Knight's description of the applicable standard of review to a motion to dismiss in its "Argument" section.  [Dkt. 30, p. 4-5].

<u>**ARGUMENT**</u>

**A. *Rooker Feldman Doctrine* and *Res Judicata* Do Not Apply to Plaintiff's Complaint**

Defendant uses 13 pages (pages 4-16) to argue points related to *Rooker Feldman*, *Res Judicata*, and arguments about Mains state based claims regarding the Washington Mutual Bank HE-2 Trust (hereinafter "WAMU HE-2 Trust") pooling and servicing agreement, NONE of which is germane as to how and why Plaintiff brought his action against the Defendant. It also argues in these pages that Plaintiff's Complaint should be dismissed due to violations of rule 8 and 9 for lack of brevity, clarity, and identifying issues with particularity. Specifically, Defendant in point A of its argument from pages five (5) to seven (7) argues that basis for Mains' Complaint as to Defendant was that Mains note and mortgage were not timely transferred to the WAMU HE-2 Trust, that the foreclosure judgment against him was defective, and in general that the Plaintiff's in his state foreclosure claim were not the real parties in interest to bring a foreclosure lawsuit. It then states that Mains is attempting to improperly re-litigate issues before the court, and *Rooker Feldman Doctrine* should bar his Complaint.

The problem with Defendant's assertion is that none of this is factual or accurate as to why Plaintiff has filed a Complaint, or as to the causes of action against the Defendant. Plaintiff is seeking redress against Black Knight because they committed fraud by fabricating a document used in a legal action against Mains. They retained the law firm of N&F, who issued a notice of default and proceeded to bring a foreclosure lawsuit against Mains. They did not disclose this relationship to either the state court or Mains despite discovery requests that required disclosing this relationship and basis for claims against him. Even in response to Plaintiff's federal complaint in this case, they still try to dance around the existence of this relationship with the co-defendants and their obligations under a multi state consent judgment (which includes Indiana).  The LPS attorney relationship is documented by news media, and in a Federal Bankruptcy Court case, as Mains points out in paragraph 87 of his Complaint, ***"But, as Gardner explained, LPS manages the attorneys; the bank/servicer clients don't."***

Now as to LPS/Black Knight's retention of said law firms, and how high a degree of control it exercised over them via its contracts with them, one has to look no further then its multi-state settlement agreement (attached as Exhibit A). On pages 11 and 12 of this agreement as to prohibited conduct, LPS/Black Knight cheerfully agrees to refrain from the following in part:

> *Law Firms*
> *h.     LPS shall not improperly interfere with the attorney-client relationship between attorneys and Servicers.*
> *j.      If LPS provides technology or other services that assist law firms or their agents in handling issues relating to processing a foreclosure, bankruptcy, or other legal action, LPS will ensure that its technology and services do not impede, compromise, or otherwise interfere with the activities of a law firm providing legal services to its client.*

4

> k.      *LPS will ensure that foreclosure and bankruptcy counsel and foreclosure trustees to whom LPS provides services have an appropriate Servicer contact so they may communicate directly with the Servicer.*
> m.      *LPS shall not negotiate any retainer agreements between the Servicer and its attorney(s) and LPS shall not be a party to such retainer agreements.*
> n.      *For those attorneys who are using LPS' technology services to access information from Servicers, LPS shall take no action to prevent legal counsel from having appropriate access to information from the Servicer's books and records to perform their duties in compliance with applicable laws.*

Plaintiff notes it does not take a legal scholar to draw from the above the issues that existed during the timeframe of 2008-2010, <u>which also happen to be when LPS/Black Knight was handling Plaintiff's foreclosure action,</u> namely, they did retain and have contracts with the attorneys (***paragraph m above***), they did interfere and try to control attorneys to such an extent, it was an issue even to the point attorneys had access to books and records (***paragraphs h-n***), and it was the one who was so helpful in producing said robo-signed and forged documents used in foreclosure actions like Plaintiff's (***paragraph j***).  The 6th Circuit Court of Appeals in *Slorp v. Lerner, Sampson & Rothfuss*, 2014 U.S. App. No. 13-3402, p. 5-6,  File No. 14a0745n.06, (6th Cir. Sept. 29, 2014) noted the following:

> **The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment."** Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment. **This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation.** According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage;

the defendants misled the trial court by fraudulently misrepresenting **Bank of America's interest in the suit; and Slorp incurred damages when he was compelled [\*9] to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage.** Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III standing. That is all that is required for count one, which alleged a violation of the FDCPA--a federal statute. .... "Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise."

