UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ERIC P. MAINS,<br><br>    Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A. as TRUSTEE for the WAMU-HE2 TRUST, CHASE BANK, N.A., NELSON & FRANKENBERGER, P.C., BOSE MCKINNEY & EVANS, LLP, WYATT, TARRANT & COMBS LLP, BLACK KNIGHT Financial Services, LLC (formerly LPS), CYNTHIA RILEY, CHRISTINE A. SAUERER, JODI SOBOTTA; and UNKNOWN JOHN DOE'S<br><br>    Defendants, | CIVIL ACTION NO. 4:15-CV-SEB-WGH<br><br>Hon. Sarah Evans Barker |

## DEFENDANT CYNTHIA RILEY'S REPLY TO PLAINTIFF'S OPPOSITION TO RILEY'S MOTION TO DISMISS AND COVER PAGE PURSUANT TO LOCAL RULE 5-11

DATED: August 7, 2015

                Louis S. Chronowski (SBN 32331-45)
                Jordan S. Huttenlocker (SBN 30351-02)
                DYKEMA GOSSETT PLLC
                10 South Wacker Drive, Suite 2300
                Chicago, Illinois 60606
                Telephone: (312) 876-1700
                Facsimile: (312) 876-1155
                lchronowski@dykema.com
                jhuttenlocker@dykema.com

                JONATHAN M. WEISS (Cal. SBN 250307)
                jonathan.weiss@kirkland.com
                KIRKLAND & ELLIS LLP
                333 South Hope Street
                Los Angeles, California 90071
                Telephone: (213)680-8400
                Facsimile: (213)680-8500

CHICAGO\4555267.1
ID\JSHU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

ERIC P. MAINS,

    PLAINTIFF,

v.

CITIBANK, N.A. as TRUSTEE for the
WAMU-HE2 Trust,
CHASE BANK, N.A.,
NELSON & FRANKENBERGER, P.C.
BOSE MCKINNEY & EVANS, LLP,
WYATT, TARRANT & COMBS LLP,
BLACK KNIGHT Financial Services, LLC
(formerly LPS),
CYNTHIA RILEY,
CHRISTINE A. SAUERER, JODI
SOBOTTA; and
UNKNOWN JOHN DOE'S

    DEFENDANTS.

CIVIL ACTION NO. 4:15-036-CV-SEB-WGH

Hon. Sarah Evans Barker

## DEFENDANT CYNTHIA RILEY'S REPLY TO PLAINTIFF'S OPPOSITION TO RILEY'S MOTION TO DISMISS

### INTRODUCTION

Faced with the unassailable fact that Plaintiff's claims against Ms. Riley all arise out of actions she took on behalf of Washington Mutual ("WaMu")—thus subjecting those claims to the administrative exhaustion requirements of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")—Plaintiff attempts to improperly plead new allegations in his Opposition. After two iterations of his 90-plus page complaint, Plaintiff now alleges for the first time that Ms. Riley placed her endorsement on Plaintiff's note after 2009, while Ms.

Riley was an employee of JPMorgan Chase Bank Bank, N.A. ("Chase"). *See* Dkt. 68 at 3. Aside from being manifestly improper, Plaintiff's new factual allegations regarding the timing of Ms. Riley's endorsement flatly contradict the allegations of the First Amended Complaint. Dkt. 15, ("FAC").

Plaintiff's FAC alleges that Chase's wrongdoing arose when Chase knew or should have known of Ms. Riley's "fraudulent" endorsement on Plaintiff's note and did nothing to correct the problem—*not* that Chase was responsible for the allegedly improper endorsement in the first instance. Plaintiff did not plead in his FAC, as he now alleges in his Opposition, that Ms. Riley, *as an employee of Chase,* had created the errors of which Plaintiff complains. Instead, Plaintiff implausibly alleged in his FAC that Ms. Riley "apparently decided to sneak back in the [WaMu] office for a day sometime after December 20, 2006 . . . and make sure she personally endorsed Mains note." FAC ¶ 64. This vague and implausible allegation is belied by the deposition transcript that Plaintiff himself has attached to both his FAC and his Opposition, clearly showing that Ms. Riley was a Vice President of WaMu, the capacity in which Ms. Riley endorsed Plaintiff's note, until January 2008 and that his December 2006 note would have been endorsed within days of closing as a matter of course. Dkt. 68, Ex. 1 at 36-7, 82-83; *see also* Decl. of Evan L. Grageda (filed concurrently herewith) ("Grageda Decl."). ¶5 Ex. A (attaching Cynthia Riley Job Profile corroborating that she was a WaMu Vice President through January 2008). Plaintiff cannot now belatedly allege that Ms. Riley signed the note endorsement at the direction of Chase in 2009 as a means to amend his FAC to cure its obvious defects.

