### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | |
|---|---|
| **ERIC P. MAINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 4:15-cv-00036-SEB-WGH** |
| | ) |
| **CITIBANK, N.A., as Trustee for the** | ) |
| **WAMU-HE2 Trust,** | ) |
| **CHASE BANK, N.A.,** | ) |
| **CYNTHIA RILEY,** | ) |
| **NELSON & FRANKENBERGER, P.C.,** | ) |
| **CHRISTINE A. SAUERER,** | ) |
| **JODI SOBOTTA,** | ) |
| **BLACK KNIGHT FINANCIAL** | ) |
| **SERVICES, LLC, fdba Lender** | ) |
| **Processing Services,** | ) |
| **WASHINGTON MUTUAL BANK,** | ) |
| **BOSE MCKINNEY & EVANS LLP, and** | ) |
| **UNKNOWN JOHN DOES,** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITIBANK'S AND CHASE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Citibank, N.A. as Trustee for WaMu Asset-Backed Certificates, WaMu Series 2007-HE2 Trust[1] ("Citibank") and JPMorgan Chase Bank, N.A.[2] ("Chase"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's First Amended Complaint.  For the reasons more fully set forth below, all claims asserted against Citibank and Chase by Plaintiff Eric P. Mains ("Plaintiff") should be dismissed with prejudice.

### INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") is a confusing collection of vague allegations and citations to statutes and case law that fails to assert any cognizable claims against

---

[1] Misnamed "Citibank USA" in Plaintiff's First Amended Complaint.
[2] Misnamed "J.P. Morgan Chase & Co." in Plaintiff's First Amended Complaint.

any defendant.  (*See* ECF Doc. 23.)  Nevertheless, it is apparent from the allegations in the FAC that any claims against Citibank and Chase are uniformly predicated on Plaintiff's contentions that Citibank did not hold Plaintiff's note (the "Note") or mortgage (the "Mortgage"), that Chase was not the servicer, and that neither Citibank nor Chase had standing to enforce the Note or Mortgage.  Those contentions were all raised in a full and fair Indiana state court proceeding (the "Foreclosure Action").  First, the trial court entered an *in rem* and *in personam* judgment of foreclosure over Plaintiff's objections.  Second, the appellate court subsequently affirmed the judgment, and third, the Indiana Supreme Court denied transfer.

Like many similarly-situated plaintiffs before him in the Seventh Circuit, Plaintiff now seeks to relitigate the Foreclosure Action, recasting his arguments from the Foreclosure Action into federal claims.  Plaintiff's claims are not only barred by the *Rooker-Feldman* doctrine, they are precluded by principles of *res judicata*, time-barred by applicable statutes of limitations, and subject to dismissal for failure to state cognizable causes of action. Accordingly, this Court should dismiss all claims against Citibank and Chase included in the FAC because (1) the Court lacks subject-matter jurisdiction under Rule 12(b)(1); (2) the FAC fails to state claims upon which relief may be granted under Rule 12(b)(6); and (3) the claims violate Rule 8 and Rule 9.

Defendants Black Knight InfoServ, LLC f/k/a Lender Processing Services, Inc. ("Black Knight"), Bose McKinney & Evans, LLP ("Bose"), Nelson & Frankenberger, P.C. ("Nelson"), Cynthia Riley ("Riley"), and Wyatt, Tarrant & Combs LLC ("Wyatt") and have all also filed motions to dismiss the Plaintiff's FAC.  (*See* ECF Docs. 29, 30, 38, 39, 41, 42, 52, 53, 86, 87.) Those defendants have advanced arguments in favor of dismissal similar to those that Citibank and Chase make herein.  Accordingly, Citibank and Chase adopt by reference all of the arguments offered by Black Knight, Bose, Nelson, Riley and Wyatt, and join in their respective

motions.  Where necessary, Citibank and Chase have expanded on the other defendants'

arguments and applied them to the circumstances of Citibank's and Chase's roles as defendants

here.

## **BACKGROUND**

The allegations and causes of action contained in the FAC are grounded squarely in a

case already adjudicated between Plaintiff, on the one hand, and Citibank and Chase, on the

other.  Plaintiff's Note and Mortgage were signed on December 19, 2006.  (*See* FAC ¶¶ 20, 62.)

Plaintiff stopped making payments as of February 1, 2009 (*see Mains v. Citibank, N.A.*, 18

N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015)); Plaintiff admits

that he did not make payments in April-May 2009.  (*See* FAC ¶ 40.)  Citibank, as the

owner/assignee of Plaintiff's Note and Mortgage, filed the complaint in the Foreclosure Action

on April 20, 2010 in the Clark County Circuit Court (Cause No. 10C01-1004-MF-248).  (*See*

FAC ¶ 41.)  A true and correct copy of the Complaint filed in the Foreclosure Action is attached

hereto as **Exhibit A**.  On June 17, 2010, Plaintiff filed an Answer and Affirmative Defenses to

the Foreclosure Action Complaint.  A true and correct copy of the Answer filed in the

Foreclosure Action is attached hereto as **Exhibit B**.  On July 21, 2010, Plaintiff and Chase

attended a settlement conference that did not resolve Citibank's claims.  (*See* FAC ¶ 45.)

On February 11, 2013 Citibank filed a motion for summary judgment.  (*See* FAC ¶ 50.)

Plaintiff filed his response on March 11, 2013 and a hearing was held on April 30, 2013.  (*See*

FAC ¶¶ 51-52.)   The trial court granted summary judgment in favor of Citibank on May 3, 2013.

(*See* FAC ¶ 52.)  Plaintiff filed a motion to correct error on June 3, 2013 which was opposed by

Citibank and denied on August 8, 2013 after a hearing. (*See* FAC ¶ 53.)

Plaintiff then appealed that judgment to the Indiana Court of Appeals (Cause No. 10A04-

1309-MF-450) on September 12, 2013.  (*See* FAC ¶ 54.)  In his appeal, Plaintiff challenged

3

Citibank's standing to enforce the Note and to foreclose on the property subject to the Mortgage, and Chase's standing as servicer of the Mortgage.  True and correct copies of Plaintiff's appellate brief and Citibank's appellate brief are attached hereto as **Exhibits C** and **D**, respectively.  After briefing, on August 4, 2014, the Indiana Court of Appeals affirmed the trial court's judgment.  *See Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015).  A true and correct copy of the ruling of the Indiana Court of Appeals is attached hereto as **Exhibit E**.  On October 4, 2014, Plaintiff appealed his case to the Indiana Supreme Court and on January 21, 2015, the Indiana Supreme Court denied transfer. (*See* FAC ¶¶ 55-56; *Mains v. Citibank, N.A.*, 24 N.E.3d 967 (Ind. 2015).)

Now, Plaintiff seeks yet another appeal of the Foreclosure Action to this Court.  Plaintiff claims that "Citibank and Chase Banks [sic] actions to foreclose on Mains' home were illegal because the underlying security instruments relied upon for the foreclosure were defective," that "Chase was not the authorized servicer of Mains [sic] Note for Citibank," and that Citibank and Chase mishandled his loan documents.  (*See* FAC ¶¶ 32-34, 60.)  These issues were already briefed, addressed, and decided in the Foreclosure Action.  (*See* Exs. C-E.)

## ARGUMENT & AUTHORITIES

The First Amended Complaint ("FAC") is irreparably deficient in several ways.  As more fully set forth below, all claims against Citibank and Chase in the FAC should be dismissed with prejudice pursuant to Rules 12(b)(1), 12(b)(6), 8, and 9 of the Federal Rules of Civil Procedure.

### I.   Standards of Review Under Rules 12(b)(1) And 12(b)(6).

Several defendants have filed Motions to Dismiss in this matter.  As such, the standards of review for Rules 12(b)(1) and 12(b)(6) are already well-briefed and before this Court. Citibank and Chase agree with the standards of review for Rules 12(b)(1) and 12(b)(6) as set

forth by defendants and, more specifically, incorporate the standards of review from Bose

McKinney & Evans LLP's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's

First Amended Complaint ("Bose's Memorandum") regarding Rules 12(b)(1) and 12(b)(6), (*See*

ECF Doc. 39, at pp. 5-8), as if fully set forth herein.

