UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION


ERIC P. MAINS
          **PLAINTIFF**


VS.                              CIVIL ACTION NO. 4:15-cv-00036-SEB-WGH


                                 **JURY TRIAL DEMANDED**

                                 *Electronically filed*


CITIBANK, N.A. as TRUSTEE for the WAMU-HE2 Trust
CHASE BANK, N.A.
NELSON & FRANKENBERGER, P.C.
BOSE MCKINNEY & EVANS, LLP
WYATT, TARRANT & COMBS LLP
BLACK KNIGHT Financial Services, LLC (formerly LPS)
CYNTHIA RILEY
CHRISTINE A. SAUERER
JODI SOBOTTA; and
UNKNOWN JOHN DOE'S
          **DEFENDANTS**


PLAINTIFF'S RESPONSE OBJECTING TO DEFENDANTS
<u>CITIBANK, N.A. AND CHASE BANK, N.A.'s MOTIONS TO DISMISS</u>.


1.    **INTRO:**


      Plaintiff, Eric Mains ("Mains"), by counsel, submits the following in support of his

response to the Motion to Dismiss ("MTD") submitted by Defendants Citibank, N.A. as Trustee

for WaMu Asset-Backed Certificates, WaMu Series 2007-HE2 Trust ("Citibank") and JPMorgan

Chase Bank, N.A. ("Chase"). Defendant has elected to join its MTD with that of other

Defendants in this case, see page 2 of Chase and Citibank's MTD, "Accordingly, Citibank and

Chase adopt by reference all of the arguments offered by Black Knight, Bose, Nelson, Riley and Wyatt, and join in their respective motions." This being the case, Plaintiff Mains incorporates his Brief(s) in Response to above Defendants in their entirety as well. Response points specific to Chase and Citibank's MTD are addressed herein.  Defendants Wyatt, Tarrant & Combs LLP ("Wyatt") and Nelson & Frankenberger P.C. ("N&F"), have requested to joinder with Citibank and Chase's MTDs as well (Joinder requests at [Dkt #112] & [Dkt #106] respectively), therefore this response applies equally to Wyatt and N&F, or other Defendants requesting joinder to Citibank and Chase bank's MTD."  As a reference, "FAC" means Plaintiff's First Amended Complaint. [Dkt. # 23].

## **INTRODUCTION**

Chase and Citibank's Motion to Dismiss are based on one singular overarching theme, namely that they cannot be held accountable for their actions by Mains or the court. They don't attempt to address the multiple "elephants in the room," which include: submitting forged and fraudulent documents in state court to procure a judgment against Mains, knowingly failing to properly disclose requested parties in discovery and during trial, and doing so despite signing a National Mortgage Settlement ("NMS")[1] prohibiting this conduct.  Instead, Chase and Citibank wish to argue that the fact they successfully obtained a judgment, ***regardless of their illegal tactics used in procuring this judgment,*** acts as a barrier to all consequences or damage claims brought against them.

Mains argued in his state court action that the chain of title to his mortgage loan had not been sufficiently documented through evidence to show holder in due course or holder with rights to enforce. What Mains did not know then, and only discovered recently due to

---

[1] National Mortgage Settlement website, Chase Bank, Citibank, http://www.nationalmortgagesettlement.com/

Defendants' concerted concealment of the issue, was that the documents promoted in court as true and accurate by Citibank and Chase were in fact forged making them void. Had this been disclosed Mains could have avoided 6 years of misdirected litigation. To frame the issue simply, a litigant's status of holder or servicer of a loan is irrelevant as to damages incurred by another party _if_ the tactics used to obtain a judgment are fraudulent, and they proceed anyway knowing that the judgment obtained would not have been possible <u>but for</u> <u>their fraudulent conduct and representations to the court</u>.

Mains, as the party suffering damages through this conduct, could elect to have the prior judgment obtained overturned in state court through filing a rule 60 motion and seeking compensation there, ***however nothing requires him to do so or restricts him to that venue.*** Mains is still well within the time frame to seek such a ruling, so to the extent he might elect to do so to proceed with any claims, he still has the option to do so. Mains has instead elected to seek compensation for the damages he suffered in a federal court venue, without seeking to disturb that state court judgment, ***also equally allowed***.

Mains will address the other elephant in the room in this brief as well, which is ***current*** standing. While Mains does not seek to overturn the state court's foreclosure judgment, the issue of Citibank and Chase's current standing in contesting Mains' enforcement of his TILA rights or what capacity they claim to appear before this court is of issue. What has been very clear is that loan sales, servicer changes, loan assignments, and assignment of judgments are the norm in the industry. The right of redemption exists in Indiana under Indiana Code Section 32-29-7-7 after foreclosure judgment and before sheriff's sale by paying the full amount of any judgment owed to the creditor for release of lien and satisfaction of the note. This is also exactly what a TILA

rescission allows for a debtor to do through an efficient procedure in which payment of any debt owed to the proper creditor is made.

Mains' TILA rescission, as confirmed by a unanimous U.S. Supreme Court, was effective by law, uncontested by Chase and Citibank in the 20 day time frame allowed under the statute to respond, and they are subsequently time barred from contesting its effectiveness. While Mains does not seek to contest the monetary judgment the WAMU HE-2 Trust was awarded in state court, and the validity of that judgment or its enforceability are not contested by Mains, current procedural matters must be attended to. Current standing requires that since Mains' TILA rescission voided the transaction he entered into and the security interest in it.  Therefore, the *current* creditor status of his debt needs to be documented and accounted for. The law requires that Mains and this court be able to confirm that a.) Mains' state court judgment was not assigned, b.) who the current claimed creditor of his loan is, and c.) that the payment of his loan balance through a refinance of his debt is properly credited to the current creditor. The law requires any clouds on his title to be cleared upon payment of his debt, and the current creditor with standing to do so is confirmed.

The above being noted, Defendants Chase and Citibank are desperately trying to invoke Res Judicata and Rooker Feldman to avoid any culpability for their past actions. Defendants argue statute of limitations as to some of Mains' causes of action. They also argue their conduct was not outrageous enough, or directly physically or mentally harmful enough to Mains to meet the bar on others. In fact, they argue Mains lacks *ANY* recourse for their conduct. Chase and Citibank come into this court with unclean hands, already under consent orders prohibiting them from participating in the types of illegal conduct they were a party to in Mains' case, and yet still request the court's equitable consideration in pursuit of avoiding justice.

4

It is important to consider that Defendants Chase and Citibank had multiple opportunities to proceed lawfully in court *if they indeed felt they could*. They were requested multiple times by Mains to consider a loan modification in 2009, but instead mysteriously lost his submitted paperwork over three times. They postponed their motion for summary judgment in Mains' foreclosure case for over *2 ½ years* while they were under investigation for violations of mortgage servicing rules by various government regulators. After settling the NMS and promising to proceed lawfully with foreclosure actions, they immediately reneged on that promise in Mains' case. They had knowingly employed a 3rd party (LPS/Black Knight) whom was already under a separate consent judgment in Indiana to clean up their forged note and mortgage assignments including Mains[2], and knowingly failed to disclose them as a party in violation of Rule 26. They tricked the court into facilitating conduct they knew was illegal. Chase and Citibank are both plainly aware the toll their conduct has taken on a national basis as to homeowners such as Mains[3].  Mains had his story covered in the media as well, and continues to give interviews and provide ongoing coverage of his case to reporters[4] for future news stories. The conduct that Mains seeks redress for is available to him as a basic matter of law, as will be further supported in this brief.