(Emphasis added in bold).

Plaintiff has brought his lawsuit for the exact same reasons as Slorp, not because he is attempting to re-litigate an old case, but because Defendant LPS/Black Knight was retained by co-Defendant Chase Bank, N.A. ("hereinafter Chase Bank") to initiate foreclosure against Mains, and whom Black Knight then further retained N&F to effectuate a court action with fraudulent documents, compelled Mains to defend his interests. Mains incurred damages as a result of this act(s) and now seeks redress.

Defendant could not make more clear that it is basing its *Rooker Feldman* defense on a false assertion it tries to attribute to Mains, and confirms so on page 7 of its MTD where it states in the first paragraph, "*Rooker Feldman precludes lower federal court jurisdiction over claims seeking review of state court judgments*"and in the second paragraph page seven (7) where it asserts, *"The injury the Plaintiff seeks compensation for is the foreclosure judgment itself."*

The first statement while true has NOTHING to do with the Complaint or causes of action Plaintiff brought against Black Knight. Defendant artfully tries to confuse the court on this point, but Mains makes clear in multiple parts of his complaint where he states in paragraph 108,

> "*Mains and his counsel relied upon the validity of the fictitious documents in evaluating his claims and defenses in 2012 when the summary judgment process was instituted against him, and through the appeals process.*"

Paragraphs 167 for Fraud against Defendant,
> *Black Knight, AKA LPS's, collusion and use of its software system allowed the misuse of information, records and the title to the property and to wrongfully control and interfere with the Mains' right to quiet enjoyment of the property.*

Paragraph 170, *"The Mains suffered substantial harm and damage by reason of the above wrongful acts of Defendants as described herein."*

Plaintiff need not repeat *ad nauseum* what is clearly stated in his brief, which is that he was injured due to Defendant's wrongful conduct and concealment of said conduct. Plaintiffs right to reserve his federal claims for a federal court venue before a state court action is final and before completion of any foreclosure action is well recognized in the seventh (7th) Circuit. The fact that Defendants helped to wrongfully conceal their actions so that claims were not able to be brought in a state venue further affirm the standing and venue for which Mains has brought his Complaint. See *Johnson v. Pushpin Holdings, LLC*, 748 F.3d at 773 (7th Cir. 2014)[1]. See also *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015)[2].

Plaintiff does not need to go any further, the 7th Circuit Appeals Court has made very clear, not only does *Rooker Feldman* **not** bar independent claims such as Mains'

---

[1] "The [Rooker Feldman doctrine] does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff. **Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment**." (Emphasis added).
[2] "What Johnson adds - what the defendants in this suit have failed to appreciate—is that federal courts retain jurisdiction to award damages for fraud that imposes extrajudicial injury.   The Supreme Court drew that very line in Exxon Mobil ... Iqbal alleges that the defendants conducted a racketeering enterprise that predates the state court's  judgments ... **but Exxon Mobil shows that the Rooker-Feldman doctrine asks what injury the plaintiff asks the federal court to redress,  not whether the injury is  "intertwined" with something else … Because Iqbal seeks damages for activity that  (he alleges) predates the state litigation and caused injury independently of it,  the Rooker-Feldman doctrine does not block this suit.** It must be reinstated." (Emphasis added).

made as to Defendants conduct, and as Mains has cited as to The United States Racketeer Influence and Corrupt Organizations Act (hereinafter "RICO") activities by Defendant and Co-Defendants, but as *Slorp* and *Iqbal* clearly point out Mains has standing and the Federal court has subject matter jurisdiction to hear his claims. **Mains has clearly not asked the federal court to set aside a state court action in his case**, especially one that is now rendered moot in its effect by Mains' valid rescission. What Mains clearly has asked for is for Defendants to be held accountable for their wrongful activities that forced Mains to have to defend against a state court action.