Specifically, Plaintiff alleged in his FAC that his claims against Chase were not subject to FIRREA because they "flowed ***directly*** from Defendants actions by *failing to correct errors and in knowingly capitalizing on the situation* to Mains detriment." FAC ¶ 33 (emphasis added).

2

Plaintiff further alleged that "Chase bank . . . had a duty *not to compound or exploit errors it became aware of* against Mains, a*nd to correct them once discovered.*" *Id.* ¶ 31 (emphasis added); *see also id.* ¶ 30 (alleging that Chase, as the bank purchasing WaMu's assets from the FDIC, had a "responsibility for correcting and taking the appropriate actions regarding errors in loan documents it becomes aware of"). Thus, the animating theory of Plaintiff's FAC regarding the allegedly fraudulent endorsement is that Chase, as the bank that purchased WaMu's assets from the FDIC (including Plaintiff's note), inherited an obligation from WaMu to correct the purportedly invalid Cynthia Riley endorsement, but willfully failed to do so. Nowhere in the FAC does Plaintiff allege that Chase directed Ms. Riley, as a Chase employee, to place her WaMu endorsement stamp on his note after Chase acquired the note in September 2008 as part of its Purchase and Assumption Agreement with the FDIC.

Notwithstanding Plaintiff's attempt to re-plead his complaint in his Opposition, Plaintiff's FAC acknowledges that Chase acquired his note already endorsed in blank and simply alleges that Chase knowingly failed to cure the defect when it acquired the loan. When the Court looks beyond the improper jurisdictional allegations of Plaintiff's Opposition to the evidence submitted on the issue, it is clear that Ms. Riley was a Vice President of WaMu through January 2008. Thus, Ms. Riley's allegedly invalid endorsement of Plaintiff's December 2006 note was an act or omission on the part of WaMu and accordingly subject to the administrative exhaustion requirements of FIRREA.

## ARGUMENT

### A. Plaintiff Cannot Plead Facts for the First Time in Opposition to a Motion to Dismiss to Avoid Dismissal

Cases throughout the Seventh Circuit have held that a "complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss." *Graham v. Henderson*, 897

3

F. Supp. 1157, 1159 (N.D. Ind. 1994) *aff'd,* 59 F.3d 173 (7th Cir. 1995); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (stating, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Lapham-Hickey Steel Corp. v. A.G. Edwards Trust Co., FSB.*, No. 03 C 3282, 2003 WL 22324877, at *3 (N.D. Ill. Oct. 8, 2003) (where "allegations do not appear in the complaint . . . a brief in opposition to a motion to dismiss may not amend the complaint.").

Plaintiff himself admitted in his FAC that WaMu's "attempted transfer of his loan to the WAMU HE-2 Trust" was "fatally defective" as a result of "the banks fail[ure] to properly endorse" the note. FAC ¶¶ 25-26; *see also id.* ¶ 65 ("Was WAMU trying to transfer the note into the Trust directly, but failed to endorse it properly? . . . We will never know as Washington Mutual Bank no longer exists and was dissolved in 2008."). Plaintiff concedes, as he must, in his Opposition that these were his allegations, but then attempts to downplay them when he states that he "pointed out that some of WAMU's acts *may* have made the transfer to the WAMU HE-2 Trust fatally defective . . . ." Dkt. 68 at 7 (Mains' emphasis).

Realizing that these admissions place any claims against Ms. Riley squarely within the ambit of FIRREA's administrative exhaustion requirement, Plaintiff now attempts to allege in his Opposition—for the first time—that "evidence . . . strongly points to [the endorsement] having been placed on Mains' note . . . during [Ms. Riley's] employment with Chase Bank (post 2009)." *Id.* at 3. This is an allegation which appeared nowhere in either Plaintiff's initial Complaint or in the FAC and is in fact inconsistent with the allegation that *WaMu* effectuated an invalid endorsement and transfer of Plaintiff's note. Such a post-pleading attempt to cure pleading defects is manifestly improper.