## II.   Plaintiff's First Amended Complaint Should Be Dismissed Pursuant To Rule 12(b)(1) Because This Court Lacks Subject-Matter Jurisdiction Under The *Rooker-Feldman* Doctrine.

"More than a decade ago, this court held in *Epps v. Creditnet, Inc.*, 320 F.3d 756 (7th Cir.

2003), that the *Rooker-Feldman* doctrine[3] bars federal suits seeking to recover on a theory that a

debt collector made false statements during state litigation."  *Harold v. Steel*, 773 F.3d 884, 885

(7th Cir. 2014).  Under *Rooker-Feldman*, district courts have no jurisdiction to adjudicate "cases

brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commences and inviting district court review and rejection

of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

District courts may entertain "claims of injuries that occurred before, *and* are independent of the

claim on which the state court rendered judgment."  *Kelly v. Med-1 Solutions, LLC*, 548 F.3d

600, 603-04 (7th Cir. 2008).  However, district courts cannot "review and reject rulings that the

state court made against [a party] in the foreclosure suit."  *Wallis v. Fifth Third Bank*, 443 Fed.

Appx. 202, 204 (7th Cir. 2011) (citations omitted); *see also Ross-West v. Bank of New York

Mellon Corp.*, 523 Fed. Appx. 395, 396 (7th Cir. 2013) (holding that a suit that "challenges the

adverse state judgment" is barred by *Rooker-Feldman*).  *Rooker-Feldman* prevents a federal

district court from reviewing the procedures or evidence that state judges consider; indeed, the

---

[3] The *Rooker-Feldman* doctrine refers to two cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) which together established the doctrine.

*Rooker* case itself involved a state court's use of constitutionally-forbidden procedures to reach its judgment.  *See Harold*, 773 F.3d at 887.

A key question in the *Rooker-Feldman* doctrine is whether the plaintiff's loss is "independent" of the outcome of the Foreclosure Action.  *Id.* at 885.  In *Harold*, the Seventh Circuit upheld the dismissal of a Fair Debt Collection Practices Act ("FDCPA") claim for lack of jurisdiction under *Rooker-Feldman*.  In that case, the plaintiff claimed that the defendant and his law firm made false representations about who had the right to enforce a judgment.  *Id.* Plaintiff's claim rested on representations that "concerned the merits" of the litigation, with the court noting that "if [defendant's] client did not own the judgment, then [plaintiff] was entitled to a decision in his favor."  *Id.*  The Court found that the claim was properly dismissed under *Rooker-Feldman* because the plaintiff was contesting the state court's judgment and not alleging an independent, pre-suit injury.

In *Sheikhani v. Wells Fargo Bank*, 577 Fed. Appx. 610, 611 (7th Cir. 2014), the Court affirmed the district court's dismissal, under *Rooker-Feldman*, of a case remarkably similar to this one.  In that case, the plaintiff brought a federal suit after a foreclosure judgment that led to the sale of her home.  Five months later, the plaintiff sued the bank and other defendants, asserting various claims.  The plaintiff contended that, based on alleged breaches of a pooling and servicing agreement, the foreclosing entity was not the true owner of the loan and lacked standing to foreclose.  The Court found that the federal suit squarely challenged the foreclosure judgment, and affirmed the dismissal with prejudice.

Another case that is strikingly similar to this case is *Nora v. Residential Funding Company, LLC*, 543 Fed. Appx. 601, 601-02 (7th Cir. 2013).  In that case, the plaintiff vigorously opposed foreclosure proceedings in state court against her home, arguing among

other things that the defendant lacked standing to seek foreclosure because the assignment of her

loan was fraudulent.  After the state court rejected those arguments and entered a judgment of

foreclosure, she filed an action for damages and title to her home in which she "recast her

allegations to include a conspiracy among the lenders and their lawyers to assign fraudulently her

loan and the loans of thousands of other homeowners in order to 'take the interest without

liability for claims against prior mortgagees.'"  *Id.*   She asserted FDCPA and Racketeer

Influenced and Corrupt Organizations Act ("RICO") claims.  *Id.*   The federal court dismissed her

claims as barred by *Rooker-Feldman*.  *Id.*

Federal courts routinely dismiss claims under *Rooker-Feldman* when the federal claims

arise out of state court foreclosure litigation.  *See, e.g.*, *Sheikhani*, 577 Fed. Appx. at 611; *Nora*,

543 Fed. Appx. at 601-02; *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646-47

(7th Cir. 2011); *Wallis*, 443 Fed. Appx. at 204-05; *Stanley v. Hollingsworth*, 307 Fed. Appx. 6, 9

(7th Cir. 2009); *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 531-33 (7th Cir. 2004); *Ross-*

*West*, 523 Fed. Appx. at 396; *see also Roberts v. Cendant Mortg. Corp.*, No. 11-CV-1438, 2013

WL 2467996, at *3-4 (S.D. Ind. June 7, 2013) (dismissing FDCPA, Truth in Lending Act

("TILA"), Real Estate Settlement Procedures Act ("RESPA"), and other claims under *Rooker-*

*Feldman* where the seminal issue underlying the complaint was whether defendants had standing

to foreclose); *Williams v. Ameriquest Mortgage Co.*, No. 14-CV-0401, 2014 WL 3687729, at *3

(N.D. Ill. July 24, 2014) (holding that the plaintiff would not have experienced injury but for the

foreclosure judgment, and dismissing TILA, RESPA, fraud, and other claims pursuant to

*Rooker-Feldman*).  These cases demonstrate that a plaintiff cannot seek to remedy "wrongs"

allegedly committed in the course of a foreclosure suit by "recasting a request for the district

court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or

RICO violations."  *Wallis*, 443 Fed. Appx. at 204-05; *see also Davis v. Countrywide Home Loans, Inc.*, No. 10-cv-1303, 2011 WL 837048, at *4 (S. D. Ind. March 4, 2011) (plaintiffs "cannot circumvent *Rooker-Feldman* by simply recasting their claims as violations of federal law") (citing *Stanley*, 307 Fed. Appx. at 9).

Plaintiff's claims against Citibank and Chase are all barred by the *Rooker-Feldman* doctrine.  Plaintiff's suit against Citibank and Chase merely recasts allegations he made in the state court Foreclosure Action as "new" federal claims in an effort to circumvent and relitigate the state court's rulings.  However, any ruling in favor of Plaintiff and against Citibank and Chase would necessitate that this Court "review and reject" rulings that the state court made against him in the foreclosure suit.  *See Wallis*, 443 Fed. Appx. at 204.  Plaintiff does not allege any wrongdoing by Citibank or Chase that predates the state court foreclosure litigation or is unrelated to it.  Plaintiff's alleged losses all result from Citibank's and Chase's pursuit of their legal rights under the loan documents with Plaintiff, and all of Plaintiff's claims rest on Citibank and Chase's lack of standing to enforce the loan documents and what Plaintiff complains are bad acts and damages that resulted from that enforcement.  The claims are barred by the *Rooker-Feldman* doctrine as follows:

### A.  Count One – RESPA

Plaintiff's claims under RESPA are barred because Plaintiff does not even assert a claim for damages – he merely asks for an accounting of all payments made in order to determine if any late fees were paid.  (*See* FAC ¶¶ 115-16; *see infra* at Section VI. A.)  Even if Plaintiff did pay late fees, the state court already resolved the issue of whether Citibank and Chase could charge late fees when it issued a money judgment in the amount of $271,452.17 against Plaintiff. In ruling in favor of Citibank and Chase in the Foreclosure Action, the state court "entered an in rem judgment against the real estate and an in personam judgment against Mains for the

remaining balance due, costs, and interest." *Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015).  Because Plaintiff's claims under RESPA attack the state court's rulings, they are barred by *Rooker-Feldman*.