## ARGUMENT

---

[2] **Lender Processing Services Announces Multi-State Attorneys General Settlement; Significant Civil Litigation Also Resolved**, PR Newswire, 1/31/13, http://www.prnewswire.com/news-releases/lender-processing-services-announces-multi-state-attorneys-general-settlement-significant-civil-litigation-also-resolved-189185511.html
[3] **Foreclosure Suicides Reveal Darkest Side of The Housing Crisis. NBC News,** 8/5/14, **http://www.nbcnews.com/health/mental-health/foreclosure-suicides-reveal-darkest-side-housing-crisis-n172511**
**Foreclosures take an emotional toll on many homeowners,** 5/16/08, Stephanie Armour, USA Today, http://usatoday30.usatoday.com/money/economy/housing/2008-05-14-mortgage-foreclosures-mental-health_N.htm
[4] **This Former Bank Regulator Quit His Job to Fight For His House,** 5/18/15, David Dayen, Vice Magazine, http://www.vice.com/read/this-former-bank-regulator-quit-his-job-to-fight-for-his-house-518
**Exposed: F.D.I.C. Regulator Quit Job to Fight His Own Foreclosure Fraud,** 7/27/15, Senka Huskic, http://www.occupy.com/article/exposed-fdic-regulator-quit-job-fight-his-own-foreclosure-fraud

Mains points out that as to Chase and Citibank's <u>Background</u> section of their MTD on pages 3-4, the following items should be noted: Citibank is not the owner/assignee of Mains' Note and Mortgage, rather it is the WAMU HE-2 Trust who claims this status. (See Mains' FAC ¶ 41).  Citibank does not have any claims against Mains, instead the WAMU HE-2 Trust represents that it holds any claims as to payments owed and damages suffered, not Citibank. Citibank as Trustee for the WAMU HE-2 Trust is their representative.  Finally, Mains is not seeking *"Yet another appeal of the Foreclosure Action to this Court"(See MTD pg 4)*, **instead he is affirmatively suing the Defendants involved for their conduct as a separate and distinct matter.** Defendants attempt to use redacted statements from Mains FAC and equate those statements as somehow being evidence of Mains requesting an appeal to this court, one he clearly is not making.

**I. Standards of Review Under Rules 12(b)(1) And 12(b)(6).**

Several Defendants have filed Motions to Dismiss in this matter. As such, the standards of review for Rules 12(b)(1) and 12(b)(6) are already well-briefed and before this Court. Plaintiff agrees with the standards of review for Rules 12(b)(1) and 12(b)(6) as set forth in Defendants' MTD.

**II. Plaintiff's First Amended Complaint Should Not Be Dismissed Pursuant To Rule 12(b)(1) Because The Rooker-Feldman Doctrine Is Not Applicable.**

Chase and Citibank argue Rooker Feldman precludes the court's subject matter jurisdiction. The fact that neither the Plaintiff nor the state court(s) were apprised of the concealed identities and relationships among parties in violation of rule 26, fraudulent documents and forgery (including Cynthia Riley's undated and forged assignment in blank), and cooperation among the Defendants to carry out a wrongful actions against Mains is the basis for his federal complaint. Mains does not seek to re-try his state court action, or overturn the state

court's ruling as he has already pointed out.  Mains already pointed out that he, much as in the case of *Slorp v. Lerner, Sampson & Rothfuss*, 2014 U.S. App. LEXIS 18816, and *Iqbal v. Patel*, 2015 U.S. App. LEXIS 3241 (7th Cir. 2015), is bringing his Complaint due to the damages he suffered as a result of Defendants actions in bringing a foreclosure lawsuit they would have lacked the right to bring but for their deceptive actions. In *Iqbal*, the court made clear, "*In other words, if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury. As we wrote in Johnson, the federal court cannot set aside the state court's judgment.* **Iqbal alleges that the defendants conducted a racketeering enterprise that predates the state court's judgments."** (Emphasis added in italics and bold).  Their wrongful actions caused Plaintiff's damages. See *Johnson v. Pushpin Holdings, LLC,* 748 F.3d at 773 (7th Cir. 2014), *"The [Rooker‑Feldman doctrine] does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff.  Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment."* (Emphasis added in italics).  See further, *GASH Associates v. Village of Rosemont*, IL. 995 F.2d 726,728 (7th Cir. 1993), "***A Plaintiffs federal claim may even contradict the legal conclusion of a state court judgment as long as the claim is independent*.**" Judge Joan Lefkow, U.S District Court Judge for the N.D IL noted in the case of *Gonzalez v. Bank of America et al* (1:13-cv-03463), IL N.D, Filed 05/09/2013, in her footnote #5,

"*Although 'inextricably intertwined' is a somewhat metaphysical concept, . . . [t]he determination hinges on whether the federal claim alleges that the injury was* **caused by the state court judgment, or, alternatively,** *whether the federal claim alleges an independent prior injury that the state court failed to remedy."* *Taylor v. Fed. Nat'l Mortgage Ass'n, 374 F.3d 529, 533*

7

*(7th Cir. 2004). If a federal claim is "inextricably intertwined" with a state court decision, then the plaintiff must show that he "**did not have a reasonable opportunity to raise the issue in the state court proceedings**." Id. (internal quotation marks and citation omitted)* (Emphasis added in bold).

In an on point case from the 7th circuit in Indiana *Hochstetler v. Fed. Home Loan Mortgage Corp*., No. 12 CV 772, 2013 WL 3756502, Plaintiffs both lost in state court when the Elkhart Superior court issued its Default Judgment foreclosing on their home and after they had a reasonable opportunity to raise all of the claims alleged in the complaint at the state court level. Defendants responded to Plaintiffs' Complaint by filing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. They asserted that Plaintiffs' claims were "a list of grievances" against the judgment of the state court, which this Court cannot review under the Rooker-Feldman doctrine. ***Additionally, they contended that any relief granted by this Court would undermine the legal conclusion reached by the state court and overturn its judgment.*** The court ruled in that case on the following points as to FDCPA claims, TILA claims, and emotional distress claims, **"**Plaintiffs' claims made under the Fair Debt Collection Practices Act (FDCPA) pass the Rooker-Feldman bar. **The FDCPA provides a form of relief that can be granted without setting aside the judgment of foreclosure**…Thus, as long as the alleged violations of the FDCPA were complete **before the state court judgment**, this Court would be able to provide relief for those violations. Long, 182 F.3d at 556. The claims also allege injury **before the foreclosure action**. As a result this Court cannot dismiss these claims pursuant to the Rooker-Feldman doctrine … **Plaintiffs' claims under the Truth in Lending Act (TILA) also pass the Rooker-Feldman test. TILA provides an independent remedy making the creditor liable to the debtor for illegal acts that cause "any actual damage." 15 U.S.C. § 1640(a)(1)…**

**Finally, this Court has supplemental jurisdiction to consider Plaintiffs' claim for intentional infliction of emotional distress because the claim forms part of the same controversy as the federal claims. 28 U.S.C. § 1367(a).** The claim also passes the Rooker-Feldman test because it asserts a claim for relief outside the scope of the state court judgment." (Pages 8 and 9 Emphasis in bold).