Plaintiff points out pages four (4) to thirteen (13) were used by Defendant to argue issues not on point, with false statements attributed to Plaintiff, and were clearly erroneous. Defendants claim on page 12 of their MTD that Plaintiff's Complaint is, "*Predicated upon the theory that the mortgagee was not the proper party to foreclose as a result of alleged flaws in the Assignment and non-compliance with the PSA*"

Plaintiff's Complaint is in fact based on LPS/Black Knights *actions* (and the actions of the other named Defendant's in Plaintiff's Complaint) in knowingly and negligently using forged signature documents (Cynthia Riley endorsement on Mains' note), Defective documents (a Deed of Trust in a Mortgage state), and fabricating robo-signed documents (Jodi Sobotta and Christina Anne Sauerer on LPS created assignment) without bothering to try to check for these flaws, correct any flaws if possible, or proceed legally as the law requires them to (and as LPS signed a multi-state consent order to do) (Please see attached Exhibit A).  Defendant's fraud and negligence provided the basis for a lawsuit that otherwise would have been prohibited for lack of foundation. Fraud cannot be the basis for *Res Judicata*, but does raise a claim of "unclean hands" by Plaintiff in

8

regard to LPS/Black Knights' MTD.

**B. Plaintiff's Complaint does not violate Rule 8 & 9, Fed. R. Civ. P.**

Defendant spends pages 14-17 arguing Plaintiff is not in conformity with rule nine (9), claiming Plaintiff has not identified "the who, what, where, when, how" of fraud, and complement him on his "prolixity."  Plaintiff will not spend undue amounts of time and space addressing Defendant's rule nine (9) claims, which are not meritorious (much as Defendant's *Rooker Feldman* arguments). Plaintiff notes that many of Defendants rule nine (9) claims are redundant with ones Plaintiff refutes in Defendant's requests to dismiss his common law Fair Debt Collection Practices Act (hereinafter "FDCPA") and RICO claims.

Without repeating his Complaint brief *ad nauseum* to cover the items Defendant claims are missing, the "Who" was clearly stated to be the listed Defendants in Plaintiffs complaint, including LPS/Black Knight. The "what," as repeated above, was the use of (and participation in producing when needed), of fraudulent documents to bring a lawsuit against Plaintiff, and to pursue a debt it otherwise would have lacked proper foundation to pursue had it followed the law. The "where" was the use of said documents in Indiana courtroom proceeding(s) against Plaintiff, and of course the production of documents at LPS/Black Knights' Minnesota offices. The "when" of actions taken and use of the bogus documents is from 2009 until present day. The "how" as to each Defendant was plainly laid out in Plaintiff's Complaint , including actions taken through mail, wire, and through their retained local counsel in Indiana courts, and does not need reproducing here.

Plaintiff will however clarify one point for LPS/Black Knight because their recollection as to their role in illegal actions and fraud apparently needs some aid for

recollection purposes. On page 15 of their MTD, Defendants state,

> This is particularly troubling with regard to Black Knight because his fraud claim appears to be predicated upon the allegation that "Defendants" intended to coerce him to pay his mortgage loan (Complaint, ¶ 158), however, he fails entirely to make any allegation that Black Knight ever requested a payment from him and, notably, he ceased making payments months before the May 26, 2009 assignment (the only act specifically attributed to Black Knight). See Complaint, ¶¶ 39-40 (Mains ceased making payments because he could not afford them and had gone 90 days without making a payment by April or May, 2009).

LPS/Black Knight was the firm whom retained attorneys to send default notices and attempt to collect against Plaintiff in Indiana court(s), and had an ongoing relationship with said attorneys as noted supra and infra, and knowingly produced a bogus, "*robo-signed*" assignment for said court actions and collection purposes.  This assignment further lacked **ANY** foundational quality for a lawsuit because Mains' note, mortgage, and other documents that LPS/Black Knight based its assignment on were also defective and void as described in his Complaint. LPS/Black Knights activities as described constitute collection activities, especially in light of strictly construed FDCPA statutes. Under the FDCPA, a "debt collector" is defined as,

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Defendant also keeps harping on the fact that Plaintiff ceased making payments on his "loan." Plaintiff fails to see why this is of relevance to the Defendant LPS/Black Knight in this case. It is rare indeed to find a Defendant who on one hand claims not to be part of a debt collection effort, but then in the same breath has the audacity to assert lack of payment as to a "loan" that it had to produce unlawful documents to allow for said

collection activities to proceed, as some type of defense or mitigant. The doctrine of "unclean hands" apparently is foreign to the Defendant.