4

*Perkins v. Silverstein*, 939 F. 2d 463 (7th Cir. 1991), is instructive. In *Perkins*, the Seventh Circuit found that a Plaintiff could not cure oversights in her complaint through a "response to the defendants' motion to dismiss." *Id.* at 470. In *Perkins*, the Plaintiff had failed to allege compliance with statutory notice requirements with respect to Title VII claims she had asserted against her employer. *Id.* Plaintiff then attempted to "cure both oversights in her response to the defendants' motion to dismiss." *Id.* The court rejected the plaintiff's belated attempts to properly plead her claim. *Id.*

Similar to the regulatory requirements laid out for a Title VII claim in *Perkins*, Plaintiff here had an obligation to undertake the administrative exhaustion steps required by FIRREA. And as in *Perkins*, Plaintiff here attempts to sidestep statutory requirements by belatedly presenting new "facts" in opposition to a motion to dismiss that are intended to cure the deficiencies in the FAC. Moreover, as discussed in Part B below, these new allegations, even if they had been properly pled, are flatly belied by the document that Plaintiff himself attached as an exhibit to his Opposition and complaint. Under the well-established law of this Circuit, facts reflected in a document incorporated by reference in, and appended to, a complaint control over contrary allegations in the body of the complaint. *See Fisher v. Asset Acceptance, LLC*, No. 04 C 2585, 2005 WL 1799275, at *2 (N.D. Ill. July 26, 2005) (stating that "[i]f the documents attached to the complaint contradict allegations in the complaint . . . the document trumps the allegations.").

In any case, Plaintiff's novel allegation should not be considered by this Court because it is raised, not in an amended complaint, but instead in an Opposition to a Motion to Dismiss, contrary to the law of this Circuit.[1]

---

[1] While Plaintiff attempts to distinguish the case of *Berg v. JPMorgan Chase* by stating, correctly, that the plaintiffs in that case did not allege any independent misconduct on the part of Chase in support of their claim,

### B. Plaintiff Cannot Plead Facts Contrary to the Documents Submitted in Support of His First Amended Complaint

The Seventh Circuit has held that "a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992). "If the documents attached to the complaint contradict allegations in the complaint, however, the document trumps the allegations." *Fisher*, 2005 WL 1799275, at *2. Where a movant challenges a district court's subject matter jurisdiction under Rule 12(b)(1), a district court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1116 (S.D. Ind. 2011) (internal quotations omitted).

Here, Plaintiff has attached to his Complaint, FAC, *and* his Opposition a copy of a deposition given by Ms. Riley in 2013 (a deposition which is subject to a protective order issued by the 11th Judicial Circuit Court in and for Miami-Dade County, Florida, proscribing posting the deposition or any information gained from the deposition on the internet or a website accessible to the public).[2] Though Plaintiff selectively cites to this deposition in an attempt to distort Ms. Riley's employment history, and by extension her endorsement of the note as a WaMu Vice President, a full review of the transcript reveals that Ms. Riley was indeed a Vice President of WaMu at the time Plaintiff's note would have been endorsed in the regular course of

---

(Dkt. 68 at 10-11), Plaintiff fails to note how any independent claim of misconduct *in this case* would affect claims against Ms. Riley, where the only factual allegation against her set forth in the FAC is that Ms. Riley endorsed Plaintiff's note after changing roles at WaMu in November 2006.

[2] Consistent with the aforementioned protective order, Ms. Riley has provisionally lodged this reply under seal and has concurrently moved the Court to seal the reply and remove access to the *Orozco* deposition from the Court's electronic docket, which is publicly accessible on the Internet via PACER.

business.[3] Ms. Riley's employment records also corroborate her testimony that she remained a Vice President of WaMu until January 2008. As such, any claim Plaintiff has against Ms. Riley necessarily arises out of her actions while acting under the authority of WaMu, and those actions are thus subject to FIRREA's administrative exhaustion requirement.

Plaintiff claims in his Opposition that "Riley had no authority to authorize or endorse Mains' note for WAMU at the time her endorsement was applied to Mains' note. This is per her own deposition as to her employment dates with WAMU . . . ." Dkt. 68 at 5. Plaintiff then goes on to quote from Ms. Riley's 2013 deposition, concluding that she ceased to be a WaMu Vice President in November of 2006. *Id*. Plaintiff grossly distorts Ms. Riley's deposition testimony and mischaracterizes her WaMu employment history.

Notwithstanding Plaintiff's repeated assertions to the contrary, Ms. Riley plainly testified she served as a Vice President of WaMu—her endorsement was made in her capacity as Vice President—from 2004 to 2008, including the period covering Plaintiff's December 2006 note. *Id.*, Ex. 1 at 35-37. Plaintiff goes through extreme pains to explain away Ms. Riley's plain testimony that she remained a Vice President of WaMu until January 2008. Plaintiff implausibly argues in his Opposition that just because Ms. Riley testified that she did not cease being a Vice President of WaMu until January 2008, does not mean she was employed by WaMu in 2008 because her name might still have been listed in "bank computer systems" after her termination.