### B.  Count Two – TILA

Plaintiff's claims for damages under TILA are barred because they all arise out of the allegation that despite that Citibank and Chase were not the holder and servicer of Plaintiff's loan, they continued to collect loan payments from Plaintiff, gave false information on the loan, mishandled loan payments, pressed forward with a foreclosure action, and refused to provide information on the real holder of the loan.  (*See* FAC ¶¶ 124-25, 130-31.)  Plaintiff would not have suffered any TILA damages but for Citibank and Chase's actions against him to enforce the loan.[4]  The TILA claims are barred by *Rooker-Feldman* because this Court would have to revisit and invalidate the state court's rulings in order to afford relief to Plaintiff.

### C.  Count Three – Violation of Indiana Code 32-30-10.5

In Count Three, Plaintiff alleges that because Citibank and Chase were not the proper holder and servicer of Plaintiff's loan, the settlement conference conducted on July 21, 2010 did not meet the requirements of Section 32-30-10.5.  (*See* FAC ¶¶ 133-34.)  However, the Indiana Court of Appeals specifically recognized that "the settlement conference Mains requested was conducted, but ended unsuccessfully." *Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015).  Moreover, Plaintiff himself asserts in his FAC that at the time of the settlement conference on July 21, 2010, he "asked the Chase Bank representative how Chase Bank claimed any authority to negotiate any proposed modification of his loan," meaning the issue of the ownership of the loan and the right to service it was already in

---

[4] To the extent Plaintiff alleges any damages arising out of his supposed TILA rescission of the loan that are not subject to the *Rooker-Feldman* doctrine, that claim is barred by, among other things, TILA's 3-year statute of repose, as discussed in more detail below.

dispute during and after the settlement conference and was not, as Plaintiff later asserts, part of

any "recently uncovered fraud."  (*See* FAC ¶¶ 45-46, 134.)  Because Count III attacks the state

court judgment, it is barred by *Rooker-Feldman*.

### D.  Counts Four, Five, Six, Seven, and Ten – Plaintiff's Tort Claims

Plaintiff's claims for "negligent and/or intentional infliction of emotional distress,"

negligent misrepresentation, fraud, negligence, and conversion against Citibank and Chase are all

predicated on, again, the assertion that Citibank and Chase were not the true holders or servicers

of Plaintiff's loan.  (*See* FAC ¶¶ 137, 147, 158-59 (Defendants "did not and do not legally have

the right to collect any alleged debt of the Plaintiff or enforce any alleged security interest"), 164,

175 ("Defendants held themselves out as servicers, or parties in interest to Mains' transaction,

with the Mains as their customers.  As a result, Defendants' [sic] falsely created a customer

relationship with Defendant [sic]."), 218 (Chase "exerted control over Mains' loan payments

without the legal right to do so").)  All of these counts attack the judgement of foreclosure.

Plaintiff asserts that Citibank and Chase harmed him by enforcing the loan documents.  The state

court resolved any issues relating to the enforceability of the loan documents when it ruled in

Citibank's and Chase's favor and awarded judgment against Plaintiff.  Thus, Plaintiff's tort

claims are not independent of the state court judgment and are barred by *Rooker-Feldman*.

### E.  Count Eight – FDCPA

Plaintiff similarly asserts that Citibank and Chase violated the FDCPA by communicating

with Plaintiff and attempting to collect money from him despite that "they knew the right to

collect the debt was invalid due to the defective and falsified documents."  (*See* FAC ¶¶ 185,

187.)  Plaintiff asks for equitable relief as well as money penalties.  (*See* FAC ¶ 193.)  Again,

the issue of Plaintiff's debt and Citibank and Chase's enforceability of the loan was the primary

issue in the Foreclosure Action.  This Court cannot revisit those issues under *Rooker-Feldman*.

### F.  Count Nine – RICO

Plaintiff alleges that Citibank and Chase supposedly participated in "an ongoing enterprise which committed fraudulent acts and attempted to collect on unlawful debt from Mains" and specifically, that Citibank and Chase "collected well over $5000 in 'loan' payments from Mains they knew they had no right to collect." (*See* FAC ¶¶ 203-10.)  As with the other counts, the RICO claim is barred by *Rooker-Feldman* because it seeks a finding that Citibank and Chase did not properly hold or service his loan and thus asks the Court to issue rulings that would undo or run contrary to the findings of the state court.

All of the counts in Plaintiff's FAC against Citibank and Chase seek to revisit the findings of the state court, even if they are creatively pled to seek only "damages."  *See Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (finding that a plaintiff cannot avoid *Rooker-Feldman* through creative pleading).  For Plaintiff to succeed on any of his claims, this Court would have to reject all or a portion of the state court's findings in the foreclosure action because the Court would have to find that Citibank and Chase were not the proper holders of the loan documents to afford relief.  That result is prohibited by *Rooker-Feldman* doctrine.

Accordingly, this Court should find that it lacks jurisdiction to hear Plaintiff's claims against Citibank and Chase and the FAC should be dismissed in its entirety, with prejudice, under the *Rooker-Feldman* doctrine.

### III.  **Plaintiff's First Amended Complaint Should Be Dismissed Pursuant To Rule 12(b)(6) Because Plaintiff's Claims As To Citibank And Chase Are Precluded By The Doctrine Of *Res Judicata*.**

To the extent Plaintiff's claims fall outside of the *Rooker-Feldman* doctrine and Plaintiff seeks damages "for activity that predates the state litigation and caused injury independent of it," *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015), Plaintiff's claims are nonetheless barred by

principles of *res judicata* because all remaining claims either were resolved or could have been resolved in the state court case.

The doctrine of *res judicata* provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  "It 'promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being hauled into court repeatedly.'" *Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) (citing *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011)).  Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect that those judgments would have in state court. *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002).

In Indiana, the principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion. "Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Dev. Servs. Alternatives, Inc. v. Indiana Family & Soc. Servs. Admin.*, 915 N.E.2d 169, 179 (Ind. Ct. App. 2009), *trans. denied.*  "Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Id.*

Here, both claim preclusion and issue preclusion apply to bar Plaintiff's claims.

### A.  Claim preclusion requires dismissal of all of Plaintiff's claims against Citibank and Chase.

First, Plaintiff's claims are barred by claim preclusion because he has already litigated (or could have litigated) his claims against Citibank and Chase in the Foreclosure Action.  Citibank

and Chase are entitled to dismissal of the FAC due to claim preclusion if the following

conditions are met: "(1) the former judgment must have been rendered by a court of competent

jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now

in issue was, or could have been, determined in the prior action; and (4) the controversy

adjudicated in the former action must have been between parties to the present suit or their

privies." *Id*. (quoting *Indpls. Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005)).

Plaintiff's attempt to relitigate resolved claims in the foreclosure context is not novel.

Courts routinely find that such claims are barred by principles of *res judicata*.  In *Stanley v.

Select Portfolio*, No. 07-cv-7750JPG, 2008 WL 2020509, at *2 (N.D. Ill. May 9, 2008), the

plaintiff filed a complaint in federal court asserting claims under the FDCPA, RESPA, and other

federal statutes in connection with the servicing, processing, handling and foreclosure of his

mortgage.  The plaintiff argued that the defendants had "miscalculated the amount he actually

owed on his mortgage by misapplying payments, refusing settlement payments, wrongly

assessing fees, and force-placing insurance when he had adequate insurance." *Id.* at *3.

Applying *res judicata*, the Court dismissed all claims related to the amount plaintiff owed under

his mortgage with prejudice, finding that they were barred by the earlier state court foreclosure

judgment.