Mains makes clear in multiple parts of his FAC as to the independent source of his damages being the fraudulent representations and activity of the various Defendants and their active concealment of this from him before final judgment and for damages that were incurred and affected Mains regardless of the outcome of that judgment. Mains states in **paragraph 108** of his FAC, *"Mains and his counsel relied upon the validity of the fictitious documents in evaluating his claims and defenses in 2012 when the summary judgment process was instituted against him, and through the appeals process."* **FAC paragraph 61** where Mains stated, *"Given the above as a backdrop, it was in December 2014 that in reviewing the "loan" documentation associated with this Federal court filing, Mains discovered that the documents associated with his "loan" contained incontrovertible evidence of fraud, forgery, and possibly backdating as well. **Some of this evidence was knowingly withheld from the court by the Defendants involved. This evidence was not available to Mains until recently in some cases, but in all cases those involved in bringing the foreclosure action against Mains were aware the fraud and defects existed while Mains' case was ongoing in State court, but refused to correct or disclose the issues."*** Additionally, **FAC paragraph 170**, *"The Mains suffered substantial harm and damage by reason of the above wrongful acts of Defendants as described herein."*

Defendant Citibank and Chase bank attempt to pepper the court with a series of snippets from inapposite cases in the hope that the sheer volume of case cites will somehow make their

contention that Rooker Feldman precludes Mains' action true. Defendants first cite to *Harold v. Steel,* 773 F.3d 884, 885 (7th Cir. 2014). Harold contested a small claims court judgment 20 years after it had been rendered and an alleged creditor sought to enforce and garnish his wages. Harold lost in state court, sued in Federal court under the FDCPA, ostensibly because he suffered damages ***by the fact the judgment was being enforced.*** How this is applicable to Mains' case is once again a mystery, as he is not claiming he suffered damages due to the state court's judgment being enforced (as Harold plainly was when he sought FDCPA damages from Steel for uttering false statements to get it enforced). Defendants next cite to *Sheikhani v. Wells Fargo Bank*, 577 Fed. Appx. 610, 611 (7th Cir. 2014), which concerns a state court judgment on a foreclosure where a Plaintiff sought to challenge the foreclosure judgment by suing the alleged creditor. Mains is not challenging his foreclosure judgment, the case is inapposite. Their subsequent cite is *Nora v. Residential Funding Company, LLC*, 543 Fed. Appx. 601, 601-02 (7th Cir. 2013). Nora sought to not only overturn her foreclosure judgment, but sought to bring in a fraud claim she already argued in state court and lost, again an inapposite case.

Chase and Citibank then list a virtual mountain of cites[5] without doing one thing: reviewing the cases and pointing out to the court why in the world they are relevant to Mains'

---

[5] "Federal courts routinely dismiss claims under Rooker-Feldman when the federal claims arise out of state court foreclosure litigation. See, e.g., Sheikhani, 577 Fed. Appx. at 611; Nora, 543 Fed. Appx. at 601-02; Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 646-47 (7th Cir. 2011); Wallis, 443 Fed. Appx. at 204-05; Stanley v. Hollingsworth, 307 Fed. Appx. 6, 9 (7th Cir. 2009); Taylor v. Nat'l Mortg. Ass'n, 374 F.3d 529, 531-33 (7th Cir. 2004); Ross-West, 523 Fed. Appx. at 396; see also Roberts v. Cendant Mortg. Corp., No. 11-CV-1438, 2013 WL 2467996, at *3-4 (S.D. Ind. June 7, 2013) (dismissing FDCPA, Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), and other claims under Rooker-Feldman where the seminal issue underlying the complaint **was whether defendants had standing to foreclose**); Williams v. Ameriquest Mortgage Co., No. 14-CV-0401, 2014 WL 3687729, at *3 (N.D. Ill. July 24, 2014) (**holding that the plaintiff would not have experienced injury but for the foreclosure judgment**, and dismissing TILA, RESPA, fraud, and other claims pursuant to Rooker-Feldman). These cases demonstrate that a plaintiff cannot seek to remedy "wrongs" allegedly committed in the course of a foreclosure suit by "recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations." Wallis, 443 Fed. Appx. at 204-05; see also Davis v. Countrywide Home Loans, Inc., No. 10-cv-1303, 2011 WL 837048, at *4 (S. D. Ind. March 4, 2011) (**plaintiffs "cannot circumvent Rooker-Feldman by simply recasting their claims as violations of federal law"**) (citing Stanley, 307 Fed. Appx. at 9). Citibank and Chase MTD page 7-8, (emphasis added)

case, using vague notes under the cites (Mains has highlighted these in his footnote) which instead of helping their cause instead show the cases are not on point to Mains' Complaint. Defendants then end their mountain of inapposite cites by making multiple conclusory based statements on page 8 of their memorandum. Mains addresses those highlighted contentions in order as follows:

- "*Plaintiff's suit against Citibank and Chase merely recasts allegations he made in the state court Foreclosure Action as "new" federal claims in an effort to circumvent and relitigate the state court's rulings.*" Mains is not seeking to oppose the foreclosure judgment, **he is seeking damages for recently discovered fraud, ALL of which occurred prior to judgment on his state lawsuit, and some claims are new** (i.e, FDCPA violations post his rescission and filing of his federal complaint). ALL of his claims are independent actions, in which damages were incurred <u>regardless</u> of the state court judgment. Mains will address the claims individually in response to Defendants' individual assertions infra.

- "*Ruling in favor of Plaintiff and against Citibank and Chase would necessitate that this Court "review and reject" rulings that the state court made against him in the foreclosure suit.*"

This is again false as is made clear by *Hochstetler, GASH,* and *Taylor* cited Supra. As long as claims are allowed by Rooker Feldman, which Mains' are, the only analysis left is whether claims are precluded under Res Judicata, which again as will be discussed infra, Mains are not. *GASH* makes clear, as long as the claims are independent which is far different then rejecting a non-independent claim ruled upon.

- "*Plaintiff does not allege any wrongdoing by Citibank or Chase that predates the state court foreclosure litigation or is unrelated to it.*"

First, Cynthia Riley's undated and forged endorsement may have occurred prior to, or during the commencement of litigation. Since the endorsement is undated, it is a question of fact

for discovery.  Similarly, the same situation exists with LPS' forged assignment, which may or may not have been endorsed prior to litigation, <u>although the notary stamp indicates the assignment prior to litigation on **5/26/2009, preceding the default and acceleration notice sent by N&F on 6/1/2009 (See Mains FAC, exhibits #3 and #7).**</u>  By forging an assignment LPS, as Chase's 3rd party agent, put a cloud on Mains' title, the same as Riley's forged endorsement did. Claims of being a holder through either proper assignment of the mortgage or being a legitimate holder of a note endorsed in blank would also be legally required for Chase, Citibank, or N&F to have sent the late notices and default notices prior to litigation with Mains. **This means an illegal cloud was put on Mains' title prior to commencement of litigation if one goes by this date of the LPS assignment,** meaning that LPS was also involved and not disclosed prior to litigation by Chase, Citibank, and N&F. All acts occurred by definition prior to the state court judgment.

-*"Plaintiff's alleged losses all result from Citibank's and Chase's pursuit of their legal rights under the loan documents with Plaintiff, and all of Plaintiff's claims rest on Citibank and Chase's lack of standing to enforce the loan documents and what Plaintiff complains are bad acts and damages that resulted from that enforcement."*

To start, one cannot, by definition, pursue one's legal rights by committing an illegal act such as forgery, fraud, misrepresentation, etc.  By Citibank and Chase's definition, it would be perfectly fine to shoot Mains to claim his home if they had a secured interest in it, but since none of the large banks seem to particularly care that people have indeed committed suicide due to the stress of illegal foreclosure tactics (See footnote 3), this may not be too far a stretch. Second, as discussed in Mains' introduction, regardless of Citibank's actual standing to enforce the loan documents on behalf of the WAMU HE-2 Trust, again illegal conduct cannot be used to enforce them or obtain a court order (as the NMS made clear and Citibank and Chase both signed). Knowingly hiring a 3rd party to commit fraud for you, such as LPS, similarly cannot be tolerated.