## C. Plaintiff's Common Law Claims Should Not Be Dismissed

Defendants pages 17-20 are spent discussing why Plaintiffs common law claims should be dismissed. Defendant claims on page 17 that Plaintiff lacks detrimental reliance as an element to his fraud and negligence claims. Defendant incorrectly asserts that because Plaintiff's claims are again based on prior state court actions and whether Citibank possessed a right to foreclose. Reliance upon the validity of the assignment which Black Knight produced, which it failed to disclose its part in production of (or its retention of law firms to prosecute Plaintiff), is the reliance Plaintiff addresses.  Plaintiff was forced to defend against the assignment which was held out as being valid, when in fact it was not and which a court action could not have been maintained against Plaintiff if this were known and disclosed. Defendant misses the point that Plaintiff would not have had to defend against a court action had it not been for the Plaintiff's and the courts reliance on the validity of the assignment.

Page 18's arguments regarding elements for fraud fail for similar forays into the illogical. First, LPS/Black Knight claims its assignment could not represent a material fraud. It backs up this laughable defense by claiming that a fraudulently executed assignment "exists for the protection of third parties," that the forged and undated endorsement in blank by "Cynthia Riley" (when she no longer worked for WAMU by her own federal deposition) was effective to transfer Mains' note "by operation of law," and that there created assignment and fraud was "superfluous" and could not be material. They claim Citibank **could have** foreclosed on Plaintiff by simply holding documents

riddled with defects and forgeries, even though it knew these defects and its own conduct made them void[3]. Now, besides the fact that Plaintiff **could decide** to file to have the state court judgment overturned due to the fraud he discovered, and report the parties involved to the local prosecutor for criminal charges to be filed, Plaintiff has so far deferred at this point. Plaintiff will note _as a former Federal Bank Regulator for the FDIC_ that there are a host of regulatory agencies and courts who consider falsely produced documents to be "material."  In fact, Plaintiff believes that LPS/Black Knight may have run into a few of said agencies when it had to pay One Hundred Twenty Seven million dollars ($127,000,000) to promise to cease making these "immaterial" documents in 2013. Of that settlement, and as to those activities, Plaintiff can find no better place to recount what one news blog wrote about it at the time to drive home the "materiality" of said activities,

> The issues with LPS go well beyond robosigning. "Robosigning" was a convenient label to divert attention from the fact that the party that was attempting to foreclose didn't merely have improperly executed documents...It was that it was often the improper party, raising a host of issues (borrower exposure to liability from the proper party, which has occasionally turned out to be a real issue, clouded title).

---

[3]*Thomas v. Thomas*, 923 N.E.2d 465, 470-71 (Ind. Ct. App. 2010) Moreover, even in the absence of a duty to inspect the property, **we believe that irregularities on the face of the forged release of mechanic's lien would have put a reasonably prudent person on inquiry notice** that something was amiss...A notary public is prohibited from acknowledging any instrument unless the person executing it signs it in her presence or affirms to her that the signature on the instrument is the person's own, and there is no indication that either of those things happened in this case. Ind. Code § 33-16-2-2 (2001) (now Ind. Code § 33-42-2-2 (2009)). **Indeed, it occurs to us that the whole purpose of a notary public acknowledgment is to prevent just the sort of forgery and fraud that occurred here...Trustcorp clearly had the means to discover that the lien the forged instrument purported to release did not exist under that designation, and yet did not use those means...**Benjamin contended below that **Trustcorp's mortgage was rendered invalid by virtue of Richard's fraud,** and the trial court agreed...On appeal, Trustcorp counters that **Indiana courts have recognized a bona fide purchaser exception** to the above rule, and we agree that this is indeed the case...the question here is whether Trustcorp qualifies as a bona fide mortgagee. **As we previously decided, however, Trustcorp could not have been a bona fide mortgagee due to its failure to investigate Benjamin's interest** in the home...**It is a fundamental principle, worthy of the rank of a maxim, that what fraud creates equity will destroy.**

http://www.nakedcapitalism.com/2013/02/yet-another-cost-of-doing-business-fine-lender-processing-services-settles-with-46-attorneys-general-for-127-million.html