---

[3] Both Plaintiff's FAC and Opposition brief imply that Ms. Riley was "laid off" by WaMu in 2006. *See* Dkt. 68 at 5; FAC ¶ 64. Plaintiff misconstrues the term "laid off" to suggest that Ms. Riley lost her title with WaMu. This manipulation of her deposition testimony is directly contradictory to other portions of Ms. Riley's deposition in which she clearly explains that she merely changed job duties at WaMu in November 2006—she was not "laid off" in the sense that she was fired from her role as vice president. *See* Dkt. 68, Ex. 1 at 36:25-37:2, 62:18-22 ("Q -- When did you cease being a vice president with the bank? A – 2008. Q --And come November of 2006 you got involved with the project of doing exactly what? A -- I project managed for about the next 12 months. One of the projects was the movement of the vault from Stockton to Florence, South Carolina."). Plaintiff's suggestion that Ms. Riley no longer worked at WaMu when his note was endorsed in December 2006 is demonstrably false, and therefore should be rejected. *See also* Grageda Decl. ¶ 6 (noting that Ms. Riley was a Vice President of WaMu continuously from May 2004 through January 2008).

Dkt. 68 at 8. Such strained assertions are not credible and fly in the face of the plain meaning of Ms. Riley's testimony and the historical business records that corroborate it. *See* Grageda Decl. ¶ 5 Ex. A.

As Vice President, Ms. Riley specifically authorized other WaMu employees to endorse notes with endorsement stamps bearing her signature. Dkt. 68, Ex. 1 at 49, 81. Starting in 2004, Ms. Riley was assigned to one of the bank's "secondary delivery operations" in Florida, where her department would "go through the note review process, endorse them, [and] send them to the custodian." *Id.* at 36:22-25, 82:25-83:1.

Further, the endorsement would be placed on the note within days after closing. *See Id.* at 82-83 ("The notes after closing occurred were shipped into our office, and we would go through the note review process, endorse them, send them to the custodian. *And that would just be a matter of days.*") (emphasis added). Because, as a matter of course, WaMu endorsed notes contemporaneously with their origination, Plaintiff's unsupported assertion that the endorsement happened three years later, when Ms. Riley was employed by Chase, is wholly implausible.

Ms. Riley stopped working in "secondary delivery operations" in November 2006, because the Florida secondary delivery department was closed and consolidated with the operations of a parallel department in South Carolina. *Id.* at 38, 61; *see also* Grageda Decl. ¶ 7. For approximately the next 12 months, including the time when Plaintiff's December 2006 note would have been endorsed, Ms. Riley remained involved with the custody of notes, still as Vice President, working on moving the "custodial vault" to South Carolina. Dkt. 68, Ex. 1 at 61; *see also* Dkt. FAC ¶ 64.

Plaintiff's initial theory appeared to be vaguely based on Ms. Riley's testimony that she never worked in "'Secondary Delivery Operations' at Florence, South Carolina." Dkt. 68 at 6.

8

The mortgage's return address was in South Carolina, Plaintiff contends, which purportedly confirms that "Riley would not have been able to have stamped Mains' note with any authority" because she never worked in South Carolina. *Id.*

Plaintiff is incorrect and his theory is based on sheer speculation. Ms. Riley never testified she withdrew her authorization for the endorsement of notes at any time during her tenure as Vice President. Plaintiff ignores Ms. Riley's testimony in which she explains she was very much involved with the South Carolina facility, that she worked closely with the supervisors there in developing and implementing note endorsement procedures, and even "helped move those procedures to South Carolina." Dkt. 68, Ex. 1 at 77-78. Ms. Riley authorized the use of her endorsement stamps by bank employees, and did not limit the use of her stamps to any particular facility[4]:

> Q: The whole process of stamping the name on notes, did that come from your supervisor?
>
> . . . .
>
> A: Yes. It was the procedures that we used, and there was authorization.
>
> Q: Was there any secrecy or fraud about it?
>
> A: No.
>
> . . . .
>
> Q: Was it all in the open?
>
> . . . .
>
> A: It was all in the open.

*Id.* at 81:9-19. Additionally, Ms. Riley testified that she does not believe anyone ever used her stamp without her authority. *Id.* at 88. In any event, whether the note endorsement happened in

---

[4] Notably, Plaintiff cites no case law requiring that an instrument be endorsed at a certain place, nor does he allege any factual basis for such a requirement.