Here, all four requirements for claim preclusion are plainly met.  The state court in the

Foreclosure Action was a court of competent jurisdiction, and Plaintiff appealed the judgment to

the Court of Appeals (which affirmed) and to the Indiana Supreme Court (which denied

transfer). *Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24

N.E.3d 967 (Ind. 2015); *Mains v. Citibank, N.A.*, 24 N.E.3d 967 (Ind. 2015).  The state court thus

entered a final judgment on the merits.  The parties to the Foreclosure Action were Plaintiff (the

defendant in the Foreclosure Action) and Citibank (the plaintiff in the Foreclosure Action). Chase, as Citibank's servicer and representative, is plainly Citibank's privy.  *See Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.*, 76 F.3d 128, 131 (7th Cir. 1996) ("Parties are in privity when there is a commonality of interest between the two entities and when they sufficiently represent each other's interests.") (citations and internal quotations omitted); *Barnes v. Homeward Residential, Inc.*, No. 13-3227 SC, 2013 WL 5217393, at *3 (N.D. Cal. Sept. 17, 2013) (finding that a mortgage servicer is in privity with the holder of the beneficial interest securing the mortgage for purposes of *res judicata*, and dismissing federal lawsuit on *res judicata* grounds); *Lee v. Thornburg Mortgage Home Loans Inc.*, No. 14-CV-00602 NC, 2014 WL 4953966, at *6 (N.D. Cal. Sept. 29, 2014) (same).

Finally, the matters now in issue – the claims in the FAC against Citibank and Chase – all were litigated or could have been litigated in the Foreclosure Action.  As set forth above, all of Plaintiff's claims against Citibank and Chase relate to whether Citibank and Chase held the Note and had the right to service it, and whether they serviced it correctly.  (*See* Section II, *supra*.)  In fact, Plaintiff ***did raise*** most of these issues in the Foreclosure Action.  The state court specifically ruled that Plaintiff had not shown that Citibank and Chase did not have standing to enforce the Note and entered *in rem* and *in personam* judgments against Plaintiff.  *See Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015). Moreover, whether Plaintiff actually raised certain issues to the state court is irrelevant because the doctrine of claim preclusion bars later litigation of any claims he ***could have*** (and should have) [5] raised in the Foreclosure Action.  As such, claim preclusion applies to require dismissal of Plaintiff's claims.

---

[5] As the Seventh Circuit recognized in *Iqbal*, "[a]t least two decisions by intermediate appellate courts in Indiana hold that fraud causing nonpayment is a compulsory counterclaim in a debt-collection suit."  *Iqbal*, 780 F.3d at 730-

**B.  Issue preclusion requires dismissal of all of Plaintiff's claims against Citibank and Chase.**

Even if claim preclusion did not apply to Plaintiff's claims against Citibank and Chase, issue preclusion requires dismissal.

Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit.  *Thrasher, Buschmann, & Voelkel, P.C. v. Adpoint Inc.*, 24 N.E.3d 487, 494 (Ind. Ct. App. 2015) (citing *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP,* 976 N.E.2d 699, 704 (Ind. 2012) (additional citation omitted).  Issue preclusion applies even if the second adjudication is on a different claim.  *Id.*  There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. *Nat'l Wine & Spirits*, 976 N.E.2d at 704.  The court should also consider "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.* (quoting *Small,* 731 N.E.2d at 28).

Here, even if claim preclusion did not apply (which it does), issue preclusion prevents Plaintiff from relitigating issues settled by the state court.  As set forth above, Plaintiff received a final judgment on the merits that was appealed to the Indiana Supreme Court.  The issues presented here, while styled as different claims, are the same:  Plaintiff seeks to relitigate whether Citibank held his loan, whether Chase had the right to service it, and, derivatively, whether Citibank and Chase properly foreclosed on the loan (including the imposition and

---

31 (citing *Ratcliff v. Citizens Bank*, 768 N.E.2d 964, 967-69 (Ind. App. 2002) and *Broadhurst v. Moenning*, 633 N.E.2d 326, 331-32 (Ind. App. 1994)).  Plaintiff's claims all relate to the issue of enforceability of the Note and Mortgage and all could and should have been raised as defenses or related claims.

calculation of certain fees). All of these issues were decided at the state court level, first at the trial court when it entered a judgment of foreclosure, including *in rem* and *in personam* judgments, and at the appellate level when the judgment was confirmed. *See Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014) *transfer denied*, 24 N.E.3d 967 (Ind. 2015).

Because *res judicata* precludes relitigating claims ***that could have been raised*** in a prior action as well as those ***that actually were raised***, Plaintiff is precluded by the judgment in the Foreclosure Action from bringing the claims alleged in the FAC against Citibank and Chase. All of Plaintiff's claims against Citibank and Chase were or could have been litigated in the Foreclosure Action, and all must be dismissed with prejudice.

## IV.   **Plaintiff lacks standing to bring claims based upon the Pooling and Servicing Agreement.**

Even if Plaintiff's claims were not barred by the *Rooker-Feldman* doctrine or principles of *res judicata*, they would nonetheless be barred because Plaintiff does not have standing to assert claims against Citibank and Chase under the Pooling and Servicing Agreement (the "PSA") or the mortgage assignment referenced in the FAC. Plaintiff was not a party to the PSA or the assignment, and those documents were not intended to provide any benefit or standing to Plaintiff. *See Williams*, 2014 WL 3687729, at *2-3 ("Because the PSA did not affect [plaintiff's] obligations under the mortgage, [plaintiff] cannot demonstrate that he suffered an injury fairly traceable to a defect in the mortgage-transfer process.") (citation omitted).

Citibank and Chase agree with the arguments set forth in Black Knight's Memorandum (*See* ECF Doc. 30, at pp. 8-13) regarding Plaintiff's lack of standing to bring claims based on the PSA.[6] Citibank and Chase specifically join in that Motion, reference and adopt those arguments as if fully set forth herein, and request dismissal with prejudice of Plaintiff's claims.

---

[6] Citibank and Chase also join in and adopt Bose's Memorandum (*See* ECF Doc. 39, at pp. 13-14) on this point.

**V.    Plaintiff's Counts One, Two, Four, Five, Seven, Eight, and Ten are Barred by Applicable Statutes of Limitations Pursuant to Rule 12(b)(6).**

Although the defense of a statute of limitations is ordinarily an affirmative defense that must be pled under Rule 8, this Court may dismiss a claim under Rule 12(b)(6) if it is indisputably time-barred. *Hill v. Chase Bank USA, N.A.*, No. 2:07-CV-82 RM, 2010 WL 107192, at *7 (N.D. Ind. Jan. 6, 2010) (citing *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 775 (7th Cir. 1995)).  Here, not only are Plaintiff's claims barred by *Rooker-Feldman* and *res judicata*, the majority of Plaintiff's claims against Citibank and Chase are time-barred and should be dismissed with prejudice.

### A.  Count One (RESPA) is Time-Barred.

The statute of limitations under RESPA runs three (3) years from the date of the occurrence of a violation.  12 U.S.C. § 2614.  Plaintiff first alleges that he commenced this action within the three-year limitations period.  (*See* FAC ¶¶ 108-09.)  But he then argues that equitable tolling should be applied to extend the RESPA limitations period.  (*See* FAC ¶¶ 117-18.)  Regardless, Plaintiff's RESPA claim is time-barred and should be dismissed with prejudice.

First, without equitable tolling, Plaintiff's RESPA claim is unequivocally time-barred. Section 2605 addresses violations for late fees assessed within "the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan[.]"  12 U.S.C. § 2605.  Chase became the servicer of Plaintiff's loan in May 2009.  (*See* FAC ¶ 38.) Thus, the statute of limitations for any alleged violation of Section 2605 ran three (3) years and sixty (60) days after May 2009, or late July 2012.  Accordingly, the three (3) year limitations period under Section 2614 has expired.

Plaintiff appears to attempt a side-step around the clear limitation barrier by asserting that the statute of limitations should be equitably tolled.  (*See* FAC ¶¶ 117-18.)  Plaintiff cites *Merritt*

*v. Countrywide*, 759 F.3d 1023 (9th Cir. 2014), as support for applying equitable tolling to the RESPA limitations period. This case is inapposite, however, because Plaintiff does not actually allege equitable tolling, but rather, he alleges "fraud knowingly concealed" or fraudulent concealment. (*See* FAC ¶ 118.)[7]

Equitable estoppel—sometimes referred to as fraudulent concealment—"comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990), "such as by hiding evidence or promising not to plead the statute of limitations," *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citing *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997) and quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)). Further, equitable estoppel is premised not only on a defendant's affirmative improper conduct, but also on a plaintiff's actual and reasonable reliance thereon. *Id.* (citing *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991)).