Citibank and Chase's conduct and acts prior to litigation, during it, and prior to judgment are the subject of Mains' Complaint, and the full extent of the liability that exists for all Defendants will be the further subject of discovery as well.

Mains counters Citibank and Chase's arguments point by point as follows:

**Count I RESPA**- The WAMU HE-2 Trust is the party claiming the damages as to lack of loan payments from Mains. The payments <u>they received from Chase</u> is a question of fact for discovery as Mains explains below. Mains requested all such information regarding the payments on his loan properly during discovery, and was given a loan detail printout by Chase in response, which purported to show amounts owed by Mains on his loan. This detail was used to arrive at the $271,452.17 claimed due them. Mains recently discovered at the same time he discovered the evidence of the forged documents in his case that the loan detail statement from the WAMU HE-2 Trust (which was again not provided in violation of rule 26), showed Mains loan was not in default as to the WAMU HE-2 Trust (Exhibits 10 & 11 to Mains Complaint, too voluminous to print in total) and the amounts showed owed did not match the loan detail statement as provided by Chase in state court. Further, Mains discovered the Trustee (Citibank) did not vouch for the veracity of the accounting of the Trust's loan data, and instead "relied on 3rd parties" (see exhibit 12 Mains' Complaint).

Much as with his FDCPA and TILA claims, Mains was not aware his RESPA violations existed because Chase and Citibank failed to disclose discovery data to Mains, and as in *Hochstetler*, a foreclosure judgment does not preclude such claims under Rooker Feldman or undermine the state court's judgment. Violations of RESPA were therefore not a part of Mains' state suit, and were not adjudicated or decided on. Citibank and Chase again miss the mark in terms of RESPA violations; Mains is not disputing <u>the amount</u> Citibank or Chase claimed they

are owed as part of the foreclosure judgment, or <u>IF</u> they are allowed to include late fees in the foreclosure judgment, or even <u>IF</u> he did pay late fee's, he already knows he did per the foreclosure judgment. <u>The question under RESPA is if the fee is a RESPA violation.</u> Mains can ask, and has asked in his FAC at paragraph 116 for, "damages as allowed under 2605(f) for violations of RESPA in regards to the treatment of his payments during the 60 day period described in subsection (d)." <u>RESPA specifically allows for damages if the accounting for the payments was improper during the 60 day transfer period.</u>

Put simply, it is about WHOM is claiming the late fee, and WHY, and if by claiming the fee they have violated RESPA. Given that Mains has a loan detail statement showing his loan NOT in default, or late, with the WAMU HE-2 Trust, it is a mystery as to WHY any late fees show up in the foreclosure judgment at all. If they have indeed been paid timely to date through servicer advances from Chase, insurance payments to Chase, or payments on transfer of servicing from WAMU, etc., then RESPA clearly does not allow a late fee charged to Mains as to ANY payment received by Chase as transferee servicer in the 60 day period and forwarded to them. Chase or Citibank may have their own agreement or policy as to charging late fees upon not receiving a payment from a borrower, however if ANY payment was ultimately received that covered the payment to the WAMU HE-2 Trust in the 60 day period then such late fee, even if approved by the state court in a judgment, is still a separate and independent RESPA violation which Mains has recourse for.  Indeed, since Chase and Citibank failed to disclose the funds loan detail report or the fact that Mains' loan was not in default with the WAMU HE-2 Trust, a proper accounting is required as Mains has requested in his FAC paragraph 119 to allow Mains to further ascertain the extent of any RESPA violations.  Mains has also covered equitable tolling as to statute of limitations on RESPA claims as will be further discussed infra.

**Count Two – TILA**- Once again, as pointed out in *Hochstetler*, a foreclosure judgment does not preclude TILA claims under Rooker Feldman nor undermine the legal conclusion reached by the state court and overturn its judgment. Defendants' assertion that Mains would not have TILA claims "but for his foreclosure" is incorrect, as it is akin to claiming one cannot have FDCPA claims "but for" an actual legal action being filed. The TILA claims include ***current claims***, are independent, and as *Hochstetler* points out are actionable. Defendant Chase and Citibank footnote the subject of Mains' TILA rescission, which Mains will further discuss infra  to match their point by point analysis. However, as Mains has pointed out in his introduction it is ***they*** who are time barred from setting aside Mains' TILA rescission. Mains served Chase and Citibank's counsel directly with the TILA rescission, as well as Chase, and they decided to simply sit on their hands and let Mains' rescission go unchallenged. The statute is clear as to the time frame to dispute and bring any challenges to the rescission, which is effective by law when dropped in the mail. A TILA rescission is not "conditionally" effective, it does not require court approval or review (Unless timely challenged, which Mains was not).  It is a creature of statute meant to aid debtors who enter into transactions that in many cases may have violated the statute of frauds, ***and Mains can only assume Chase and Citibank failed to challenge his because they knew that without the aid of forged documents they did not have proper documentation to raise any challenges or represent his current creditor.*** Arguments as to the consummation of Mains' transaction, timing, true nature of the transaction, etc., are allowed to be raised in the 20 day period subsequent to receipt, but again Chase and Citibank chose to let the clock run out. A unanimous U.S Supreme Court backs Mains as to the plain reading of the statute in *Jesinoski v. Countrywide Home Loans, Inc*., 574 U.S. ___ (2015), but Mains doubts any litigation that results from his rescission is likely to be resolved in a MTD.

Order of events is now dictated by TILA, and as the 9th circuit court noted in the case of *Causey v. U.S. Bank 7 Ass 'n*,  464 F. App'x 634 (9th Cir. 2011), referencing *Yamamoto*, a case from the 9th circuit court of appeals, "**Although the district court is authorized to modify the default sequence, that authority ends once rescission is accomplished. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4).** In a case where the creditor disputes the consumer's asserted ground for rescission, rescission is not accomplished until a court determines that the consumer had the right to rescind. **See *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003). But in a case where the creditor acquiesces in the consumer's notice of rescission or fails to respond within the 20-day response period, rescission is accomplished automatically. See id.** (Emphasis in bold).

Here, the undisputed facts show that the plaintiff timely mailed his rescission notice, and the defendant failed to dispute it within 20 days — thus accomplishing rescission automatically and triggering the default sequence under the regulations."  While that decision is non-binding in this circuit, the ruling and interpretation are sound, especially post *Jesinoski*.

## STANDING

**Mains also challenges Citibank and Chase's <u>current </u>standing to represent the claimed holder of his debt.**  Mains' judgment was issued years ago, and it is common for loans to be bought and sold or assigned.  Mains is NOT contesting that the WAMU HE-2 Trust was awarded a valid judgment Mains is responsible for, what he is contesting is the current "alleged" holder of that judgment, Chase and Citibank's, rights to represent the current creditor of his loan and basic procedural matters as to standing.  It goes without saying that historical standing from another lawsuit does not automatically transfer current standing to a lawsuit in another venue.  Mains does not presume Defendants current status to represent the holder of his debt, nor should the

16

court. Once that issue has been addressed, they can proceed to discuss issues related to his rescission if they have standing to do so. This is also why Mains has requested an accounting of his loan, which along with discovery will easily clear up this matter.