Defendant on page 19 asserts that negligent misrepresentation was not appropriate because it did not guide Plaintiff in a business transaction and the economic loss doctrine precludes a tort claim. Again, Defendant misconstrues the cause of Plaintiff's action against them and Indiana law as plainly set out by the Supreme Court of Indiana in *U.S. Bank, N.A. v Integrity Land Title Corp.*, 929 NE2d 742, 745-46 (Ind., 2010). From that case,

> However, we cautioned that **the economic loss rule admits of certain exceptions** for purely commercial loss **in several special circumstances. Indiana courts should recognize that the rule is a general rule and be open to appropriate exceptions, such as** (for purposes of illustration only) **lawyer malpractice**, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, **and negligent misstatement."**

(Emphasis added).

Regarding whether contracts preclude a court action, the Court further points out,

> Moreover**...the existence or non-existence of a contract is not the dispositive factor for determining whether a tort action is allowable where special circumstances and overriding public policies have carved out exceptions for tort liability.** As we noted there, Professor Mark P. Gergen provides some helpful considerations relevant to determining the existence of a tort duty for negligent misrepresentation as part of a recent project of the American Law Institute: ...'[a]n actor may undertake a duty when it supplies specific information in response to a specific request that makes it clear the recipient intends to attach significant importance to the information in making a decision that exposes the recipient to a risk of loss if the information is inaccurate.' Applying these factors, **we conclude that Integrity had a duty under Restatement § 552 to communicate the state of a title accurately when issuing its preliminary commitment**. We find the reasoning of Justice Matthews of the Alaska Supreme Court in Bank of California persuasive: 'We agree with the authorities which hold that there may be tort liability for misrepresentations made in preliminary

13

commitments for title insurance. In our view, **such commitments provide an essential service to prospective buyers and lenders. They are told what transactions must take place before they can receive clear title or an effective security**.  In reaching this conclusion, the court stressed that  'preliminary title reports are normally relied on by insureds, escrow agents, and lenders with full knowledge, and sometimes with the encouragement, of the insurance company.'  **Title searches are frequently required in situations involving transactions in which the state of the title must be known accurately or the customer will foreseeably suffer harm that is both certain and direct**.

Id. at 748-49.  (Citations omitted) (Emphasis added).

Plaintiff points out the importance the court puts on the integrity of the land title chain. It goes without saying the importance of borrowers to be able to rely on those who are tasked with having accurately reviewed or participated in said chain, and that the consequences of a clouded title chain extend far beyond pure "economic loss" to effecting a borrowers quiet enjoyment of his home, his emotional well being, indeed the very stable existence of family. Plaintiff and his counsel requested accurate information of any holders claimed interest in his property, and how this information was derived in discovery. LPS/Black Knight and its retained counsel were obligated to Plaintiff and the court to provide accurate information, and knowingly supplied falsified and inaccurate information, damaging Plaintiff and committing fraud upon the court, and in direct violation of an existing consent judgment.

Defendant's misrepresentations as to the validity of the assignment it produced put a cloud on Plaintiff's title that forced Plaintiff to defend against it. Defendants concealed from the court and Plaintiff its participation in this activity, even while under a consent order requiring it to clear up such defects and admitting to the duty of care it owed consumers such as Plaintiff.  Defendant was clearly negligent in not having

14

inquired into the defects and validity of the underlying documents on which it based the very "robosigned" documents it produced *on.* It well knew the Plaintiff and the state court would rely on the accuracy of the documents in deciding whether a valid claim and a cloud on the Plaintiff's title existed. Defendant knew damages would result based on false or negligent misrepresentations, but for LPS this was an acceptable practice and cost of doing business if caught, as they have been in Plaintiff's case.