Florida or South Carolina, Ms. Riley clearly testified she was a Vice President of WaMu from 2004 through January 2008, which encompasses both the time when Mains' note was originated in December 2006 and for over a year after it would have been endorsed in the ordinary course of business. Because Ms. Riley's endorsement of the note, whether authorized or not, occurred while she was a Vice President of WaMu, Mains' claims are subject to FIRREA's jurisdictional bar.

In addition to Ms. Riley's 2013 deposition testimony, independent employment records corroborate that Ms. Riley was employed with WaMu from 2004 through 2008. Grageda Decl. ¶ 5-6, Ex. A. Those records clearly demonstrate that Ms. Riley was employed by WaMu throughout the relevant period. In the context of Plaintiff's claims against Ms. Riley, these records constitute jurisdictional facts and should be taken into account when determining whether Ms. Riley was acting under the authority of WaMu in endorsing Plaintiff's Note, thus depriving this Court of subject matter jurisdiction over the claims. *See Hughes*, 818 F. Supp. 2d at 1116 (a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (internal quotations omitted).

The totality of the deposition Plaintiff attached to his FAC, which trumps any contrary allegations in the body of the complaint under well-established law, clearly shows that Plaintiff's note would have been endorsed within days of the closing of the loan, in December 2006. Moreover, Ms. Riley's testimony and employment records irrefutably demonstrate that she endorsed Plaintiff's note with the authority of WaMu as a Vice President. Any claims arising from this endorsement are therefore subject to FIRREA's administrative exhaustion requirements as "the jurisdictional bar erected by FIRREA applies to . . . claims attributable to the acts or

omissions of [the failed institution] and its agents." *In re Shirk*, 437 B.R. 592, 603-04 (Bankr. S.D. Ohio 2010). Further, this requirement remains in force even after the FDIC has transferred the depository institution's assets to another entity, as is the case here. *See United Cent. Bank v. Dany Inv., LLC*, No. 10 C 3176, 2014 WL 1307396, at *2 (N.D. Ill. Apr. 1, 2014).

### C. Plaintiff has Failed to Show Purposeful Availment Sufficient to Subject Ms. Riley to Personal Jurisdiction in the State

The Seventh Circuit has explained that "the nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Plaintiff does not, because he cannot, maintain that this Court has general personal jurisdiction over Ms. Riley, a Florida resident, who lives and works in Florida.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* (internal citation omitted). Such jurisdiction cannot be based on "random, fortuitous, or attenuated contacts." *Id.* at 492-493. "Crucial to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court [in the forum State] ... because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998), *as amended* (Oct. 13, 1998).

Ms. Riley's contacts with this forum are random and attenuated. As stated by the Plaintiff himself in his Opposition, Ms. Riley and her team endorsed approximately 200-300 notes per day as employees of WaMu in Florida. If Ms. Riley, an individual former WaMu

11

employee, should "reasonably anticipate" being haled into every forum in which a borrower whose note she endorsed years ago resides, then she would be subject to the personal jurisdiction of nearly every state in the nation—an absurd result. The fact that some note endorsements years later affected properties within the state of Indiana was random, and occurred through no purposeful conduct on the part of Ms. Riley. Further, as Plaintiff has been eager to point out, during the time period in which Plaintiff's note was endorsed, Ms. Riley was not employed in Indiana, but was working to supervise WaMu's move of its custodial vault from Stockton, California to Florence, South Carolina. Dkt. FAC ¶ 64. Though Plaintiff asserts factors to determine whether assertion of personal jurisdiction would be "fair," Plaintiff neglects to consider the threshold requirement of personal jurisdiction over a foreign defendant based on minimum contacts. Namely, Plaintiff fails to address whether Ms. Riley purposefully availed herself of the privileges and prerogatives of conducting activity in the state of Indiana. As explained above, she clearly did not.

## CONCLUSION

For the foregoing reasons, Plaintiff's FAC against Ms. Riley should be dismissed in its entirety with prejudice.

DATED: August 7, 2015                    *Respectfully submitted,*

*Attorneys for Defendant,*
Cynthia Riley

/s/ Louis S. Chronowski
---
Louis S. Chronowski (SBN 32331-45)
Jordan S. Huttenlocker (SBN 30351-02)
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
lchronowski@dykema.com
jhuttenlocker@dykema.com

JONATHAN M. WEISS (Cal. SBN 250307)
jonathan.weiss@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213)680-8400
Facsimile:   (213)680-8500

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2015, I have electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2015 at Chicago, Illinois.

DYKEMA

By: ___/s/ Jordan S. Huttenlocker___
      Jordan S. Huttenlocker