Here, Plaintiff pleads neither. Plaintiff fails to allege any improper concealment of a Section 2605 violation or any reasonable reliance thereon. Accordingly, there is no basis to apply equitable tolling or estoppel, and thus, Plaintiff's RESPA claim is time-barred and should be dismissed with prejudice.

### B.  Count Two for Rescission and Damages under TILA is Time-Barred.

Plaintiff's TILA claims, whether for rescission or damages, are time-barred by TILA's statutes of limitation and repose.

---

[7] While difficult to discern whether Plaintiff is actually seeking equitable tolling, its application here nonetheless fails. In *Merritt*, the Court, while recognizing equitable tolling's application to RESPA, stated that tolling applies only "in the appropriate circumstances" and suggests that district courts should "evaluate RESPA claims case-by-case" to determine if the borrower had "reasonable opportunity to discover" the alleged violation. *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1040 (9th Cir. 2014). Plaintiff had ample opportunity to discover any alleged violation dating back at least five (5) years to the Foreclosure Action, and thus, equitable tolling is not applicable here.

Plaintiff appears to argue that Citibank and Chase violated TILA by (1) failing to return money after Plaintiff's February 27, 2015 rescission (*See* FAC ¶ 124); (2) pressing forward with foreclosure proceedings despite his alleged rescission (*See* FAC ¶ 125); and (3) collecting loan payments, mishandling payments, giving false information and withholding information from Plaintiff under the guise of being a servicer.  (*See* FAC ¶¶ 130-31.)

First, Plaintiff's alleged "rescission" is barred by TILA's statute of repose.  TILA provides an individual with a right to rescind a transaction "until midnight of the third business day following the consummation of the transaction OR the delivery of the information and rescission forms required under the section."  15 U.S.C. § 1635(a).  Under TILA, the right to rescind expires three (3) years from the date of the loan's closing.  15 U.S.C. § 1635(f).  The three-year limitation in section 1635(f) is a statute of repose, a "precondition to a substantive right to relief."  *Doss v. Clearwater Title Co.*, 55 F.3d 634, 638-39 (7th Cir. 2008).  It has "the same effect of preventing a plaintiff from proceeding on [his] TILA rescission claim" and extinguishing the right to seek rescission. *Bolden v. Wells Fargo Bank, N.A.*, No. 14 CV 403, 2014 WL 6461690, at *4 (N.D. Ill. Nov. 18, 2014).  Thus, even if Plaintiff had alleged that the information and rescission forms required under TILA were never delivered to him (which he has not), Plaintiff's TILA claim for rescission is still time-barred.  Plaintiff submitted his TILA rescission notice on February 27, 2015, more than eight (8) years after his loan closed in December 2006.

Second, to the extent Plaintiff seeks any remedies under TILA other than rescission, those claims are barred by the one-year statute of limitations in Section 1640(e).  The one-year limitations period in Section 1640(e) began to run when Plaintiff closed his loan on December 19, 2006.  (*See* FAC ¶ 20); *Bolden*, 2014 WL 6461690, at *4 (citing *Jenkins v. Mercantile*

19

*Mortg. Corp.¸* 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002)).  Any claim for damages under TILA is therefore time-barred.

Finally, Plaintiff cannot save his TILA claims by alleging equitable tolling.  The statute of repose completely extinguishes a right of rescission after three years.  *Bolden*, 2014 WL 6461690 at *5 (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("1635(f) completely extinguishes the right of rescission at the end of the 3-year period.")).  His rescission claim cannot be tolled.  To the extent Plaintiff seeks damages other than rescission, Plaintiff must show that "extraordinary circumstances" prevented him from filing his case on time. *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005).  Equitable tolling only applies where the plaintiff, through the exercise of due diligence, could not have obtained the information needed to file her claim before the limitations period expired.  *Shropshire v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001).  Here, there are no allegations of "extraordinary circumstances."  Plaintiff's non-rescission claims for damages under TILA are all predicated on Citibank and Chase not being the real servicer or holder of the loan.  Plaintiff included that argument as an affirmative defense in his answer to the foreclosure complaint.  (*See* Ex. B, at p. 2.)  The state court resolved that issue in Citibank and Chase's favor.

Accordingly, Plaintiff's TILA claim for rescission is time-barred and should be dismissed with prejudice.

### C.  Count Four (Negligent and/or Intentional Infliction of Emotional Distress) is Time-Barred.

In Count Four, Plaintiff asserts a claim for negligent and/or intentional infliction of emotional distress.  Under Indiana law, "an action for: (1) injury to person or character; (2) injury to personal property; or (3) a forfeiture of penalty given by statute; must be commenced within two (2) years after the cause of action accrues."  Ind. Code § 34-11-2-4.  Claims for

negligent or intentional infliction of emotional distress are subject to a two-year limitations period.  *See Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 602-03 (Ind. Ct. App. 2005); *Hildebrand v. Hildebrand*, 736 F. Supp. 1512 (S.D. Ind. 1990).

Plaintiff asserts that "the activity and conduct alleged throughout this complaint… interfere with their property ownership including their peaceful enjoyment thereof[.]"  (*See* FAC ¶ 141.)  The "activity and conduct alleged throughout [the] complaint" all relates to the Foreclosure Action, which commenced in 2010.  Accordingly, Plaintiff's negligent and/or intentional infliction of emotional distress claims are time-barred and should be dismissed with prejudice.

### D.  Count Five (Negligent Misrepresentation) is Time-Barred.

Count Five of the FAC alleges negligent misrepresentation against Citibank and Chase. Negligent misrepresentation is a claim for professional negligence.  *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 629 (Ind. Ct. App. 1983).  "[P]rofessional negligence claims governed by Indiana Code § 34–11–2–4…must be commenced within two (2) years after the cause of action accrues." *Allstate Ins. Co. v. Burgher*, No. 4:07-CV-106-SEB-WGH, 2009 WL 3615148, at *1 (S.D. Ind. Nov. 2, 2009).  As the basis for Plaintiff's negligent misrepresentation claim he alleges that "Defendants or their agents or predecessors falsely represented to Mains the character of the transaction, the parties for whom he should make loan payments to, how his payments would be handled and applied and their security interest in Mains' home."  (*See* FAC ¶ 147.)  Any of these representations would have been made in the 2008 or 2009 time frame, and certainly no later than the filing of the Foreclosure Action in 2010.  Thus, any purported negligence misrepresentations on the part of Chase or Citibank would have accrued no later than 2012.  Accordingly, Plaintiff's negligent misrepresentation claim is time-barred and should be dismissed with prejudice.

### E.   Count Seven (Negligence) is Time-Barred.

Count Seven of the FAC asserts negligence against all defendants.  Under Indiana law, the statute of limitations for a negligence claim is two (2) years.  *Rangel v. Schmidt*, 490 Fed. Appx. 808, 810 (7th Cir. 2012) (citing Ind. Code § 34-11-2-4; *Stickdorn v. Zook*, 957 N.E.2d 1014, 1019-21).  Plaintiff alleges that "Defendants were negligent throughout the handling of Mains' loan payments, reporting of his transaction and the foreclosure process."  (*See* FAC ¶ 176.)  Thus, Plaintiff's claim for negligence could have accrued no later than 2010, the year the Foreclosure Action was initiated.  Accordingly, Plaintiff's negligence claim is time-barred and should be dismissed with prejudice.