**Count Three – Violation of Indiana Code 32-30-10.5-** Contrary to Chase and Citibank's contention, Mains is not asking to have his judgment "set aside" by seeking a declaratory ruling as to this statute being violated. If it is found to have been violated Mains could go back into state court on a rule 60 motion, and then request the state court to set aside his foreclosure due to violations of the statute; but by the same token, he could seek a rule 60 motion in state court in any event for use of the forged documents and fraud in his case. Mains seeks a simple ruling as to the statute being violated, or not, and makes clear he is not seeking any relief through such a ruling in his Complaint.  In fact he states just that in his FAC at paragraph 134. The Defendants once again argue that Mains raised the argument of holder status and rights to enforce, but this is a red herring. The forgery and fraud involved in Mains' case, nullified and precluded an effective meeting under the statute from being had <u>because there could have been no meeting but for Defendants' deception</u>. This meeting predates the court's judgment, and in fact is a prerequisite to any foreclosure judgment, *by statute*. This makes all the difference in the world, as with TILA or the FDCPA, because the Indiana legislature has stated that a foreclosure action may not proceed until such a conference is effectively held, and it precludes the court's power to issue such a judgment. Since the statute gives a borrower independent rights, Mains can seek to enforce his rights in state court if he so chooses. What he cannot do, and what he is not asking be done, is for this court to rule his foreclosure judgment be overturned or for this court to review the state court's ruling. The state court merely noted the conference that was held ended unsuccessfully, <u>they never made a disposition as to whether the conference held met the statutory</u>

requirements of I.C 32-30-10.5, and this court is not precluded from ruling on this. It would be up to Mains to request the state court to review such a finding to see what, if any, weight it carried if Mains seeks a rule 60 motion.

**Counts Four, Five, Six, Seven, and Ten – Plaintiff's Tort Claims-**

Defendants claim Mains cannot enforce his tort claims for the exact same reason it did in *Hochstetler* under the same fact pattern where the court affirmed, "this Court has supplemental jurisdiction to consider Plaintiffs' claim for intentional infliction of emotional distress because the claim forms part of the same controversy as the federal claims. 28 U.S.C. § 1367(a). The claim also passes the Rooker-Feldman test because it asserts a claim for relief outside the scope of the state court judgment."

Defendant falsely makes the assertion "all of these counts attack the judgement of foreclosure. Plaintiff asserts that Citibank and Chase harmed him by enforcing the loan documents" in its section D page 10. Mains is not attacking the foreclosure judgment. The damages incurred would have occurred regardless of the foreclosure judgment. Mains damages were not caused by Defendants enforcing their rights under loan documents, Mains damages were caused by Defendants illegal and fraudulent conduct, something that is not a right under any loan contract. **This goes back to the analogy of a lender using a gun to shoot the borrower to collect money owed even if the loan contract entitles him to the money; it was the illegal conduct that caused the borrower independent damage, not the lender enforcing "his rights under the contract" or a judge ruling he had the right to enforce it, as the judge cannot grant the lender the right to break the law while enforcing it.** Mains apologizes for using such a basic narrative, but he feels it is appropriate under the circumstances.

**Count Eight – FDCPA-** Defendant Chase and Citibank's claim that the FDCPA claims Mains brings fails under Rooker Feldman for the same reasons as all its previous arguments above regarding TILA, RESPA, etc., and under clear analysis of court decisions such as *Hochstetler*, *Slorp, Taylor*, etc.  The Defendants arguments fail even more so with the FDCPA as it is a strict liability statute prohibiting false and deceptive means used in the collection of debt. Defendants' assertion that Mains does not have viable FDCPA causes of action because it involves the "enforceability of his loan documents" is incorrect, and again is an attempt to mislead the court as Mains has already pointed out. The Defendants Chase and Citibank used false and deceptive means to attempt to collect a debt from Mains as he has described fully in his FAC paragraphs 180-191.  The enforceability of the debt has nothing to do with the means used to collect it. The claims are independent and as *Hochstetler* points out are actionable.

The post state-court trial actions of Citibank and Chase in threatening through counsel Wyatt, Tarrant & Combs, LLP ("Wyatt"), that they unilaterally decided Mains' rescission was not effective, and that they would proceed with the pending sheriff's sale, was a new and unrelated FDCPA violation not subject to Rooker Feldman as Mains explained extensively in his FAC at paragraph 191, and also paragraph 182. Mains went into extreme detail as to this violation of the FDCPA in his response to Wyatt, Tarrant & Combs MTD [Dkt. #111] and noted the Defendants conduct of threatening legal action to proceed with a sheriff's sale less than 24 hours away despite a.) Mains' Complaint and request to enforce his rescission being filed in this court, b.) despite Mains Temporary Restraining Order ("TRO") being filed in this court asking the sheriff's sale be halted, c.) despite Citibank's assurances to this court and Mains through counsel it had already called off the pending sheriff's sale of Mains property, precluding Chase banks or Wyatt's authority to make such a threat d.) despite knowing the judge in this court made

a ruling that Mains TRO was a moot point based on this assurance. Citibank and Chase proceeded to threaten legal action against Mains despite all the above, and knowing Mains' suit in this court contained inconvertible evidence of its forged documents and fraud, and non-disclosure of material evidence in violation of rule 26. Rooker Feldman applies to none of these post state trial actions.

**Count Nine – RICO-** Mains RICO claims are allowable for the same reasons as his TILA, RESPA, FDCPA, claims under *Hochstetler, Slorp, Taylor*, etc. Once again the Defendant attempts to mislead the court by stating the action is about holder status or enforcement of a judgment as opposed to fraudulent methods used to obtain a judgment, regardless of underlying contract rights. Defendant states on page 11 of its MTD, "As with the other counts, the RICO claim is barred by Rooker-Feldman because it seeks a finding that Citibank and Chase did not properly hold or service his loan and thus asks the Court to issue rulings that would undo or run contrary to the findings of the state court." The case of *GASH Associates v. Village of Rosemont, IL.* 995 F.2d 726,728 (7th Cir. 1993) makes clear, "***A Plaintiffs federal claim may even contradict the legal conclusion of a state court judgment as long as the claim is independent***." (Emphasis added in bold).

Indeed, as noted by Mains in his FAC at paragraph 201, "More specifically, section 2314 prohibits '**transport[ing], transmit[ting], or transfer[ing] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen,** *converted or take by fraud.*'" And at 211, "***Mains is not barred by Rooker Feldman or by Res Judicata from seeking a redress for his injuries***, and as specifically noted by the Department of Justice's Manual on RICO as stated Supra, "***Indeed, as a general rule, even if a defendant were acquitted in state court of a state offense referenced***

20

*in Section 1961(1)(A), such state offense, nevertheless, may be charged as a proper RICO predicate act*".  (Emphasis added in bold).

The RICO statutes provide an independent redress for injuries that include using fraud to obtain money, including tricking a court into issuing a judgment using fraud. This claim is independent and does not require overturning the state court judgment or revisiting it.

**III. Plaintiff's First Amended Complaint Should Not Be Dismissed Pursuant To Rule 12(b)(6), Res Judicata Is Not Applicable.**

Mains will address Defendant Citibank and Chase's claims point by point.