Plaintiff has a very real and costly business relationship with his attorney whom he had to retain in order to defend against this cloud to his title in a state court action. Defendant is trying desperately to avoid Plaintiff's suit proceeding because it knows as a logical sequence of discovery it will have to produce a copy of the contracts documenting its relationship with both Chase Bank, as claimed servicer, and N & F, as lead law firm, (said contracts which will cement relationships among the parties). Plaintiff pointed out the elements for negligent misrepresentation in paragraph 146 of his Complaint [4]. Plaintiff's contention that Defendant supplied him with false information has not been refuted, or that he harmed Plaintiff's by negligently supplying him with false information which guided him in his business transaction with his attorney, and that its contractual relationship with Chase Bank made Defendant part of a relationship with Plaintiff. These issues preclude dismissal of Plaintiff's negligent misrepresentation claims.

Plaintiff's negligence claims as contained in his Count Seven (7), contrary to

---

[4] One who, in the course of his business, profession or employment, **or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information,** if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Tri-Professional Realty v. Hillenburg*, 669 N.E.2d 1064, 1068-1069, 1996 Ind. App. LEXIS 1146, 11-12 (Ind. Ct. App. 1996).

Defendants assertions, already contain the elements Defendant claims are lacking[5], and these admissions and elements are again part of the very multi-state consent judgment it signed on pages 17 & 18 of Exhibit A, where it states,

>    **REMEDIATION TO HOMEOWNERS 4.1** "**LPS agrees to identify Mortgage Loan Documents executed by LPS between January 1, 2008, and December 31, 2010, that may require remediation and to remediate those documents** when LPS has the legal authority to do so **and when reasonably necessary to assist any person or borrower** or **when required by state or local laws**".

(Emphasis added)

LPS/Black Knight was obligated and agreed to help consumers, like Mains, in remediation of its defective and fraudulent documents. Defendant agreed it clearly owed a duty to consumers like Plaintiff under the law, it recognized it breached this duty by producing the defective and fraudulent documents and retaining law firms to enforce them. It attempted to gain title to Plaintiff's property through a sham foreclosure filed by its retained counsel, N&F, injuring Plaintiff economically (attorney fees and cost to defend), emotionally (divorce, loss of quiet enjoyment of his home), and physically (hospital stay, high blood pressure) as described in his Complaint. LPS/Black Knight, even though under a consent judgment, wants Plaintiff's common law causes of action against it dismissed, based on a "So what, what did we do wrong? Homeowners like Plaintiff are lazy bums, they are looking for a free house, they deserve everything they get! We hold the moral high ground, the illegal end justifies the means!" Plaintiff begs to differ, and his count seven (7) for negligence and other common law counts should stand.

---

[5] For actionable negligence to be present, a plaintiff must prove three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the breach. *Hatton v. Fraternal Order of Eagles* (1990), Ind. App., 551 N.E.2d 479, 480.

**D. Plaintiff's FDCPA Claims Should Not Be Dismissed.**

Defendant spends pages 20-26 discussing arguing Plaintiff's FDCPA claims should be dismissed, some based on issues Plaintiff has already addressed supra and are clearly not on point. These issues include the following: That Plaintiffs only allegation of wrongful conduct by LPS/Black Knight is execution of an assignment; that they did not participate or communicate with Plaintiff in an attempt to wrongfully or unfairly collect on a debt against Plaintiff; and that they are therefore not a debt collector. Plaintiff has already pointed out that LPS/Black Knight by their own admission in their multi-state settlement agreement, retained and controlled the attorneys (on behalf of the purported loan servicers) to collect alleged debts from thousands of homeowners, and were very active in controlling the attorneys debt collection activities. They fabricated and provided forged and robo-signed documents to wrongfully pursue alleged debts, as they did in Plaintiff's case, and without bothering to verify the veracity of the underlying documents they based their further defective documents on, in direct violation of their 2013 multi-state agreement (and about 400 years of contract and real property law). They used their retained attorneys (N&F in Plaintiff's case) to threaten and to take legal action against homeowners which there would be no foundation to take, but for the forged and robo-signed documents that they produced. Plaintiff clearly points out in his Complaint, on paragraph 66, that Jodi Sobotta is/was a known and listed LPS/Black Knight employee from Lynn Syzmoniak's *Qui Tam* lawsuit which resulted in the multi state settlement with LPS, and on paragraph 73 and 74 that Christina Anne Sauerer is also a known LPS employee and robo-notary (though not any longer since being disciplined by the state of Minnesota) as noted on multiple websites.