### F.   Count Eight (FDCPA) is Time-Barred.

Count Eight is barred by the one-year FDCPA statute of limitations (*see* 15 U.S.C. § 1692k(d)) which begins to run on the date of the violation of the statute.  *Kuhn v. Asset Acceptance Capital Corp.*, No. 114-CV-00059-TWP-DML, 2015 WL 1505648, at *5 (S.D. Ind. Mar. 31, 2015).  Where the violation arises out of a collection lawsuit, the one-year statute of limitations begins to run when the allegedly wrongful litigation begins.  *Jack v. Midland Credit Mgmt.*, No. 1:10-CV-715-TWP-DKL, 2011 WL 4387556, at *6 (S.D. Ind. Sept. 20, 2011) (citations omitted).  "Continuing to prosecute a collection action isn't a discrete debt collection activity sufficient to toll or restart the statute of limitations." *Wies v. Cavalry SPV I, L.L.C.*, No. 1:14-CV-187 RLM, 2015 WL 569897, at *3 (N.D. Ind. Feb. 11, 2015).

Here, Plaintiff alleges that Citibank and Chase "used false, deceptive, or misleading representations or means to collect money from Mains and attempt to encumber or seize his property when they knew they had no right to do so due to defective and falsified documents." (*See* FAC ¶ 187.)  Any FDCPA claim Plaintiff might have had accrued at least as of the date of the filing of the Foreclosure Action in 2010.  Plaintiff concedes this point.  (*See* FAC ¶ 194.)  No

equitable tolling applies because, as discussed above, Plaintiff has not shown any "extraordinary circumstances" requiring tolling.  Plaintiff was not prevented from raising the issue of Citibank's and Chase's rights to enforce his loan because he did in fact raise them at the state court level.[8] Accordingly, Plaintiff's FDCPA claim is time-barred.

### G.  Count Ten (Conversion) is Time-Barred.

Count Ten of the FAC is a claim against Citibank and Chase for conversion.  In Indiana, the statute of limitations for conversion is two (2) years.  *Estate of Verdak v. Butler Univ.*, 856 N.E.2d 126, 133 (Ind. Ct. App. 2006) (citing Ind. Code 34-11-2-4).  Plaintiff alleges that he was "tricked into making unauthorized payments to the Defendants, Chase bank [sic], and then on to Citibank" from 2007 to 2009.  (*See* FAC ¶¶ 218-19.)  Thus, by his own admission, Plaintiff's conversion claim accrued more than six (6) years ago.  Accordingly, Plaintiff's conversion claim is time-barred and should be dismissed with prejudice.

### VI.  Plaintiff's First Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) For Failure to State Any Plausible Claims Against Citibank and Chase.

The Court is required to accept Plaintiff's factual allegations in the FAC as true, but it is not "'bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) and quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  The FAC contains nothing more than scant legal conclusions without plausible or specific factual allegations against Citibank or Chase to support these conclusions.  Further,

---

[8] To the extent Plaintiff asserts an FCDPA claim based on his TILA claim and argues that such a claim is not time-barred, that claim fails because, as set forth above, Plaintiff's TILA claim is time-barred.

the FAC fails to allege facts necessary to satisfy the legal elements of each claim.  As such, the FAC should be dismissed for failing to state a claim against Citibank or Chase.

### A.  Count One – RESPA Violations

Plaintiff's RESPA claim should be dismissed under Rule 12(b)(6) for the independent reason that the FAC does not allege ***any*** Section 2605 violations.  Plaintiff merely reasserts Section 2605's standard, stating "Chase was prohibited from charging a late fee OR treating any such payments as late in regards to Mains' loan if received timely."  (*See* FAC ¶ 115.)  The FAC fails to allege that a late fee was, in fact, charged in violation of Section 2605, when any purported late fee was levied, or the amount of any late fee charged. Without asserting any facts alleging a violation of Chase's transferor/servicer obligations under Section 2605, Plaintiff fails to state a RESPA claim.  See *Banks v. Green Tree Servicing, LLC*, No. 14-CV-2825, 2015 WL 1058124, at *3 (N.D. Ill. Mar. 5, 2015) (dismissing RESPA claims against loan servicer/transferor because there were "no facts suggesting that [servicer/transferor] did not fulfill its RESPA duties as transferor servicer.").  Accordingly, Plaintiff's RESPA claim should be dismissed.

### B.  Count Four – Negligent and/or Intentional Infliction of Emotional Distress

In Count Four of the FAC, Plaintiff asserts a claim for negligent "and/or" intentional infliction of emotional distress.[9]  Plaintiff fails to plead the requisite elements to satisfy either negligent or intentional infliction of emotional distress.

### 1.    Negligent Infliction of Emotional Distress

Under Indiana law, a plaintiff seeking to recover for negligent infliction of emotional distress ("NIED") must satisfy the "modified impact rule" by establishing that he suffered a

---

[9] Rule 8(d)(2) permits pleading in the alternative, but the rule nonetheless requires sufficient pleading of one or the other.  *In re Meier*, No. 14-BK-10105, 2015 WL 4035311, at *2 (Bankr. N.D. Ill. June 26, 2015).

direct physical impact.  *G & S Holdings, LLC v. Continental Casualty Co.*, No. 3:09-CV-00592,

2011 WL 855345, at *12 (N.D. Ind. March 8, 2011) (citing *Atl. Coast Airlines v. Cook*, 857

N.E.2d 989, 996 (Ind. 2006)); *see also Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999) ("[T]he

direct impact sustained by the plaintiff must necessarily be a 'physical' one.").

The FAC alleges that Plaintiff suffers "severe emotional distress" and "high blood

pressure brought on by stress," which is attributed to the purported mishandling of his Mortgage.

(*See* FAC ¶ 138.)  Accepting these allegations as true, the FAC nonetheless fails satisfy the

modified impact rule because the mishandling of a mortgage does not rise to the level of a

"direct physical impact" under Indiana law.

In *G & S Holdings*, the court rejected plaintiff's NIED claim finding no "direct physical

impact" for the mishandling of an insurance claim, stating that it "seems very unlikely to produce

a sufficiently direct, physical impact under any set of circumstances."  *Id.*; *see also Atl. Coast*,

857 N.E.2d at 999 (concluding that smelling cigarette smoke and feeling floor vibrations "at the

very least [ ] stretches the outer limits of the impact requirement"); *Powdertech, Inc. v. Joganic*,

776 N.E.2d 1251, 1263 (Ind. Ct. App. 2002) (finding that employee did not suffer a physical

impact by being fired).   Similarly, Plaintiff has not and cannot set forth any set of circumstances

relating to his servicing or ownership of his Note and Mortgage that could rise to the level of a

direct physical impact.

An exception to the modified impact rule – the "bystander rule" – permits a plaintiff to

sue if he "actually witnessed or came on the scene soon after the death or sever injury of a loved

one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent,

grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct."

*Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000).  "In sum, in order to recover damages for the

negligent infliction [of] emotional distress, a plaintiff must satisfy either the modified impact rule or the bystander rule." *Atl. Coast*, 857 N.E.2d at 998; *accord Ind. Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1 (Ind. Ct. App. 2007).

Again, the FAC fails to satisfy the bystander rule because there are no allegations that Plaintiff "came on the scene" or witnessed the death or severe injury of a loved one, or that Citibank's or Chase's conduct caused any such death or severe injury. Accordingly, Plaintiff's NIED claim should be dismissed.

### 2.    Intentional Infliction of Emotional Distress

Under Indiana law, a defendant is liable for intentional infliction of emotional distress ("IIED") if he or she "(1) engages in extreme and outrageous conduct; (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Woodward v. Algie*, No. 1:13-cv-1435-DKL-RLY, 2015 WL 4526985, at *5 (S.D. Ind. July 27, 2015) (citing *Brown v. Indianapolis Hous. Agency,* 971 N.E.2d 181, 188 (Ind. Ct. App. 2012) and *Bradley v. Hall,* 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)).

Count Four of the FAC alleges that defendants' conduct included "the deliberate attempt by Defendants to destroy the credit or interfere with their property ownership including their peaceful enjoyment thereof" and that "[s]uch conduct is oppressive, fraudulent and malicious." (*See* FAC ¶¶ 141-42.) Accepting as true that defendants "destroy[ed] [Plaintiff's] credit" or "interefere[d] with [his] peaceful enjoyment" of his property, this conduct still fails to meet the "extreme and outrageous conduct" standard.