**-Claim preclusion and Plaintiff's claims against Citibank and Chase**.

Defendant Chase and Citibank claim that Res Judicata and collateral estoppel should weigh in their favor, despite the fraud and concealment they participated in, and they come into court with unclean hands requesting relief as a result.  First, claims preclusion cannot apply to claims that by definition are preclusive themselves from having been known or knowable by Mains, or the court, due to active concealment and fraud, and therefore could never have been fairly adjudicated or a final judgment on the merits reached. Second, Mains never adjudicated the issues as Defendant would like to assert. Mains, having been presented with documents claimed valid, which instead contained forged signatures, some of which appear to have been backdated as well, and having asked in discovery and told all necessary parties were disclosed, proceeded with a defense that the chain of title showed gaps and holder in due course was an issue. He never adjudicated the issue of whether the documents were in fact fraudulent, were therefore void, precluding a need to argue chain of title, and never knew there was a concealed party to his case and attendant issues due that existed or could be adjudicated.  Mains claims are properly preserved for this federal court venue. Mains is not seeking to set aside his state court judgment or re-litigate claims in regard to foreclosure of his home. *Mains claims are for damages suffered*

*by having to defend himself against Defendants bringing a legal action based on fraud, not whether they held Mains' note or had a right to service it, a red herring the Defendants consistently raise.* Citibank and Chase knew that Cynthia Riley did not have the authority, or ability, to have endorsed Mains' Note.  This is aside from the fact that she indicated she never physically endorsed any notes herself per her federal deposition in the matter of *JPMorgan Chase Bank, N.A v. Eduardo Orazco*, case No: 09-29997 CA (11), Fla. 11th Circuit Court. Citibank and Chase knew LPS/Black Knight was not disclosed as a party to Mains' state court action, and knew that they had produced an assignment in his case (despite being under a consent judgment to correct and halt this activity). Citibank's counsel, N&F, did not disclose the nature of its relationship with LPS/Black Knight, nor did Bose McKinney Evans, LLP ("Bose") to the appeals court. Citibank, Chase, LPS/Black Knight, N&F, and Bose all come into court with "unclean hands," and now seek to reap the benefit of this non-disclosure and fraud by claiming Mains should have "known of and litigated issues" as it related to their concealment and fraud. In short, they want to create Res Judicata based on their wrongful actions. Mains notes the Indiana Court of Appeals hit the proverbial nail on the head in the case of *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628 (Ind. Ct. App. 2008) [6], noting in that case that had the fraud been known, a default judgment was warranted. The Seventh Circuit has noted that courts have recognized a trial court's inherent power to dismiss a suit based on "*bad faith, fraud, or undue delay by one of the parties." Kovilic Constr. Co., Inc. v. Missbrenner*, 106 27F.3d 768, 773 (7th

---

[6] "Similarly, **Law not only committed fraud by forging the SA Document, but also committed further fraud by presenting the SA Document to the trial court, alleging it to be a legitimate and valid document...parties to a lawsuit should be entitled to proceed under the assumption that the opposing party will not commit a flagrant act of fraud upon the court. By submitting the SA Document to the trial court, Law committed one of the worst acts of discovery misconduct upon the trial court that this court can recall**" *Prime*, pages 13-14 (emphasis added).
 ""The SA Document went to the heart of the case, and indeed, required Nichols to change the theory on which she proceeded ... In sum, **we conclude the trial court acted within its discretion in determining that the sanction of default judgment was warranted**." Prime, pages 28-29 (**emphasis added in bold**)

Cir. 1997). Citibank and Chase would never have made it out of the gate in Mains' case had their fraud been disclosed in conjunction with LPS's fraud, Mains would have adjudicated the proper claims and issues, and a TRUE judgment on the merits would have been reached. While Mains is not contesting the judgment that WAS reached, he certainly is not barred by res judicata in any form from seeking damages now as to actively concealed issues and claims he was unaware of and precluded from bringing in state court.

**IV. Claims Based Upon the Pooling and Servicing Agreement.**

Mains has brought no claims in this court based on the PSA, he merely referred to it when needed as to evidence the procedures and processes claimed used by the WAMU HE-2 Trust, Citibank, and Chase, and as evidence of void actions per the PSA by the WAMU HE-2 Trust, Citibank, or Chase when needed. To the extent that WAMU HE-2 Trust, Chase, or Citibank claim current standing to be in this court based upon the PSA, or other Trust documents, Mains of course reserves the right to refer the court to these documents.

**V. Plaintiff's Counts One, Two, Four, Five, Seven, Eight, and Ten are Not Barred by Applicable Statutes of Limitations Pursuant to Rule 12(b)(6).**

Under the doctrine of equitable tolling, plaintiffs can avoid the bar of statute of limitations ("SOL") if, despite all reasonable diligence, the plaintiffs were unable to obtain vital information bearing on the existence of their claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

In contrast to equitable tolling, the application of equitable estoppel "is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." *Bomba v. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir. 1978). Equitable estoppel is available to the plaintiff where "[a]ny deliberate or blameworthy conduct by the defendant ...

causes the plaintiff to miss the statutory deadline." *Shropshear v. Corporation Counsel of the City of Chicago*, 275 F.3d 593, 597 (7th Cir. 2001) (emphasis added). Chase and Citibank attempt to assert Mains has not pled the elements and requested relief available under both theories, when he plainly has.  Mains has requested equitable tolling be applied to his claims as appropriate in his counts section, see infra. Mains also pointed out ***before*** his counts sections of his FAC at paragraphs 108, "Mains and his counsel relied upon the validity of the fictitious documents in evaluating his claims and defenses in 2012 when the summary judgment process was instituted against him, and through the appeals process. ***They did not begin to suspect that the documents of record were fictitious and contained forgeries and other fraud, and that the Chase Bank Assignment had been prepared by employees of LPS, until December 5, 2014***." Paragraph 109, "***This action was commenced within three (3) years of the date upon which Mains suspected the fraudulent filings and was on constructive notice thereof***." Contrary to what Defendants are attempting to assert, nothing precludes the court from a finding that either theory is applicable as Mains has pled the requisite elements for each and requested relief from the statute of limitations.

**Count One RESPA-**Mains has already fully covered the elements of his requested relief from statute of limitations ("SOL") supra under Rooker Feldman discussion of his RESPA claims. Mains has claimed equitable tolling and equitable estoppel as a basis for his relief from the SOL due to Defendants active concealment and fraud precluding his knowledge and ability to bring his claims sooner.

**Count Two TILA-** Mains has already discussed his TILA claims supra as well, and will further cover important points here. First, standing is an issue that must first be overcome by Chase and Citibank in relation to Mains' TILA rescission, as Mains challenges that they still represent the

*current* holders of his debt or judgment. ***A simple accounting of Mains' loan, as he has requested, and a bit of discovery will clear up that issue fairly easily, sans the use of any forged documents that is.*** Once that issue has been addressed, they can proceed to discuss issues related to his rescission if they have standing to do so. Regardless if they are still representing the current holder of his debt and judgment, they are still time barred in any case from arguing the effectiveness of Mains' rescission as pointed out supra as well as they sat on any defenses they may have had past the statutorily defined 20 day period to respond under TILA. The U.S Supreme Court made clear in *Jesinoski*, ***Mains rescission was effective by law when mailed***, ***it is not conditionally effective, nor does it require a court or anyone else's approval***, ***it simply is effective.*** Mains and the court can arrange for the payment of his judgment under TILA, *the same as he could do through his right of pre-sale redemption in Indiana*, once the ***current*** proper payee is confirmed. By the same token, the current creditors failure to respond also necessitates order of events under TILA be followed, which the court, Mains, and his current creditor can hash out.