17

Defendant's response to their involvement and activities as described above, detailed on page 23 of its MTD, is that creating defective and false assignment documents to be used in collection activities it controls does not violate the FDCPA, and that Mains did not identify his assignment as the one prepared by LPS/Black Knight's software (even after spending a good portion of his brief describing how they did prepare it). On page 24 of its MTD, Defendant responds that its involvement in creating the assignment is "alleged," it was only performing "ministerial duties."  Page 25 of its MTD, Defendant responds that it was not involved with requesting payments from debtors, making contact, that they did not use unfair methods to collect debts, and again that Plaintiff did not show that it directed or had an interdependence with its law firms. Plaintiff has already covered and shown in both his Complaint and in this response these responses to be lacking in candor.

What should "shock the conscience" of the Court is the complete and utter lack of morality that LPS/Black Knight exhibited in creating forged and robosigned documents to be used in legal proceedings against consumers, its lack of remorse even to this day in doing so, its evasiveness and lack of ability to accept responsibility for cleaning up a mess which it paid $127 million in damages for participating in. Defendant fails to even acknowledge in this MTD that, "YES" it has a signed a consent order acknowledging it has responsibility for remediating the fraudulent documents it produced, and that it agreed stop taking further prohibited actions as described in that consent judgment. It still, after all this, continues to do what it is prohibited by law from doing, and fails to acknowledge that this is exactly what it did and is doing in Mains' case. Lastly, LPS/Black Knight claims that Plaintiff "freely concedes" he defaulted on his mortgage

note before the assignment was executed, and Plaintiff's "lack of due diligence" and LPS' conduct does not meet the bar for tolling the statute of limitations for the FDCPA.

First, Plaintiff admitted he stopped paying on a "loan," which the underlying foundation of, the character of, and parties to it, all were in question. That note and mortgage are now void, and in any event are irrelevant as to Defendant's conduct. Second, at no time during discovery in his state court action did Defendant's disclose their relationship with N&F, or that they included fees for their services in the foreclosure complaint against Plaintiff. i.e, LPS put claims for money owed them in Plaintiff's foreclosure action. N&F failed to advise the Court, or Plaintiff, of their retention by and through LPS, which due diligence was not able to uncover until recently, and which Defendant still will not admit its involvement in despite all the evidence in Plaintiff's Complaint.

Plaintiff would submit that a review of Indiana Trial Rule 26 and 33, and their Federal counterparts, might be in order for Defendant LPS/Black Knight and their current counsel, and all the prior law firms who are now named as Defendants in Plaintiff's Complaint.  In the case of *Outback Steakhouse of Florida v. Markley,* 856 N.E.2d 65, 77 (Ind. 2006) the Indiana Supreme Court sums up counsels duty to disclose a material party in discovery,

> However, whether the omission was intentional or negligent, and even if, as appears here, only the attorneys and not the Markleys are responsible for the nondisclosure, we readily conclude that the initial omission was a violation of Indiana Trial Rules 26 and 33 and therefore "misconduct" within the meaning of Rule 60(B)(3). Whether it was prejudicial remains to                                             be                                explained.

Plaintiff requested in his state court action several times the identity of parties claiming an interest in Plaintiff's note and mortgage, parties who had knowledge of the

debt, and who had knowledge regarding "any other amounts claimed owed from Mains." The silence was deafening, and it is not because Defendants and their counsel were not required to respond, it was because they were evasive and refused to.

Plaintiff further submits that if all of LPS/Black Knight's assignment fabrication and active concealment of its collection activities as described supra are alleged to not rise to the level of "extraordinary circumstances" required for equitable tolling, then equitable tolling itself is meaningless. Mains spent paragraphs 194-197 in his Complaint explaining why equitable tolling does apply, and need not further discuss here. Plaintiff will point out that if Defendant Wyatt, Tarrant and Combs is found to have been retained by LPS/Black Knight in furtherance of a new collection action against Plaintiff post his rescission (as described in paragraph 191 of Plaintiffs Complaint), that they are both within the statute of limitations for FDCPA violations and nothing exempts attorney activity in foreclosure matters under the FDCPA[6]. Defendant's motion to dismiss FDCPA claims should be denied.