In defining the type of "extreme and outrageous" conduct necessary to give rise to liability, Indiana courts have turned for guidance to commentary in the Second Restatement of Torts:

26

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.** Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 (bold emphasis added); *see also Bradley,* 720 N.E.2d at 752-53; *Lachenman v. Stice,* 838 N.E.2d 451, 456-57 (Ind. Ct. App. 2005).  The law thus imposes a "rigorous" standard of liability for the tort of IIED, *see Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind. Ct. App. 2011), and under certain circumstances the existence or absence of actionable conduct by the defendant can be **decided as a matter of law**. *See Creel v. I.C.E. & Assocs., Inc.,* 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002).

In *Stender v. BAC Home Loans Servicing LP*, No. 2:12 CV 41, 2013 WL 832416, at *5 (N.D. Ind. Mar. 6, 2013), the Court rejected plaintiff's IIED claim based on purported emotional distress stemming from alleged refusal to honor mortgage loan modification agreements.  The *Stender* Court stated, "[h]istorically, Indiana courts have not permitted IIED claims based on contractual or economic harm, finding the conduct insufficiently extreme and outrageous to justify the tort as a matter of law."  *Id.* (citing *Comfax v. N. Am. Van Lines, Inc.,* 587 N.E.2d 118, 127 (Ind. Ct. App. 1992) (economic loss not sufficiently serious in nature to justify IIED claim); *Mehling v. Dubois County Farm Bur. Coop. Ass'n,* 601 N.E.2d 5, 9 (Ind. Ct. App. 1992) (IIED unavailable in breach of contract case); *McCreary v. Libbey–Owens–Ford Co.,* 132 F.3d 1159, 1167 (7th Cir. 1997) ("Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases.")).  Going further, the Court explained, "Plaintiffs allegations—that defendants lured them into signing loan modification agreements but

now refuse to honor them—suggest that perhaps defendants are dishonest and acted with selfish

economic motivation. But plaintiffs' allegations do not permit any plausible inference that

defendants' intention was to harm plaintiffs emotionally. Accordingly, plaintiffs' IIED claim is

dismissed." *Id.; see also Quimby v. Caliber Home Loans,* No. 1:14-CV-01335-JMS-TAB, 2015

WL 3751511, at *4 (S.D. Ind. April 22, 2015) (granting defendants' motions to dismiss

plaintiff's IIED claim, holding that allegations of harassing phone calls to collect a debt,

entering plaintiff's property to change a door lock, and placing stickers on the property's

windows "simply are not enough for a reasonable fact finder to conclude that [defendant]

engaged in extreme and outrageous conduct under Indiana's rigorous standard for intentional

infliction of emotional distress).

Like the conduct alleged in *Stender* and *Quimby*, defendants' alleged conduct here of

"destroy[ing] [Plaintiff's] credit" or "interfer[ing] with [his] peaceful enjoyment" of his property

is not "extreme and outrageous" under Indiana's high standard for pleading IIED.  Accordingly,

Plaintiff's IIED claim should be dismissed.

### C.  Count Five – Negligent Misrepresentation

Plaintiff fails to plead the requisite elements to satisfy a claim for negligent

misrepresentation under Indiana's limited application of the tort.  The tort of negligent

misrepresentation is recognized in Indiana in the limited circumstance of the employer-employee

relationship. *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 595-96 (N.D. Ind. 2012) (citing

*Darst v. Ill. Farmers Ins. Co.,* 716 N.E.2d 579, 583–84 (Ind. Ct. App. 1999)); *Thomas v. Lewis

Eng'g, Inc.*, 848 N.E.2d 758, 760-61 (Ind. Ct. App. 2006) (citing *Tri–Professional Realty, Inc. v.

Hillenburg,* 669 N.E.2d 1064, 1068 (Ind. Ct. App. 1996) *trans. denied,* and quoting *Trytko v.

Hubbell, Inc.,* 28 F.3d 715, 721 (7th Cir. 1994)).  "But it is clear that to date Indiana has not

recognized that a duty exists to support the tort outside the limited context of an employment

relationship." *Thomas*, 848 N.E.2d at 760 (citing *Eby v. York–Division, Borg–Warner,* 455 N.E.2d 623 (Ind. Ct. App. 1983); *Tri–Professional,* 669 N.E.2d at 1068).

The seminal case on negligent misrepresentation in Indiana is *Eby v. York–Division, Borg–Warner,* 455 N.E.2d 623 (Ind. Ct. App. 1983).  In that case, the Indiana Court of Appeals set forth the elements of the tort of negligent misrepresentation as:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Eby*, 455 N.E.2d at 628 (citing Restatement (Second) of Torts § 552 (1977)).  This Court has held that "Indiana courts have been loathe to extend this [standard] beyond the employment relationship context." *Lautzenhiser v. Coloplast A/S*, No. 4:11-CV-86-RLY-WGH, 2012 WL 4530804, at *6 (S.D. Ind. Sept. 29, 2012).

Here, there is no employment relationship between Plaintiff and Citibank or Chase. Plaintiff's relationship with Citibank and Chase is nothing more than the typical mortgagor/customer relationship between a borrower and a bank.  Such a relationship fails to create an "employment relationship," or any other special or fiduciary relationship between the parties.  *See Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) ("[T]he mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence.") (citing *Sees v. Bank One, Indiana, N.A.,* 839 N.E.2d 154, 164 n. 8 (Ind. 2005), and quoting *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998)).

Furthermore, Plaintiff is not able to establish the element of detrimental or justified reliance.  Plaintiff's claim is based on the premise that he detrimentally relied on Citibank's and

Chase's claims that they were the legal owner and servicer of his Note and that he has been damaged as a result. (*See* FAC ¶ 152.)  Plaintiff, however, clearly did not rely on defendants' representations in this regard because he challenged defendants' legal right to enforce his loan documents in the Foreclosure Action.  Thus, Plaintiff fails to establish the element of detrimental reliance, which is fatal to his claim.  Accordingly, Plaintiff's negligent representation claim should be dismissed.

### D.  Count Six – Fraud

Plaintiff fails to plead the requisite elements to make out a claim for fraud against Citibank and Chase—in fact, he pleads himself out of a fraud claim.  A claim for fraud requires that the plaintiff plead and prove detrimental reliance.  *McCalmet v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007).  As set forth above, Plaintiff argued throughout the foreclosure proceedings that Citibank and Chase lacked standing to enforce the Note and Mortgage or service the loan.  Thus, he cannot plead that he ever detrimentally relied on any representations by Citibank or Chase with respect to the servicing of the Note and Mortgage.

Moreover, Plaintiff's fraud claim must be dismissed because it is predicated on a finding that Citibank did not hold the Note or Mortgage and Chase did not have the right to service the loan.  That issue was already decided in Citibank's and Chase's favor at the state court level.  Accordingly, Count Six must be dismissed with prejudice.

### E.  Count Seven – Negligence

The FAC fails to plead the requisite elements to satisfy a claim for negligence.  The elements of a negligence claim in Indiana are (1) a duty owed to plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty.  *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 791-92 (7th Cir. 2013) (citing *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d

30

629, 635 (7th Cir. 2007) (*quoting Bader v. Johnson,* 732 N.E.2d 1212, 1216-17 (Ind. 2000))).

Plaintiff cannot advance beyond the first element. He cannot show that Citibank and Chase

owed him a duty; and without a duty, there is no viable negligence claim. *Id.* (citing *Bader,* 732

N.E.2d at 1216-17).

    The Seventh Circuit in *Jackson* held that there is no fiduciary duty between a lender and a

borrower, holding "it is clear under Indiana law that a fiduciary duty does not arise between a

lender and a borrower unless certain facts exist which establish a relationship of trust and

confidence between the two." *Id.* (citing *Block v. Lake Mortg. Co.,* 601 N.E.2d 449, 452 (Ind.