Mains claims in relation to TILA violations that occurred prior to his rescission follow the same fact pattern as his RESPA claims described supra. Mains was not provided requested discovery disclosures and documents regarding his loan transaction in state court. Mains later found copies of loan detail statements regarding his loan that were provided to investors by Citibank, as Trustee for the WAMU HE-2 Trust. These documents directly contradict the Chase servicing statements as to a.) the balances of Mains' loan, b.) that his loan is not in default status with the WAMU HE-2 Trust. TILA provides, as does RESPA and the FDCPA, independent recourse for violations under the code. Mains, as stated, was not aware of the violations and the claims he held as the documents provided by Chase were assumed to be accurate. Mains disputed

chain of title and holder status of his loan had been proven in state court, he did not dispute nor could he have been aware that the loan statements provided by Chase were in fact knowingly inaccurate and did not provide required reporting information as to his loan, a TILA violation and source of independent claims by him.

Given this, Mains has stated in his FAC at paragraph 131 in part, "The Defendants Chase and Citibank, N.A and the WAMU HE-2 further damaged Mains by: c.) Under 12 CFR 1026.36(c)(3), **for giving Mains and his attorney false information regarding payoff on Mains' loan** … **did not reflect accurate pay off information as all credits and debits to Mains' loan were not accounted for** ... **and as noted above the payments were mishandled**. d.) Under 12 CFR 1026.41, for providing periodic statements which contained false information from Chase Bank ... **and which failed in all respects to provide accurate information regarding the true status of Mains' loan, which Chase Bank knew to be false, as well as Defendants Citibank N.A as trustee for the WAMU HE-2 Trust."**

**Mains is free to disagree that Chase is the servicer of his loan, as GASH points out, as long as the complaint he makes is independent of the state court judgment, and he is not interfering with it. Mains payoff quote used in his judgment shows inaccuracies, <u>his payoff quote on his monthly statements as provided to him by Chase  in the last year show inaccuracies,</u> and Mains is free, much as his RESPA claim, to seek relief under TILA for inaccurate reporting and data provided, so long as he is not contesting the judgment itself.** His TILA claims in his FAC meet both bars as discussed supra.  Equitable tolling and equitable estoppel are also appropriate when claims were not possible to have been brought and when information has been actively withheld, which is the case here as well, but quite frankly not

needed as Mains meets the time bar. In conclusion then, Mains TILA claims meet the bar and further discovery and an accurate accounting are appropriate.

**Count Four, Intentional Infliction of Emotional Distress-Count Five-Negligent Misrepresentation-Count Seven Negligence- Count Ten Conversion-**

Mains will address the SOL as to all his common law claims aggregately. Mains notes once again, that the basis of his claim relates to the illegal and fraudulent conduct of Defendants, including Chase and Citibank, and their 3rd party agents. Mains current FDCPA claims post his state court action allows for emotional distress claims, and therefore meets the time bar. Mains was not aware of the fraud and forgery that are the basis of his claims as to negligent misrepresentation, negligence, and conversion, nor of Chase and Citibank's use of 3rd party LPS to create a forged assignment, retain legal counsel, and conversion until recently. Proceeding with a foreclosure action is not the basis of Mains' claims as continually asserted by Defendants. It was the fraud and deception used by Defendants that are his basis, regardless of any rights they may have held to pursue the action. **"The ends justify the means" is not an axiom used in American jurisprudence.**

Defendants' active concealment of this activity, and the parties, precluded the possibility Mains would have known to file them. Mains only raised chain of title issues in relation to his loan and was lead to believe the documents provided and attested to in court by Defendants were valid, precluding his knowledge they were in fact forged, which he also would have known if LPS were disclosed as was required under rule 26, and as all three entities, Chase, Citibank, and LPS were under consent judgments to proceed lawfully in foreclosure matters. Mains also points out Defendants unclean hands in trying to raise protection of SOL due to matters they hid so the SOL would run.

Citibank and Chase's reprehensible conduct over the entire course of their contacts with Mains, pre-litigation, during litigation, post litigation has been covered by Mains ad nauseum. Mains has documented this conduct meets equitable tolling and equitable estoppel requirements and a SOL bar should not apply.

**Count Eight-FDCPA -** Mains already covered the basis for his FDCPA claims adequately in paragraphs 180-197 of his FAC, and why equitable tolling and equitable estoppel should apply to his claims that occurred prior to this action. The new and independent FDCPA violation of Chase and Citibank in threatening to proceed with a sheriff's sale post his rescission, TRO, when Citibank's indicated to the court and Mains that they had pulled the sale to get the TRO dismissed, is within the one year time limit.

Finally, it is apparent Chase and Citibank will never agree on the meaning of extraordinary circumstances or conduct, but regardless SOL does not apply under the circumstances.

## VI. Rule 12(b)(6) For Failure to State Any Plausible Claims Against Citibank and Chase Fails.

**Count One RESPA-** Mains already fully covered his RESPA claims supra, including violations and facts backing them and also in his FAC.  Mains' claim should not be dismissed.

### Count Four- Negligent and/or Intentional Infliction of Emotional Distress

Mains has already noted that his FDCPA claims allow for emotional distress damage claims. The Defendants would have the court decide as a matter of law, as opposed to a jury, that their 6 year campaign of oppression against Mains, his now ex-wife, and their then 3 year old son based upon knowing fraud and concealment was not extreme and outrageous. That no reasonable person could foresee that their malicious and intentional conduct aimed against one of the most sacred rights Americans expect, to be secure in their homes, family life, and possessions, could lead to the destruction of a marriage, loss of consortium, loss of a family life, mental distress,

hospitalization due to stress and high blood pressure. That intentionally pursuing such conduct even after having been investigated, paying billions of dollars in fines, and signing multiple consent judgments to stop such conduct is not extreme and outrageous. That despite knowing the national impact a foreclosure crisis caused by greed and excess was having on Americans, from loss of homes, jobs, lives through drug abuse and suicide brought on by stress, a decision was knowingly made that "the ends justify the means" when proceeding however illegally among multiple parties involved in Mains' case. Mains believes he well laid out his case as to count four in his FAC already as follows from paragraphs 136-142:

"The above conduct was negligent or intentional on the part of defendants, or their agents or representative for which they are responsible; That the Mains suffered severe emotional distress which ultimately led to their divorce, and the hospitalization of Mains for high blood pressure brought on by stress; That Mains distress caused loss of time at his job to deal with depression, anxiety which affected his job and family life; That defendants' conduct was a substantial factor in causing the Mains severe emotional distress; It is believed that the activity and conduct alleged throughout this complaint is the deliberate attempt by Defendants to destroy the credit or interfere with their property ownership including their peaceful enjoyment thereof and is actionable; Such conduct is oppressive, fraudulent and malicious and justified punitive damages." Mains disagrees with Defendants assessment of his count four and his claim should not be dismissed.