### E. RICO Counts Should Not Be Dismissed.

Plaintiff will address Defendant's final arguments as to his RICO cause(s) of action which Defendant argues on pages 25-30 of its MTD. Most of Defendants arguments are redundant with prior ones in its MTD, and need not be addressed at length. Plaintiff has already pointed out his cause of action and damages claims against Defendant stem from its wrongful and illegal conduct in creating robosigned and illegitimate documents as used in Plaintiffs foreclosure action (and thousands of others).

---

[6] "Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of "debt collection" under the FDCPA see *McLaughlin*, 756 F.3d at 245" ...see pg.18. "We conclude that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview under *McLaughlin*" pg 19, See *Kaymark v. Bank of America NA*, No. 14-1816 (3d Cir. 2015)

Defendant's wrongful conduct is further evidenced by the terms of its multistate consent judgment which require LPS/Black Knight to refrain from further creating said robosigned documents and "tweaking" certain elements of its control over its attorney network on behalf of the loan servicers it contracts with.  LPS/Black Knight's conduct was unlawful, and was part of a larger concerted enterprise of Banks and Servicing entities (Including Citibank, N.A. and Chase Bank in Plaintiff's case) which it had a repeated pattern of engaging in unlawful conduct for the benefit of the enterprise to take control of real estate assets which the enterprise otherwise lacked the ability to take control of but for LPS/Black Knight's assistance with as part of the racketeering activity Plaintiff laid out in his Complaint. Plaintiff has already discussed LPS/Black Knight's direct and distinct  unlawful activities as to being the cause of part his injury, much as in *Slorp* and *Iqbal*, supra, and but for this activity, Plaintiff would not have incurred damages. Plaintiff's cause of harm was not a failure to make loan payments on a still yet undefined transaction; it was having to defend against LPS/Black Knight's unlawful fraud in concert with the other named party Defendants to the RICO enterprise. Mains' Complaint carefully lays out in paragraphs 88-98 how the RICO enterprise operated among participants, and in paragraph 202-212 further details as to the structure and participants. Plaintiff further points out in paragraph 204 that, "18 U.S. Code § 1962(d), ___*also makes it unlawful for any person to conspire to violate RICO."___  Defendant spends page 30 denying Plaintiff addressed issues of "cooperation and coordination", "enterprise", "structure and goals", which Plaintiff did address in his Complaint. Plaintiff and the multistate consent judgment both discuss Defendant's unique service in providing robosigned documents which were used for the benefit of the enterprise, and the control

LPS exerted over the network of attorneys it retained for the banks and servicing entities. Defendant clearly wants their MTD to be granted because they hope this will prevent discovery which will further cement Plaintiffs existing RICO claim elements.  Plaintiff has met his initial burden as to sustaining his RICO claims, and Defendant is improperly trying to get the claims prematurely dismissed, and their motion to dismiss count ten should be denied.

<u>**CONCLUSION**</u>

Defendant Black Knights Motion to Dismiss should be rejected in its entirety and Plaintiff's Claims/Counts should be preserved[7] for the reasons cited supra and because factual issues remain for the trier of fact.

Respectfully submitted.

/S/ Jon M. Schulte_____
Jon M. Schulte

---

[7] Plaintiff, reserves the right to include LPS/Black Knight in existing claims or new ones as discovery might lead to.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2015, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

Vilda Samuel Laurin, III    slaurin@boselaw.com, cosman@boselaw.com

Thomas Eugene Mixdorf    thomas.mixdorf@icemiller.com, carla.persons@icemiller.com

Michael A. Dorelli    mdorelli@hooverhullturner.com, rmiller@hooverhullturner.com

Nathan T. Danielson    ndanielson@boselaw.com, mwakefield@boselaw.com, rmurphy@boselaw.com

Derek R. Molter    derek.molter@icemiller.com, bunn@icemiller.com

Patrick A. Ziepolt    pziepolt@hooverhullturner.com, gsmith@hooverhullturner.com, patrick.ziepolt@gmail.com

Fred O. Goldberg    fgoldberg@bergersingerman.com, mferguson@bergersingerman.com

/S/ Jon M. Schulte_____
Jon M. Schulte

\