Ct. App. 1992)); *see also Cranston,* 928 N.E.2d at 246 ("the mere existence of a relationship

between parties of bank and customer or depositor does not create a special relationship of trust

and confidence."); *Huntington Mortg. Co. v. DeBrota,* 703 N.E.2d 160, 167 (Ind. Ct. App. 1998)

("**Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary

relationship absent an intent by the parties to do so**.") (bold emphasis added).

    Here, Plaintiff alleges nothing more than the typical mortgagor-mortgagee relationship;

and such a relationship, on its own, does not create a duty between a creditor and a debtor. *Id.*

(citing *Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 693 (7th Cir. 2011)). The FAC contains

no allegations showing intent by the parties to enter into a fiduciary relationship. In fact,

Plaintiff admits he had merely a "customer relationship" with Citibank and Chase. (*See* FAC ¶

175.) Without the creation of a duty, there is no tort. *Jackson,* 711 F.3d at 791-92. Accordingly,

Plaintiff's negligence claim should be dismissed.

### F.  Count Nine – RICO

    Plaintiff has not pled, nor can Plaintiff plead, a RICO claim against Citibank and Chase.

    To state a claim under Section 1962(c), Plaintiff must allege the following elements: "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.*

*v. Imrex Co.*, 473 U.S. 479, 496 (1985). Plaintiff must also show that he has standing as an individual "injured in his business or property." 18 U.S.C. § 1964(c). Standing requires a causal nexus between the plaintiff's injury and the alleged predicate acts of racketeering activity. *Sedima*, 473 U.S. at 496-97; *Holmes v. Securities Inv. Protection*, 503 U.S. 258, 268 (1992).

First, Plaintiff cannot allege standing. Again, his RICO claim is centered around allegations that Citibank and Chase (and others) conspired to enforce a loan against Plaintiff that they did not hold. (*See, e.g.*, FAC ¶¶ 203 (Defendants "committed fraudulent acts and attempted to collect on unlawful debt from Mains"), 204 ("Chase and Citibank N.A [sic] directed the prosecution to try to collect this unlawful debt in the name of the WAMU HE-2 Trust. . . ."), 207 ("The attempted foreclosures on the security interests they claimed under these 'loans', i.e., the victims [sic] homes, were accomplished by manufactured evidence (i.e. fraudulent affidavits, forged signatures), and then fraudulent phone calls and meetings with victims like Mains, and of course through court actions to perfect the foreclosures.").) The state court in the Foreclosure Action already determined that Citibank and Chase did hold the Note and did have standing to enforce the Mortgage. The state court issued a foreclosure judgment against Plaintiff and in Citibank's and Chase's favor. Plaintiff's damages, to the extent he suffered any, are due only to his own failure to make mortgage payments to Citibank, not any acts undertaken by Citibank or Chase.

Second, Plaintiff has not alleged a pattern of criminal activity sufficient to give rise to a RICO claim. "A 'pattern' of racketeering, an essential ingredient in a RICO case, means predicate acts sufficiently separate in time that they may be viewed as separate transactions." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir. 1987) (holding that fraudulent representations leading up to a single contract and the transfer of a single business opportunity

32

did not constitute a pattern).  Plaintiff has not alleged any wrongdoing in the FAC other than the

actions taken against Plaintiff to service his loan and foreclose on the Mortgage, other than vague

allegations that Citibank and Chase were involved in some wide-ranging scheme.  *See Tucker v.*

*Bank One, N.A.*, 265 F. Supp. 2d 923, 926 (N.D. Ill. 2003) (dismissing RICO claim brought by

plaintiff against bank and law firms that had foreclosed on his home, on the grounds that the

alleged wrongdoing involving a single transaction and exchange of property did not constitute a

pattern for RICO purposes).  "Nothing alleged in [plaintiff's] complaint could reasonably be

construed to constitute organized, long-term, habitual criminal activity.  He merely alleges that

Defendants should not have proceeded against him in civil court.  This is insufficient to state a

claim for which relief can be granted."  *Stanley v. Select Portfolio*, No. 07-cv-7750JPG, 2008

WL 2020509, at *5 (N.D. Ill. May 9, 2008).  Nor does the FAC anywhere describe any specific

predicate acts, other than generally alleging wire fraud, mail fraud, and other supposed

predicates.  Particularity means the "who, what, when, where, and how: the first paragraph of

any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  Plaintiff's

jumbled complaint does not come close to meeting that standard.  *See Decatur Ventures, LLC v.*

*Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 840-845 (S.D. Ind. March 21, 2005) (dismissing

RICO claim with prejudice for failure to plead a pattern of racketeering with particularity).

Accordingly, Count Nine should be dismissed with prejudice for failure to state a claim under

Rule 12(b)(6).

### G.  Count Ten – Conversion

To establish a claim for conversion, a plaintiff must demonstrate that a defendant

"exert[ed] unauthorized control over property of another[.]" Ind. Code § 35–43–4–3 (2010);

*Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1058 (S.D. Ind. 2011).  Under this

statutory provision, "[a] person who knowingly or intentionally exerts unauthorized control over

property of another person commits criminal conversion." Ind. Code § 35–43–4–3.  Though the offense of conversion is penal in nature, a plaintiff can bring a civil action premised on that offense if he or she suffered a pecuniary harm as a result.  Ind. Code § 34–24–3–1; *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 849 (S.D. Ind. 2005).

The basis of Plaintiff's conversion claim against defendants is that they "exerted control over Mains' loan payments without the legal right to do so."  (*See* FAC ¶ 218.)  Plaintiff cannot set forth a viable claim for conversion against defendants because the issue of whether Citibank and Chase have a legal right to collect Plaintiff's loan payments has already been decided in the Foreclosure Action.  Thus, Plaintiff cannot succeed on this claim as a matter of law because Plaintiff cannot demonstrate "unauthorized control" over his property as required to satisfy a claim for conversion under Indiana law.  Accordingly, Plaintiff's conversion claim should be dismissed.

**VII.  Plaintiff's First Amended Complaint Violates Rules 8 and 9 of the Federal Rules Of Civil Procedure.**

At a minimum, Plaintiff's claims all violate Rule 8 and should be dismissed.  The FAC is long and rambling, filled with only general and sweeping allegations of widespread wrongdoing, and recites case law statutes at length with no clarity as to any specific violations or the defendants to whom they apply.  Additionally, Plaintiff's allegations of fraud are generalized and do not satisfy Rule 9's particularity requirement.  Unlike many plaintiffs in similar cases who are proceeding *pro se*, Plaintiff is represented by counsel and his pleadings are not subject to any liberal or lenient interpretations.  Citibank and Chase join in and adopt the arguments with respect to Rule 8 and Rule 9 set forth in Bose's Memorandum (ECF Doc. 39) and Black Knight's Memorandum in support of its motion to dismiss (ECF Doc. 30).

Accordingly, Plaintiff's FAC should be dismissed in its entirety for failure to adhere to Rules 8 and 9 of the Federal Rules of Civil Procedure.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss with prejudice all claims directed against Citibank, N.A. as Trustee for WaMu Asset-Backed Certificates, WaMu Series 2007-HE2 Trust and JPMorgan Chase Bank, N.A. in Plaintiff's First Amended Complaint, and award Citibank and Chase all other relief that the Court deems just and proper.

Dated:  September 4, 2015

<div style="margin-left:40%">

Respectfully submitted,

/s/ Kathleen L. Matsoukas
Kathleen L. Matsoukas, Atty. No. 31833-49
Kyle W. LeClere, Atty. No. 29698-49
Barnes & Thornburg LLP
11 S. Meridian Street
Indianapolis, Indiana 46204
(317) 236-1313
(317) 231-7433 (Fax)
kmatsoukas@btlaw.com
kleclere@btlaw.com

*Attorneys for Defendants Citibank, N.A. as
Trustee for WaMu Asset-Backed
Certificates, WaMu Series 2007-HE2 Trust
and JPMorgan Chase Bank, N.A.*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of September, 2015, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.


/s/ Kathleen L. Matsoukas_____