**Count Five – Negligent Misrepresentation-** Mains has already adequately covered why negligent misrepresentation is allowed in his response briefs to N&F and Bose's MTDs, but will briefly recap here. Like in the *Slorp* case, Mains relied detrimentally on the fact that documents presented by the Defendants in his court action were valid **when they were in fact forged.** He

challenged their right to enforce these documents under chain of title theory, **not** because they were forged **as this fact was hidden from him.** The Indiana Supreme Court has made clear, negligent misrepresentation has application outside employer employee relationships, and spelled out circumstances that include Mains present case.[7] Chase and Citibank's attorneys committed violations by knowingly submitting forged documents to Mains and the court, knowing that Mains business relationship with his lawyers who he employed at great expense, would be guided by these documents. Mains wasted years and thousands of dollars with his attorneys under the wrong theories of defense in his case due to this. Plaintiff points out the importance the court puts on the integrity of the land title chain in his footnoted case below. It goes without saying the importance of borrowers to be able to rely on those who are tasked with having accurately reviewed or participated in said chain, and that the consequences of a clouded title chain extend far beyond pure economic loss to effecting a borrowers quiet enjoyment of his home, his emotional well-being, indeed the very stable existence of family. Plaintiff and his counsel requested accurate information of any holders claimed interest in his property, and how this information was derived in discovery. Chase and Citibank through their counsel were

---

[7] ***U.S. Bank, N.A. v Integrity Land Title Corp***., 929 NE2d 742, 745-46 (Ind., 2010). **However, we cautioned that the economic loss rule admits of certain exceptions for purely commercial loss in several special circumstances. Indiana courts should recognize that the rule is a general rule and be open to appropriate exceptions, such as (for purposes of illustration only) <u>lawyer malpractice.</u>** breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, *<u>and negligent misstatement."</u>*
Regarding whether contracts preclude a court action, the Court further points out,
*Moreover...the existence or non-existence of a contract is not the dispositive factor for determining whether a tort action is allowable where special circumstances and overriding public policies have carved out exceptions for tort liability...[W]e find the reasoning of Justice Matthews of the Alaska Supreme Court in Bank of California persuasive: 'We agree with the authorities which hold that there may be tort liability for misrepresentations made in preliminary commitments for title insurance. <u>In our view, such commitments provide an essential service to prospective buyers and lenders</u>.* They are told what transactions must take place before they can receive clear title or an effective security. In reaching this conclusion, the court stressed that 'preliminary title reports are normally relied on by insureds, escrow agents, and lenders with full knowledge, and sometimes with the encouragement, of the insurance company.' Title searches are frequently required in situations involving transactions in which the state of the title must be known accurately or the customer will foreseeably suffer harm that is both certain and direct. Id. at 748-49. (Citations omitted) (Emphasis added).

obligated to Mains, and the court, to provide accurate information and knowingly supplied falsified and inaccurate information damaging Mains by committing fraud upon the court. For the reasons stated above, Mains negligent misrepresentation claims should not be dismissed.

**Count Six – Fraud-** Defendants objections to Mains' fraud claims fail for the same reasons as cited supra. Mains did rely on representations made and forged documents promoted by Defendants in constructing his defense.  Mains defense was based on enforcement due to chain of title, not fraud and forgery he was unaware of due to active concealment of Defendants. It is Chase and Citibank's methods used and fraud promoted that are at issue, not holding a note or servicing a loan.

**Count Seven – Negligence-** Mains has already fully discussed the duty of care Citibank and Chase were under in this brief, his other response and sur-reply briefs/memorandums, and his FAC. The Defendants had already signed a consent judgment under the NMS, recognizing they had a duty to homeowners to properly and legally service loans, compensate them if they were injured by their unlawful conduct, and not further breach mortgage servicing standards going forward. The breached this duty to Mains, their conduct was reckless and knowing, and they damaged Mains. Plaintiffs negligence claims should not be dismissed.

**Count Nine- RICO-** Mains has already covered his RICO claim points adequately in this brief and his other MTD's response and sur-reply briefs/memorandums which he has incorporated by reference, and his FAC. He need not further address the claim here, he has plainly covered the 4 required elements. Chase and Citibank ironically make many of the same arguments made in *Slorp* that were dismissed by that court, including that it was "his non-payment of a loan that caused his damages." That holder status and standing is the issue at heart as opposed to fraudulent means to obtain judgments. Defendants pattern of activity is discussed by Mains, and

in fact the thousands of cases of fraudulent conduct confirming this pattern of activity are further re-enforced by the multiple consent judgments documenting Chase and Citibank were forced to sign, including the NMS.

**Count Ten – Conversion-** Mains' conversion claim does not interfere with his state court judgment, and is not predicated on the WAMU HE-2's holder status of his loan. The state court ruled that the <u>WAMU HE-2 Trust</u> was the holder of Mains' Note and Mortgage, and had the right to foreclose on his security interest. The court issued a money judgment based on <u>Chase banks accounting for his loan.</u> The state court did *not* however rule that the money Mains paid and received by Chase Bank in 2008-2009 was done with a legal right to do so.  In fact, by definition the loan payments Mains made are not part of the money judgment owed to the WAMU HE-2 Trust and therefore do not affect it. This is aside from the issue of the forged note Chase was using as evidence it had the right to service and receive and handle Mains' payments. Due to Mains' discovery of the loan detail statement from Citibank and the WAMU HE-2 Trust showing different loan balances, and his loan not in default, **Mains cannot even be sure he received proper credit for his payments, or when and how they were forwarded to the WAMU HE-2 Trust by Chase.** This is also why Mains has again requested a proper accounting for his loan. To put it in a nutshell, **"A money judgment and right to foreclose by one party, does not make a legal right to accept and handle prior loan payments to another party make."** This being the case, Mains' conversion claim should not be dismissed.

## VII. RULE 8 & 9 CLAIMS

Mains has already addressed the rule 8 & 9 claims in prior responses to N&F, Bose, and Black Knight's MTD's which are incorporated by reference, and need not address them again here.

## CONCLUSION

Defendants' Motions to Dismiss should be DENIED in their entirety and Plaintiff's Claims/Counts should be preserved for the reasons cited supra and because factual issues remain for the trier of fact.

Respectfully submitted.

/S/ Jon M. Schulte
Jon M. Schulte
Attorney for Plaintiff
Smith, Carpenter, Fondrisi
& Cummins, LLC
209 E. Chestnut Street, P.O. Box 98
Jeffersonville, IN  47131
(812) 282-7736

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

Amanda Warford Edge    aedge@wyattfirm.com, amanda.warford.edge@gmail.com, mweibel@wyattfirm.com

Derek R. Molter    derek.molter@icemiller.com, bunn@icemiller.com

Fred O. Goldberg    fgoldberg@bergersingerman.com, mferguson@bergersingerman.com

Jonathan M. Weiss    jonathan.weiss@kirkland.com, ashley.neglia@kirkland.com, laura.bay@kirkland.com

Jordan S Huttenlocker    jhuttenlocker@dykema.com, jordan.hutten@gmail.com, lholbert@dykema.com

Kathleen L. Matsoukas    kmatsoukas@btlaw.com

Kyle W LeClere    kleclere@btlaw.com, irene.kukla@btlaw.com

Louis S Chronowski , Jr    lchronowski@dykema.com, docketch@dykema.com, srichard@dykema.com

Michael A. Dorelli    mdorelli@hooverhullturner.com, rmiller@hooverhullturner.com

Nathan T. Danielson    ndanielson@boselaw.com, mwakefield@boselaw.com, rmurphy@boselaw.com

Patrick A. Ziepolt    pziepolt@hooverhullturner.com, gsmith@hooverhullturner.com, patrick.ziepolt@gmail.com

Thomas Eugene Mixdorf    thomas.mixdorf@icemiller.com, carla.persons@icemiller.com

Vilda Samuel Laurin , III    slaurin@boselaw.com, cosman@boselaw.com


/s/ Jon M. Schulte_____
Jon M. Schulte