UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ERIC P. MAINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:15-cv-00036-SEB-WGH |
| | ) | |
| CITIBANK, N.A. As Trustee for the | ) | |
| WAMU-HE2 Trust, | ) | |
| CHASE BANK, N.A., | ) | |
| CYNTHIA RILEY, | ) | |
| NELSON & FRANKENBERGER, P.C., | ) | |
| BLACK KNIGHT FINANCIAL | ) | |
| SERVICES, LLC formerly doing business | ) | |
| as LENDER PROCESSING SERVICES, | ) | |
| BOSE MCKINNEY & EVANS, LLP, | ) | |
| JOHN  DOES (Unknown), | ) | |
| WYATT, TARRANT & COMBS LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS TO DISMISS**

This matter comes before the court on the following motions to dismiss:

·    Docket Number ("Dkt. No.") 29 – Defendant Black Knight Financial Services, LLC ("Black Knight")

·    Dkt. No. 38 – Defendant Bose McKinney & Evans, LLP ("Bose McKinney")

·    Dkt. No. 41 – Nelson & Frankenberger, P.C. ("N&F")[1]

·    Dkt. No. 86 – Wyatt, Tarrant & Combs LLP ("Wyatt")[2]

---

[1] N&F incorporate the arguments of Black Knight in its Motion to Dismiss and Plaintiff does the same by incorporating his response.  [*See* Dkt. Nos. 42, 45, 71.]

[2] Wyatt incorporates the arguments of Black Knight in its Motion to Dismiss and Plaintiff does the same by incorporating his response.  [*See* Dkt. Nos. 87, 104, 111.]

· Dkt. No. 102 – Chase Bank, N.A. ("Chase") and Citibank, N.A. ("Citibank")[3]

Collectively, Black Knight, Bose McKinney, N&F, Wyatt, Chase, and Citibank are referred to herein as "Defendants".  Bose McKinney, N&F, Wyatt, and Citibank joined in Black Knight's Motion to Dismiss and Memoranda in support thereto, and shall be referred to as the "Joinder Defendants."  The motions have been fully briefed.  For the following reasons, we GRANT Defendants' Motions to Dismiss.  [Docket No. 29, 38, 41, 86, 102.]

## Background and Facts

Despite the hundreds of pages dedicated to seeking dismissal of the 90 page, ten count amended complaint with its accompanying 100 pages of exhibits brought against nine named defendants and an unknown number of "John Does", this case is a simple, straightforward foreclosure action based on a $200,000 mortgage and note secured by Plaintiff's home in Clark County, Indiana.  This litigation has proceeded through an Indiana trial court, the Indiana Court of Appeals, the Indiana Supreme Court, and now has found its way onto our docket.  It is more than time to bring some finality to these issues and claims.

---

[3] Chase and Citibank make many of the same arguments contained in Black Knight's motion to dismiss, but include a more detailed analysis of the application of the *Rooker-Feldman* doctrine.  [Dkt. No. 103, 114, 120.]

According to the First Amended Complaint, Docket Number 23 ("FAC"),[4] on December 19, 2006, with the help of a loan officer for First Meridian Mortgage ("FMM"), Plaintiff Eric Mains[5] executed a promissory note and mortgage in favor of Washington Mutual Bank ("WAMU") as the lender thereby encumbering as collateral his primary residence, 2635 Darien Drive, Jeffersonville, Indiana.   [FAC ¶ 20.]   Two years later WAMU failed as a banking institution, on September 25, 2008, and the FDIC became the receiver.   [*Id.* ¶ 35.]   Chase purchased and was assigned WAMU's loans and loan commitments, including Mains's mortgage and note.   Black Knight, whom Mains alleges to have been an undisclosed agent for Chase, provided Chase with computer software and forms, contracted on behalf of Chase, and directed the debt collection attempts of law firms hired by Chase, in this instance, N&F and Bose McKinney.   [*Id.* ¶ 184.]   In May of 2009, Mains received correspondence sent by Chase indicating that it had become the servicer of his loan.   [*Id.* ¶ 38.]   Chase later assigned Mains's mortgage and note to Citibank.   *Mains v. Citibank, NA*, 18 N.E.3d 319, at *2 (Ind. Ct. App. 2014).

---

[4] We note that Plaintiff's Memoranda as well as the FAC contain multiple unfounded, inflammatory, and/or exaggerated arguments and conclusions.  For example, Plaintiff argues that "[b]y Citibank and Chase's definition, it would be perfectly fine to shoot Mains to claim his home if they had a secured interest in it, but since none of the large banks seem to particularly care that people have indeed committed suicide due to the stress of illegal foreclosure tactics (See footnote 3), this may not be too far a stretch."  [Dkt. No. 114 at 12.]  Such rhetoric has no place in court filings.

[5] Ann V. Mains also signed the promissory note and was a party to the state court foreclosure action.  She is not a party in this case and thus, we shall reference, as Plaintiff does, Eric P. Mains only.  *See Mains v. Citibank, N.A.*, 18 N.E.3d 319 (Ind. Ct. App. 2014).

Mains alleges that on three separate occasions he attempted to request a loan modification, but was told each time that his request was "incomplete" or "lost." [FAC ¶ 36.] Because Mains failed to make a mortgage payment for 90 days, an "acceleration notice" was generated by Chase notifying Mains that his loan payments had increased. Mains notes that despite his lack of payment, his loan statements inexplicably reflected an overall decrease in his loan balance. [*Id.* ¶¶ 39-40.] In 2009, Mains received a notice of default issued by Chase's attorney, N&F. [*Id.* ¶ 41.] On April 20, 2010, Citibank filed a mortgage foreclosure action against Eric and Anna Mains in the Clark Circuit Court ("State Court"), cause number 10C01-1004-MF-000248 ("State Foreclosure Action" or "State Court Judgment"). [*Id.*]

After a failed pre-foreclosure settlement conference in the State Foreclosure Action, Citibank filed a motion for summary judgment on August 30, 2010, which it later withdrew on November 1, 2010 because, as alleged in the FAC, Citibank was under investigation for its alleged improper foreclosure practices. [FAC ¶¶ 45, 47.] Mains avers that Citibank agreed to consent orders which deferred foreclosure actions between 2009 to 2010 to allow time to identify any procedural defects and/or insufficiencies in the documentation. [*Id.* ¶ 48.] Citibank re-filed its motion for summary judgment on February 11, 2013, and Mains responded on March 11, 2013. [*Id.* ¶¶ 50, 51.] Following oral argument on April 30, 2013, the State Court granted summary judgment in favor of Citibank on May 3, 2013. [*Id.* ¶ 52.] Mains's motion to correct errors was denied on August 8, 2013, after briefing and another hearing. [*Id.* ¶ 53.]

4

Mains filed an appeal of the trial court's foreclosure decision with the Indiana Court of Appeals on September 12, 2013, contending, inter alia, that Citibank was not the proper party to foreclose the loan and that the equitable doctrine of "unclean hands" should have precluded the foreclosure.   [Dkt. No. 103-3 at 21.]   Mains argued that Defendants "instructed employees to fraudulently sign documents to prove ownership" and that Citibank committed fraud by attending a pre-foreclosure settlement conference when it was not the real party in interest.   [Dkt. No. 103-3 (Mains's Appellant Brief to the Indiana Court of Appeals) at 42; FAC ¶ 54 (stating that he "brought up" on appeal Citibank's HDC (holder in due course) status); Dkt. No. 30-1 (Mains's June 17, 2010 Answer to Citibank's State Foreclosure Action) at Affirmative Defense No. 1 ("The Plaintiff [Citibank] may not be the real party in interest, the true owner of the obligation, and may have failed to name necessary parties that are entitled to enforce the terms and obligations of the Note and Mortgage).][6]   Rejecting Mains's arguments, the Indiana Court of Appeals affirmed the trial court's order, ruling that Citibank was entitled to enforce the note and mortgage and that "[t]he trial court correctly concluded as a matter of law that Citibank was entitled to summary judgment."   *Mains*, 18 N.E.3d at *3.   On October 4, 2014, Mains sought to

---

[6] Defendant "Bose's sole role in connection with the State Court Ligation [sic] was as appellate counsel for Mains's opponent in the Indiana Court of Appeals."   [Dkt. No. 39 at 9 (citing FAC ¶ 83; State Court Judgment; Court of Appeals Opinion).]   Indeed, Mains's response to Bose McKinney's Motion to Dismiss points to his allegations against other defendants, but does not specifically address Bose McKinney.   [*See* Dkt. No. 61 at 5-7 (explaining his fraud allegations against Black Knight and N&F and the reason that those claims were not brought in the State Litigation).]

transfer to the Indiana Supreme Court, which was denied on January 22, 2015 ("State Court Judgment").  [FAC ¶¶ 55-56.]

Mains alleges in the action before us that while reviewing loan documents in December 2014, he discovered "incontrovertible evidence of fraud and forgery, and possibl[e] backdating" knowingly withheld from the State Court by Defendants.  [FAC ¶ 61.]  He recounts an example involving his having signed his note and mortgage on December 19, 2006, which documents were endorsed by Defendant Cynthia Riley on behalf of WAMU.  However, according to Ms. Riley's 2013 deposition in another case, Ms. Riley's employment with WAMU had been terminated in November 2006, so she was not employed with WAMU or Chase between November 2006 and the time of her deposition.  [*Id.* ¶¶ 62-64.]  Mains concludes from this that the means by which his note was transferred and assigned contained errors and evinced fraud.  [*Id.* ¶¶ 65-77.]  It is his position that the January 5, 2007 assignment by WAMU via a "Deed of Trust" was also defective.  [*Id.* ¶ 65.]  Mains further claims that the assignment of his note from Chase to the WAMU HE-2 Trust (i.e., Citibank) on June 14, 2010 was "fraudulent" on the grounds that it was robo-signed by a processing party, and not the lender.   [*Id.* ¶¶ 66-67.]  Consequently, Mains insists that his mortgage was legally flawed/deficient and thus could not be foreclosed.

Mains asserts in this case various claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), violations of the Truth In Lending Act ("TILA"), violations of Indiana Code § 32-30-10.5 (Indiana Foreclosure Prevention Agreements for Residential Mortgages), Negligent and/or Intentional Infliction of Emotional Distress, Negligent

6

Misrepresentation, Common Law Fraud, Negligence, violations of the Fair Debt Collection Practices Act ("FDCPA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO") violations.  Defendants move to dismiss Mains's FAC on the grounds that his claims seek to undo the State Court Judgment and thus are barred by the *Rooker-Feldman* doctrine.

## Analysis

## I.    **Subject Matter Jurisdiction – The *Rooker-Feldman* Doctrine**

At the core of Mains's FAC are his allegations that Defendants:  (1) improperly transferred and assigned the note, (2) were not the real parties in interest in seeking to foreclose the mortgage, and (3) committed fraud on Mains and the State Court in their efforts to foreclose the mortgage and note.  A thorough review of the FAC and the parties' arguments convinces us that we lack jurisdiction to adjudicate Mains's claims because they seek an adjudication in this court that would, if granted, substantively nullify the State Court Judgment.

### A.    **The *Rooker-Feldman Doctrine*.**

The *Rooker-Feldman* doctrine, named after the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*[7] and *District of Columbia Court of Appeals v. Feldman,*[8] provides that the federal district courts must decline to entertain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the

---

[7] 263 U.S. 413 (1923).

[8] 460 U.S. 462 (1983).

7

district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *Kelley v. Med-1 Solutions LLC*, 548 F.3d 600, 603 (7th Cir. 2008). The doctrine stems from the Supreme Court's exclusive jurisdiction over appeals from state high-court judgments, *see* 28 U.S.C. § 1257; it thus requires district courts to steer away from cases in which a plaintiff's claimed injury directly results from, or is "inextricably intertwined" with, a state court judgment. *See Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996). Even if it concludes that a decision by the state court was clearly misguided or unconstitutional, a district court must decline to exercise jurisdiction in a case where it is unable to "rule in [the] plaintiffs' favor without holding that the state court erred." *Bullock v. Credit Bureau of Greater Indianapolis, Inc*., 272 F. Supp. 2d 780, 783 (S.D. Ind. 2003).

Federal district courts must decline to exercise jurisdiction over federal claims "not raised in state court or [that] do not on their face require review of a state court's decision" but are nonetheless "inextricably intertwined" with the state court judgment. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *Epps v. Creditnet, Inc.,* 320 F.3d 756, 759 (7th Cir. 2003). Although the term "inextricably intertwined" is a "somewhat metaphysical concept," whenever success in the federal forum would require the court to overturn a prior state court judgment, the subsequent federal litigation is deemed to be "inextricably intertwined" with the state court's ruling. *Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529, at 532-33 (7th Cir. 2004); *Kelley*, 548 F.3d at 603. Thus, in assessing the applicability of the *Rooker-Feldman* doctrine, the central inquiry is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent

claim." *Kamilewicz v. Bank of Boston Corp.,* 92 F.3d 506, 510 (7th Cir. 1996) (cited by *Kelley v. Med-1 Sols., LLC*, No. 1:07-cv-1245-SEB-JMS, 2008 WL 345986, at *3 (S.D. Ind. Feb. 6, 2008) *aff'd*, 548 F.3d 600 (7th Cir. 2008)).  State court eviction and foreclosure proceedings have frequently been held to trigger the *Rooker-Feldman* doctrine, even when federal claims are subsequently raised in federal court.  *Linner v. Wells Fargo Home Mortg., Inc.*, No. 3:08-cv-558-TS, 2009 WL 2591688, at *2 (Aug. 20, 2009) (collecting cases) (cited by *Davis v. Countrywide Home Loans, Inc.*, No. 1:10-CV-1303-JMS-DML, 2011 WL 837048, at *2 (S.D. Ind. Mar. 4, 2011)).[9]

"If the *Rooker–Feldman* doctrine applies, the Court must dismiss the suit for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), *Frederiksen v. City of Lockport,* 384 F.3d 437, 439 (7th Cir. 2004), without considering any other defenses, *Taylor v. Fannie Mae,* 374 F.3d 529, 535 (7th Cir. 2004)."  *Davis*, 2011 WL 837048, at *2.  In short, the doctrine prevents a party from effectively trying to appeal a state court decision to a federal district court.  *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 431 (7th Cir. 2009); *Davis*, 2011 WL 837048, at *2.

---

[9] Although Mains's federal litigation includes defendants who were not parties to the State Court Foreclosure Action, the *Rooker-Feldman* doctrine may nonetheless apply.  *Russo v. GMAC Mortg., LLC*, 549 Fed. App'x. 8, 10 (2d Cir. 2013) ("It does not matter [to *Rooker-Feldman* applicability] that the plaintiff added parties to the federal action who were not parties to the state action.") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Joseph v. Cohen*, 66 Fed. App'x 278, 280 (2d Cir. 2003) (rejecting plaintiff's argument that her federal action was distinct from her state action because the federal action included additional defendants and alleged additional improper actions); *Roberts v. Perez*, No. 13-cv-5612 (JMF), 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014) (holding that naming additional plaintiffs "is not enough to get around the *Rooker-Feldman* bar").

### B.     Plaintiff's Claims Generally.

Black Knight and the Joinder Defendants argue that the factual basis underlying Plaintiff's claims is set out in Paragraphs 32 and 34 of the FAC.  Mains alleges that his note and mortgage were not timely transferred into the WAMU HE-2 Trust, for which Citibank was the trustee, and the foreclosure judgment against him was based upon defective or missing documents (¶ 32); that it is "possible" that collateral payments from other sources may not have been credited to his loan (¶ 34A); that the Trust did not properly acquire his loan (¶ 34B); that the transfer of his loan to the Trust was in violation of the Pooling and Servicing Agreement and that documents relating to the transfer were flawed (¶ 34C); and that Citibank as Trustee is not the holder of his note (¶ 34D).  [Dkt. No. 30 at 5.]  As Defendants view it, Mains asserts that "the plaintiff in his foreclosure was not the real party in interest and lacked standing to foreclose.  All of these issues were or could have been raised during the foreclosure proceeding and Plaintiff concedes that they were raised both before the trial court and on appeal."  [*Id.* (citing FAC ¶ 51 (listing issues raised before the Clark County Circuit Court), ¶¶ 54-55 (listing questions posed by Mains to the Indiana Supreme Court)).]

A comparison of Mains's request for relief in the case before us to the issues decided in the State Court Foreclosure Action leads us to the conclusion that Mains's claims are barred by the *Rooker-Feldman* doctrine.  Mains seeks the following specific relief in this case:

> 230. In Summary, PLAINTIFF prays for judgment as follows for the aforementioned causes of actions, counts, etc. as may be appropriate. Specifically,

a.) For rescission [of his mortgage];

b.) For special damages according to proof at trial;

c.) For compensatory damages according to proof at trial, including pain, suffering, and mental anguish; and the value of their investment had it been invested in a well-managed portfolio;

d.) For equitable remedies including disgorgement and recoupment of unjust enrichment;

e.) For injunctive relief [to prevent Defendants' from collecting against Mains and his property];

f.) For punitive damages;

g.) That damages be doubled or trebled as allowed by law;

h.) For lost principal and the losses therefrom;

i.) For costs, disbursements, and attorney's fees;

j.) Demand for Jury Trial; and

k.) For such other, further, and different relief as the Court deems just and equitable including interest at the legal rate.

[FAC ¶ 230, 226.]   The FAC also incorporates allegations relating to the State Court Foreclosure Action and Mains's state appeals.  Specifically, Mains's questions posed by his motion to transfer to the Indiana Supreme Court were as follows:

51. On March 11, 2013 Mains filed his Response to Citibank's Motion for Summary Judgment. In his response, Mains raised a number of issues which he argued precluded summary judgment for Plaintiff Citibank. These issues included: 1.) Plaintiff[']s failure to prove standing to enforce his note as the proper party in interest, 2.) Failure to provide proper evidence of mortgage assignment and chain of title, 3.) Failure to provide a listing that Mains' loan was part of the WAMU HE-2 Trust 4.) Claiming to have transferred Mains' loan into the Trust *years* after the Trust's closing date in contravention of the Trust PSA and IRS REMIC rules which would void the Trust for trying to transfer non-conforming loans into the Trust more than 90 days after the close date, 5.) Failure to cite a specific event or date of default as to his mortgage note, 6.) Failure to specify evidence of amounts due or damages to

Plaintiff under his note, or evidence of interest rates applied or payments applied on his note, other than through a loan detail statement from Chase Bank's servicing records (not, conspicuously, the WAMU HE-2 Trust accounting records, who was the party supposedly claiming it was damaged via the Trustee Citibank in Mains' case).

. . .

55. On October 4, 2014 Mains filed a motion to transfer his case to the Indiana Supreme Court based on 4 questions.

a. **Question #1**-Did the court violate Mains' constitutional rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution through the state court's action to deprive him of title to and possession and enjoyment of real property by enforcing a judicial foreclosure against his economic interests based solely on a recorded mortgage and attempted mortgage assignments without first also requiring that the claimed mortgagee prove valid chain of title, holder, and holder in due course status to be able to enforce the note and mortgage as is required by the Uniform Commercial Code ("UCC"), and in order for court to have subject matter jurisdiction?

b. **Question #2**-Did the court commit reversible error and violate Mains' constitutional rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution through the state court's action to enforce appellants money judgment claim without first requiring evidence of actual monetary damage suffered by the claimant and the validity and accuracy of amounts claimed owed?

c. **Question #3**-Did the court commit reversible error and violate Mains' constitutional rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution through the state court's action to deprive him of title to and possession and enjoyment of real property by enforcing a judicial foreclosure against his economic interests when basing their judgment in whole or in part upon hearsay evidence which was required to be excluded from their consideration under Indiana state statute and Indiana case law?

d. **Question #4**-Were Mains' constitutional rights under the Equal Protection Clauses of the Fourteenth Amendments to the United States Constitution violated as a result of a pattern practice in Indiana courts that treats homeowners in mortgage foreclosure actions differently as a class than it treats other litigants through the disparate application of the UCC

in mortgage foreclosure actions, and a disparate application of the rules of evidence in mortgage foreclosure actions?

[FAC ¶¶ 51, 55.]

Mains unequivocally seeks in this action to have this court undo the State Court Judgment, a request which is expressly barred by *Rooker-Feldman*.  In fact, the Seventh Circuit previously considered a case very similar to Plaintiff's.  *Taylor*, 374 F.3d at 533. In *Taylor*, the plaintiff claimed that the defendant perpetrated a fraud on the state court which granted a judgment of foreclosure on her home.  *Id.*  To compensate her for this alleged fraud, the plaintiff sought "to recover her home, or equal monetary value plus interest of 10% per annum, plus punitive damages."  *Id.*  The Seventh Circuit held that "[t]he district court correctly determined that requesting the recovery of her home is tantamount to a request to vacate the state court's judgment of foreclosure, the form in which [plaintiff's] complaint in state court was in fact styled, and that the *Rooker-Feldman* doctrine barred granting that relief."  *Id.* (citation omitted).  Similarly, Plaintiff requests here that we rescind his mortgage.  Our conclusion mirrors the ruling in *Taylor*:  the *Rooker-Feldman* doctrine divests us of jurisdiction over Mains's claims.

Mains attempts to breathe life into his claims by complaining that Defendants have failed to "address the multiple 'elephants in the room,' which include:  submitting forged and fraudulent documents in state court to procure a judgment against Mains, knowingly failing to properly disclose requested parties in discovery and during trial, and doing so despite signing a National Mortgage Settlement ("NMS") prohibiting this conduct."  [Dkt. No. 114 at 2, 12 (arguing that Defendants should not be allowed to pursue allegedly legal

rights by committing an illegal act such as forgery, fraud, or misrepresentation).]  Mains contends that he "relied upon the validity of the fictitious documents in evaluating his claims and defenses in 2012 when the summary judgment process was instituted against him, and through the appeals process."  [FAC ¶ 108.]  Whether the Defendants used fraudulent documents or failed to disclose pertinent information to the State Court are questions relating to the merits of Mains's claims.  Before delving into any of the issues raised by Mains, we must address and resolve the applicability of the *Rooker-Feldman* doctrine because without jurisdiction, we cannot move forward on the merits of Plaintiff's claims, even if the State Court got it wrong.  *Garry*, 82 F.3d at 1365.

The *Rooker-Feldman* doctrine is to be applied on a claim-by-claim basis.  It is possible for a plaintiff to assert claims that would be barred by the *Rooker-Feldman* doctrine, while also alleging claims that would not implicate its bar.  The Defendants, with the exception of Citibank, as well as Mains, have approached this jurisdictional question using broad strokes, describing Mains's entire complaint as being barred, without diving deep into each individual claim.  Despite our conclusion that we must decline jurisdiction, we shall nonetheless analyze each claim independently to ensure that we have carefully considered all that Mains has alleged.

### C.  Real Estate Settlement Procedures Act Violations Claim (Count 1).

Mains asserts a claim for violations of the Real Estate Settlement Procedures Act ("RESPA").  RESPA is found at 12 U.S.C. § 2601-2617 and, in relevant part, provides that "[d]uring the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with

respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment."   12 U.S.C. § 2605(d).   Mains alleges that during the 60 day period following the change in the entity servicing his loan, Chase was prohibited from charging a late fee or treating any payments as late if they were timely received and that "it is unclear at this point as [to] what date(s) Mains' payments were received by Chase during the 60 day window and applied to his account."  [FAC ¶ 115.]

Mains does not seek to recover damages based on his alleged RESPA claims, but requests an accounting of all of his payments to determine whether his payments included any late fees.  [FAC ¶ 116 (alleging that his "loan cannot be said to be late as to payments, or late fee's [sic] charged until a proper accounting is ordered by the court").]  According to Mains, "his loan [was] NOT in default, or late, with the WAMU HE-2 Trust, [and thus] it is a mystery as to WHY any late fees show up in the foreclosure judgment at all."  [Dkt. No. 114 at 14.]   Mains also seeks an accounting, claiming that "[w]ithout a proper accounting, any claims made by any of the Defendants on any debt or security must be declared void and must not be allowed to proceed."  [FAC ¶ 227.]  Alleging a violation of RESPA, Mains contends that Citibank was prohibited from charging a late fee, which is a claim separate and independent from the State Court Judgment and not barred by the *Rooker-Feldman* doctrine.  [Dkt. No. 114 at 14.]  We disagree.

The State Court ruled that "the sum of $271,452.17 as of November 7, 2012" was due and payable to Citibank as Trustee of WAMU-HE2 Trust and ordered  the foreclosure

of Mains's mortgage, a sheriff's sale of the real estate, and entry of an *in personam* judgment against Mains for the remaining balance due, costs, and interest.  [Dkt. No. 30-2.]  If a violation of RESPA occurred, it would contradict or conflict with the State Court's award to Citibank, or, at a minimum, the State Court's determination in failing to conduct the accounting sought by Plaintiff was improper.

Our holding in *Bullock v. Credit Bureau of Greater Indianapolis* is applicable here.  In *Bullock*, the plaintiffs defaulted on their repayment of certain "payday loans".  272 F. Supp. 2d at 781.  The creditor had obtained a state court judgment in its favor.  *Id.*  Thereafter, debtors filed a Fair Debt Collection Practices Act claim in federal court alleging that that the creditor sought to collect on void loans.  *Id.* at 783.  In that case, we held:

> The problem is that plaintiffs' theory is that [Defendants] violated the federal law by seeking exactly what the state court awarded.  In other words, the state court determined that the amounts sought were in fact legally due.  The state court might have been right and it might have been wrong under Indiana law.  But this court could not rule in plaintiffs' favor without holding that the state court erred.  Again, that is what the *Rooker-Feldman* doctrine forbids.  When the *Rooker-Feldman* doctrine applies, "the federal courts lacks subject matter jurisdiction even if the state court judgment was erroneous or unconstitutional."

*Id.* at 780 (citations omitted).  As in *Bullock*, the problem with Mains's claims here are that in seeking a judgment that Defendants violated RESPA, he disputes precisely what the State Court awarded.  The State Court determined that the amounts sought by Citibank were legally due, late fees included, and entered judgment in Citibank's favor in the amount of $271,452.17, as of November 7, 2012.  We cannot rule in Mains's favor on his RESPA claim without holding that the State Court erred in its Judgment.  This is precisely what the

*Rooker-Feldman* doctrine forbids.  Thus, we lack jurisdiction to consider and resolve Mains's RESPA claim, and it shall be dismissed.

### D.     Truth in Lending Act ("TILA")/Regulation Z Claim (Count 2).

Mains also asserts that Defendants violated the Truth in Lending Act, 15 U.S.C. §§ 1631-1651 and Regulation Z, 12 C.F.R. § 226.  The relevant provision in the TILA provides that the obligor of a credit transaction secured by their principal dwelling "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . ."  [15 U.S.C. § 1635(a).]  "Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  [*Id.* § 1635(b).]  However, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  [*Id.* § 1635(f).]

Mains alleges that Defendants violated the requirements of TILA and Regulation Z in two ways:  First, that Defendants knowingly misrepresented payments due under the loan.  [FAC ¶ 122.]  He claims that Citibank was not the holder and servicer of the loan and yet still collected loan payments from Plaintiff, that Citibank gave him false information on the loan, mishandled payments, pressed forward with a foreclosure action, and refused to disclose information as to the real holder of the loan.  [*Id.* ¶¶ 124-25, 130-31.]  As explained in the next section of the order, these issues were decided by the State

Court.  We thus lack jurisdiction over a case that, if won by Plaintiff, would reverse the judgment in the State Court Foreclosure Action.

Second, Main alleges that on February 27, 2015 – *after* the Indiana Court of Appeals affirmed the State Court Foreclosure Judgment and *after* the Indiana Supreme Court denied transfer – he filed a TILA rescission to which no interested party responded within 20 days. [FAC ¶¶ 56, 123.][10]  Mains seeks to enforce his rescission rights through his FAC; it is his position that such rescissions are effective "when mailed, and no court action is required to make them effective."  [FAC ¶ 56.]  Because Defendants continued to take payments from him and pressed forward with the foreclosure of his mortgage absent the right to do so, Mains contends that he is entitled to "restitution, the refund of monies paid, the disgorgement of ill gotten [sic] monies, and enforcement of Mains' February 27, 2015 rescission," non-specific injunctive relief, and termination of the security interest in his property, among other things.  [*Id.* ¶¶ 124-25, 132; *see also* Dkt. No. 103 at 9 (citing FAC ¶¶ 124-25, 130-31) (Defendants' summary of Plaintiff's TILA claims).]

Following the foreclosure of his mortgage, which was finalized on January 21, 2015, which was the date the Supreme Court denied transfer of his appeal, Mains no longer possessed a mortgage to rescind.  As stated above, "The trial court granted Citibank's motion for summary judgment and entered an *in rem* judgment against the real estate and an *in personam* judgment against Mains for the remaining balance due, costs, and interest.

---

[10] Mains attached to his FAC a letter from Chase's lawyer dated March 23, 2015, twenty-four days after Mains's February 27, 2015 purported rescission of his mortgage and note.  [Dkt. No. 23-14.]

The trial court also entered an order for the foreclosure of the mortgage and for a sheriff's sale of the real estate." *Mains*, 18 N.E.3d 319, at *1 (Ind. Ct. App. 2014), *trans denied* (Jan. 21, 2015).  Mains's aim in pursuing his TILA claim is to reverse the State Court Judgment.[11]  Defendants insist that "Plaintiff would not have suffered any TILA damages but for Citibank and Chase's actions against him to enforce the loan."  [Dkt. No. 103 at 9.] According to Defendants, to grant the relief Mains requests based on his alleged TILA violations, this court would have to revisit and invalidate the State Court's Judgment, which is barred by the *Rooker-Feldman* doctrine.  We agree.

Therefore, pursuant to the *Rooker-Feldman* bar, which deprives us of jurisdiction to adjudicate Mains's TILA claim, it must be dismissed.

### E.     Violations of Indiana Foreclosure Prevention Agreements for Residential Mortgages (Ind. Code § 32-30-10.5) (Count Three).

Mains further alleges that because Chase and Citibank were not the proper holder and servicer of his loan, the pre-foreclosure settlement conference conducted on July 21, 2010 did not meet the requirements of Indiana Code § 32-30-10.5, the Indiana Foreclosure Prevention Agreements for Residential Mortgages.  [FAC ¶ 134.]  The Indiana Foreclosure Prevention Agreements Act seeks to avoid unnecessary residential property foreclosures. Ind. Code § 32-30-10.5-1.  Among other things, it requires that the creditor and debtor engage in a settlement conference and, if the parties are unable to reach an agreement on

---

[11] Mains's rejoinder to Defendants' motions to dismiss focuses exclusively on the law surrounding TILA rescission.  Plaintiff fails to acknowledge the critical timing of his alleged rescission, i.e., *after* the State Court Judgment, which finalized the previously-adjudicated matters related to his mortgage and foreclosed that mortgage.  [Dkt. No. 114 at 15-16.]

the terms of a foreclosure prevention agreement, only then can a court issue a judgment of foreclosure. *Id.* § 32-30-9. Mains alleges that Defendants' fraud prevented the required pre-foreclosure conference and, thus, the State Court Foreclosure Action was premature. [FAC ¶ 134.]

Defendants seek a dismissal of Mains's Indiana Foreclosure Prevention Agreements Act claim, citing the fact that "the Indiana Court of Appeals specifically recognized that 'the settlement conference Mains requested was conducted, but ended unsuccessfully.'" [Dkt. No. 103 at 9 (citing *Mains*, 18 N.E.2d at 319).] Despite the State Court ruling on this issue, Mains nonetheless alleges in the FAC that, at the time of the July 21, 2010 settlement conference, he had "asked the Chase Bank representative how Chase Bank claimed any authority to negotiate any proposed modification of his loan." [*Id.* at 9-10 (quoting FAC ¶¶ 45-46, 134).]

Mains rejoins that *Rooker-Feldman* does not prevent this court from considering this claim because he only "recently uncovered fraud." [FAC ¶ 134; *see also* Dkt. No. 43 (Mains's Resp. to Black Knight's Motion to Dismiss) at 2 ("Mains is asserting completely separate and distinct causes of action as against Black Knight in regard to the fraud that it committed and which was recently discovered by Mains."); Dkt. No. 114 (Mains's Resp. to Citibank's Motion to Dismiss) at 3, 9 (alleging Defendants used fictitious documents and knowingly withheld evidence from the State Court), 11.] Mains specifically describes his claims as "seeking redress against Black Knight because *they committed fraud by fabricating a document used in a legal action against Mains*." [Dkt. No. 43 at 4 (emphasis added).]

20

"Recently uncovered fraud" is not an exception to the *Rooker-Feldman* doctrine.  In fact, "the proper court for an assertion of fraud in the procurement of a judgment is the one which rendered the judgment." *Kamilewicz*, 92 F.3d at 511 (affirming the district court's dismissal based on the *Rooker-Feldman* doctrine); *Shaffer v. PNC Bank, Nat'l Ass'n*, No. 1:15-cv-0355-WTL-MJD, 2015 WL 5156025, *2 (S.D. Ind. Sept. 2, 2015) (quoting *Iqbal*, 780 F.3d at 730) (holding that the thrust of plaintiff's complaint was that defendant PNC could not enforce its note and mortgage, plaintiff alleged no extrajudicial injury, and because fraud does not permit a federal district court to set aside a state court's judgment, the court lacked jurisdiction to review the state court's actions).  Subject matter jurisdiction does not arise on the basis of recently-uncovered fraud in the procurement of a state court judgment so as to provide an exception to the *Rooker-Feldman* doctrine.

Both the Court of Appeals decision and Mains's FAC make clear that Mains has raised the issue in this litigation relating to Chase's authority to negotiate modifications of his loan and the ownership of the loan which were issues in the State Foreclosure Action that were resolved by the State Court.  [*Mains*, 18 N.E.2d at 319; FAC ¶¶ 45-46, 134.]  To find in favor of Mains on his claim, we would have to conclude that that the requisite settlement conference did not satisfy Ind. Code § 32-30-10.5-9, which would directly contradict the findings of the Indiana Court of Appeals.  Federal review of such is expressly prohibited under the *Rooker-Feldman* doctrine.  *See Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) (holding that if the defendant was not the proper owner of the judgment, then the plaintiff was entitled to a decision in his favor; however, no injury occurred until

21

the state court ruled against plaintiff and such claims are thus barred by *Rooker-Feldman*).
These claimed violations of Indiana statute are thus subject to dismissal.

### F.    Plaintiff's Tort Claims.

Plaintiff also asserts claims for negligent/intentional infliction of emotional distress,
civil conversion, and negligence.  Mains contends that "the activity and conduct alleged
throughout this complaint is a deliberate attempt by Defendants to destroy the credit or
interfere with their property ownership including their peaceful enjoyment thereof and is
actionable."  [FAC ¶ 141 (emotional distress).]  Mains claims that he was harmed "by
making payments to incorrect parties, that . . . were not applied to the Mains' benefit" and
that the Defendants were unjustly enriched, all the result of the Defendants' allegedly false
representations.  [*Id.* ¶¶ 147-52 (negligent misrepresentation claim).]  In his negligence
claim (count seven), Mains challenges the Defendants' assertion that they are the proper
parties in interest in Mains's mortgage transaction and accuses Defendants of "falsely
creat[ing] a customer relationship with Defendant [sic]."  [*Id.* ¶ 175.]  According to Mains,
"Defendants were negligent throughout the handling of Mains' loan payments, reporting
of his transaction and the foreclosure process,"  all of which caused him to suffer various
forms of harm.  [*Id.* ¶¶ 176-77.]  In his civil conversion claim based on Ind. Code § 35-43-
4-3 (count 10), Mains seeks "recoupment" of the payments he was "tricked" into making
to Defendants and the attorney's fees he incurred to "stop defendants [sic] unauthorized
foreclosure action."  [*Id.* ¶ 219.]  Mains argues that his emotional distress "claim also
passes Rooker-Feldman [sic] test because it asserts a Claim for relief outside the scope of
the state court judgment."  [*Id.* ¶ 143.]

Citibank contends that each of Plaintiff's tort claims is "predicated on, again, the assertion that Citibank and Chase were not the true holders or servicers of Plaintiff's loan." [Dkt. No. 103 at 10 (citing FAC ¶¶ 137, 147, 158-59, 164, 175, 218).]  According to Citibank, "[a]ll of these counts attack the [judgment] of foreclosure" because Plaintiff asserts that Citibank "harmed him by enforcing the loan documents," which is what the State Court Judgment resolved.  [*Id.*]

In response to Citibank's motion to dismiss, Mains defends his tort claims to two brief paragraphs [*see* Dkt. No. 114 at 18], arguing that he "is not attacking the foreclosure judgment.  The damages incurred would have occurred regardless of the foreclosure judgment.  Mains [sic] damages were not caused by Defendants enforcing their rights under loan documents, Mains['] damages were caused by Defendants['] illegal and fraudulent conduct, something that is not a right under any loan contract."  [*Id.*]

To prevail on his tort claims, the Court must find that Defendants had no right to payment under the mortgage or to foreclose the mortgage.  Negligence, whether it be the infliction of emotional distress or making misrepresentations or committing conversion, cannot be deemed to have occurred without a determination that the State Court got it wrong when it issued a foreclosure order.  A finding that Mains was harmed by his making payments to incorrect parties or incurring attorneys' fees thereby justifying an order of recoupment, in Plaintiff's words, to "stop Defendants['] unauthorized foreclosure action" requires that the State Court Foreclosure Judgment be overturned.  Mains's tort claims plainly seek to address an injury that has arisen directly from the State Court Judgment. The *Rooker-Feldman* doctrine instructs us to steer clear from entertaining such claims.

### G.    Indiana Common Law Fraud Claim (Count Six).

Mains asserts a common law fraud claim, alleging that Defendants misrepresented their rights to collect any alleged debt or to enforce the promissory note and mortgage. [FAC ¶¶ 158-59.]  These misrepresentations, according to Mains, caused him to believe the Defendants were collecting on a legitimate debt, which was a deception perpetrated against both Mains and the legal system.  [*Id.* ¶¶ 160-61.]  Mains also claims that Citibank as trustee for the WAMU HE-2 Trust "surreptitiously, purposely and intentionally tricked the Mains into defending against a lawsuit claiming that it was a controlling entity in the transaction by colluding with Chase bank."  [*Id.* ¶ 166.]  Further, he contends that Black Knight misused software and records to interfere with his right to quiet enjoyment of his property.  [*Id.* ¶ 167.]

The Seventh Circuit has explicitly ruled that "the proper court for an assertion of fraud in the procurement of a judgment is the one which rendered the judgment." *Kamilewicz*, 92 F.3d at 511 (affirming the district court's dismissal based on the *Rooker-Feldman* doctrine).  To succeed, Plaintiff's fraud claim, like the others before it, must obviate the necessity of a finding that the State Court erred in awarding judgment to the lender.  Mains argues that "Defendant's [sic] fraud and negligence provided the basis for a lawsuit that otherwise would have been prohibited for lack of foundation."  [Dkt. No. 43 at 8.]  He seeks our concurrence in his theory that  he was damaged by the State Court Judgment on the grounds that Defendants had no right to pursue the foreclosure action. This type of claim, as we have noted previously, is quintessentially that sort that is barred by the *Rooker-Feldman* doctrine.  Federal district courts must decline to entertain "cases

brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance*, 546 U.S. at 464.

In a last ditch effort to stave off dismissal, Mains argues that Defendants "wrongfully conceal[ed] their actions so that claims were not able to be brought in a state venue." [*See* Dkt. No. 43 at 7; Dkt. No. 61 at 5 (alleging that Mains suffered damages "as a result of Defendants['] action in bringing a foreclosure lawsuit they lacked the right to bring"); FAC ¶ 165 ("The scheme, . . . brought all sorts of issues into the contractual relationship which were not explained and were in fact, concealed.").] Mains relies on a the Seventh Circuit opinion, *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014), in arguing that "Defendants helped to wrongfully conceal their actions so that claims were not able to be brought in a state venue further affirm the standing and venue for which Mains has brought his Complaint." [Dkt. No. 43 at 7.] In *Johnson*, the Court held that the *Rooker-Feldman* doctrine did not ban a federal suit seeking damages for fraud that resulted in an adverse judgment against plaintiff. The Court reasoned that such a suit does not require disturbing the state court judgment, but rather, seeks damages for unlawful conduct that the led to the judgment. *Id*.

The Seventh Circuit has recently revisited the *Johnson* holding in its decision in *Iqbal v. Patel*, 780 F.3d 728 (7th Cir. 2015). In that case, the Seventh Circuit described *Johnson*'s holding as establishing a rule that "fraud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit." *Id.* at 730. The Court summarized its holding, as follows:

25

> In other words, if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction – but only to the extent of dealing with that injury. As we wrote in *Johnson,* the federal court cannot set aside the state court's judgment.

*Id.* The material fact that Mains contends was fraudulently concealed by Defendants, to wit, that Defendants had no right to collect on Mains's mortgage and note, was raised in the State Court Foreclosure Action and rejected by the State Court.  To the extent Mains seeks to recover on those same grounds – that the Defendants had no right to pursue litigation – the *Rooker-Feldman* doctrine divests us of jurisdiction to consider that claim or to trump or otherwise erode the State Court Foreclosure Judgment.

Although Mains characterizes his claims as those he "reserved" for a federal court venue during the pendency of the State Court Action, this argument is unsupported in his FAC.  [*See contra* Dkt. No. 43 at 7.]  Mains's fraud claim does not allege an out-of-court event that caused an injury which the state court failed to detect and repair.  Rather, Mains alleges that Defendants "did not and do not legally have the right to collect any alleged debt of the Plaintiff or enforce any alleged security interest" and as a result,[12] Defendants deceived him and the legal system.  [FAC ¶¶ 159, 162.]  Mains's fraud allegations posit that he was injured by Defendants' lack of a legal right to collect the debt.  The State Court

---

[12] More to the point, Mains argues that he "has clearly not asked the federal court to set aside a state court action in his case, especially one that is now rendered moot in its effect by Mains' valid rescission."  [Dkt. No. 43 at 8.]  Mains's characterization of this action is simply incorrect.  His FAC, filed *after* his alleged TILA rescission, specifically requests "rescission." [FAC ¶ 230(a).]  Mains seeks to have us derogate from the State Court Judgment by finding that he rescinded his mortgage and thus, the State Court's foreclosure of his mortgage was incorrect. This we cannot do as we have now stressed on several occasions and contexts in this opinion.

26

held that Citibank *did* have a legal right to collect the debt from Mains and to foreclose its security interest in the property.  To conclude that Defendants committed fraud, would entail a contradiction of the State Court Judgment.  The *Rooker-Feldman* doctrine directs us to dismiss such claims for lack of jurisdiction.

**H.    Violations of Fair Debt Collection Practices Act (Count Eight).**

Mains next alleges that Defendants violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692c.  The FDCPA regulates the manner in which debt collection may be undertaken.  Specifically, the FDCPA prohibits a debt collector from making false, deceptive, or misleading representations in connection with the collection of any debt.  *Id.* § 1692(e).  Although the FAC does not identify the specific communication(s) that allegedly violated the FDCPA, Mains contends in this brief that Defendants "engaged in their multiple and continuing attempts to collect upon Mains['] note and mortgage prior to and post rescission, conduct which were [sic] distinct events and separate violations of the FDCPA due to the prohibited nature of the conduct under the act . . . ."  [FAC ¶ 182.]  He further alleges that Defendants "used false, deceptive, or misleading representations or means to collect money from Mains and attempt to encumber or seize his property when they knew they had no right to do so due to defective and falsified documents."  [*Id.* ¶ 187.]

Based on a generous reading of the FAC, Mains may be claiming that Defendants violated the FDCPA in communicating with Mains *after* the State Court Judgment as well as *before* or *during* the proceedings out of which the State Court Judgment came.  In alleging that Chase, N&F, and Wyatt are "debt collectors", as defined by the FDCPA,

Mains points to FAC Exhibits 3, 16, and 17. Exhibit 3 (Dkt. No. 23-3) is a letter from Washington Mutual dated March 9, 2009 stating its intent to accelerate the mortgage prior to the State Court Judgment; however, Mains does not allege that this letter constitutes evidence of a violation of the FDCPA. [FAC ¶ 183, Ex. 3.] Exhibit 16 (Dkt. No. 23-13) is a series of letters from Chase dated in February, 2015, after the entry of the State Court Judgment, in which Chase communicated with Mains regarding his request for mortgage assistance. [*Id.* at Ex. 13.] Finally, Exhibit 17 (Dkt. No. 23-14) is a March 23, 2015 letter from Wyatt, Chase's attorney, rejecting Mains's February 27, 2015 post-State Court Judgment TILA rescission. [*Id.* at Ex. 14.]

Confusingly, Mains's allegations relate to his purported February 27, 2015 TILA rescission in reference to Defendants' conduct occurring both during and after the State Court Action. Mains alleges that Wyatt and Chase "knew a rescission had been issued by Mains and no right to collect existed, and yet they willfully ignored the rescission notice, ignored the court's jurisdiction, and maliciously stated their intent to continue with foreclosure on Mains' home." [FAC ¶ 187.] This allegation suggests that his FDCPA claim is rooted in actions that occurred both during and after the State Court Action. [*See id.* at ¶ 185 (alleging that defendants "knew the right to collect the debt was invalid due to the defective and falsified documents"); *id.* ¶ 191 (alleging that Chase "fail[ed] to cease its communications with Mains and [tried] to collect a debt that no longer existed via the notice it sent," after Mains rescinded the mortgage); Dkt. No. 114 at 19.] Similarly, Mains contends that Chase violated the FDCPA "by sending a notice that instead of recognizing Mains' lawful rescission, falsely represented the legal status of the debt as still active, that

their home could still be foreclosed on, that they could modify a debt that no longer existed (OR that they had any right to modify in the first instance), and using threats that their agent law firm(s) . . . could still legally proceed with sheriff's sale." [FAC ¶ 191; *see* Dkt. No. 23-14]

If Mains's FDCPA claims had ripened prior to entry of the State Court Judgment and were independent of that Judgment, they would not be barred by the *Rooker-Feldman* doctrine. The court in *Hochstetler v. Federal Home Loan Mortgage Corporation* considered this issue, holding:

> Plaintiffs' claims made under the Fair Debt Collection Practices Act (FDCPA) pass the *Rooker–Feldman* bar. The FDCPA provides a form of relief that can be granted without setting aside the judgment of foreclosure. The FDCPA in § 1692k provides relief for damages as allowed at common law, additional damages up to $1,000, and court costs. Thus, as long as the alleged violations of the FDCPA were complete before the state court judgment, this Court would be able to provide relief for those violations. The claims also allege injury before the foreclosure action. As a result this Court cannot dismiss these claims pursuant to the *Rooker–Feldman* doctrine.

No. 3:12-CV-772-JVB, 2013 WL 3756502, at *4 (N.D. Ind. July 16, 2013) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir. 1999)). But here, the FAC explicitly alleges that Defendants violated the FDCPA *after* entry of the State Court Judgment and in conjunction with the collection of that judgment, which Mains contends was invalid. Based on the FAC allegations, therefore, Mains's FDCPA claims are not independent of the State Court Judgment and were not complete prior to the State Court Judgment.

Although Mains's FAC lacks clarity, the crux of his claim appears to be that Defendants violated the FDCPA when they ignored his TILA rescission. [Dkt. No. 114 at 11.] Summarizing his FDCPA allegations, Mains contends that Defendants' "violations

post his rescission and filing of his federal complaint" violated the FDCPA. [*Id.*] The *Rooker-Feldman* doctrine divests us of jurisdiction over FDCPA claims based on the collection of state court judgments where the plaintiff fails to demonstrate that he was barred from raising this contention in state court. *Witt v. Westfield Acceptance Corp.*, No. IP 00-1001-C S/H, 2002 WL 826372, at *3 (S.D. Ind. Mar. 25, 2002) (citing *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, No. 00 C 4511, 2001 WL 1543516, at *10-11 (N.D. Ill. Nov. 30, 2001)). Typically, the situations in which the *Rooker-Feldman* bar is inapplicable are those where "either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court." *Long*, 182 F.3d at 558. No such impediment has been alleged here. We therefore lack jurisdiction to consider Plaintiff's FDCPA claim here.

## I.   Violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count Nine).

In Count Nine of the FAC, Mains asserts a RICO claim against Defendants. The RICO Act provides civil remedies for persons injured by a pattern of racketeering activity "or through collection of an unlawful debt in which such person has participated as a principal." 18 U.S.C. §§ 1962, 1964. Mains alleges that "Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing enterprise which committed fraudulent acts and attempted to collect on unlawful debt from Mains within the meanings of the RICO statutes." [FAC ¶ 203.] Mains complains that Defendants collected loan payments they did not have a right

to collect and transferred money they knew to be stolen, converted, or taken by fraud. [*Id.*] It is Mains's position that N&F was responsible for "prosecuting the sham litigation in Mains' foreclosure action" and that Chase and Citibank "directed the prosecution to try to collect this unlawful debt in the name of the WAMU HE-2 Trust." [*Id.* ¶ 204.] Mains insists that "[i]f Defendants had no right to file the foreclosure action, it makes no difference whether Mains previously had defaulted on his mortgage and note as they claim." [*Id.* ¶ 211.] In an effort to position this claim outside the restrictions of the *Rooker-Feldman* doctrine, Mains argues that the state court was not aware of the fraud when it reached its decision and seeks damages resulting from Defendants' "attempts to collect unlawful debt from him." [*Id.* ¶¶ 211-12.]

For all of the reasons explicated fully above, Mains' RICO claim runs afoul of the *Rooker-Feldman* bar. To find that a conspiracy to defraud Mains existed among the Defendants requires a finding that the State Court erred in ruling in favor of the Defendants by ordering the foreclosure of Mains's mortgage. To grant Mains relief for "Defendants' attempts to collect unlawful debt from him," we would have to determine that the State Court Judgment was erroneous and that Citibank and Chase were not the proper holders of the loan and had no entitlement to the debt. A claim seeking such relief is prohibited by the *Rooker-Feldman* doctrine.

## II.     Remaining Bases for Defendants' Motions to Dismiss.

Finally, Defendants move to dismiss the FAC on various other grounds, including res judicata, lack of standing, violation of Federal Rules of Civil Procedure 8 and 9, and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Based

on our conclusion that the *Rooker-Feldman* doctrine bars Mains's substantive claims, we also lack jurisdiction to consider Defendants' affirmative defenses. *Taylor*, 374 F.3d at 535 ("We have held that '[w]here *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata. . . . [W]e . . . recognize[] that the *Rooker-Feldman* doctrine should not be confused with res judicata (which we sometimes term 'preclusion') and that where *Rooker-Feldman* applies, the res judicata claim must not be reached.'") (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).   Consequently, we shall not, indeed, we cannot, consider Defendants' remaining defenses.

## Conclusion

For the foregoing reasons, we GRANT the following motions WITH PREJUDICE:

- Dkt. No. 29 – Defendant Black Knight Financial Services, LLC's Motion to Dismiss

- Dkt. No. 38 – Defendant Bose McKinney & Evans, LLP's Motion to Dismiss

- Dkt. No. 41 – Nelson & Frankenberger, P.C.'s Motion to Dismiss

- Dkt. No. 86 – Wyatt, Tarrant & Combs LLP's Motion to Dismiss

- Dkt. No. 102 – Chase Bank, N.A. and Citibank, N.A.'s Motion to Dismiss

Based on the *Rooker-Feldman* doctrine, we lack federal subject matter jurisdiction over all of Plaintiff's claims.  All other pending motions are DENIED as moot.[13]  Final judgment shall enter accordingly.


Date:  __3/31/2016__                        _Sarah Evans Barker_____

                                                 SARAH EVANS BARKER, JUDGE
                                                 United States District Court
                                                 Southern District of Indiana

---

[13] Cynthia Riley filed a separate Motion to Dismiss on the basis that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") bars courts from exercising jurisdiction over claims based on acts or omissions of depository institutions that have been placed in receivership by the Federal Deposit Insurance Corporation ("FDIC") and the court lacks personal jurisdiction over her on the grounds that she has no connection with the State of Indiana.  [Dkt. No. 52.]  This motion is denied as moot.

Distribution:

Jonathan Michael Schulte
jon@smithcarpenterlaw.com

Kathleen L. Matsoukas
BARNES & THORNBURG LLP
kmatsoukas@btlaw.com

Kyle W LeClere
BARNES THORNBURG LLP.
kleclere@btlaw.com

Fred O. Goldberg
BERGER SINGERMAN LLP
fgoldberg@bergersingerman.com

Nathan T. Danielson
BOSE MCKINNEY & EVANS, LLP
ndanielson@boselaw.com

Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com

Jordan S Huttenlocker
DYKEMA GOSSETT
jhuttenlocker@dykema.com

Louis S Chronowski, Jr
DYKEMA GOSSETT PLLC
lchronowski@dykema.com

Michael A. Dorelli
HOOVER HULL TURNER LLP
mdorelli@hooverhullturner.com

Patrick A. Ziepolt
HOOVER HULL TURNER LLP
pziepolt@hooverhullturner.com

Derek R. Molter
ICE MILLER LLP
derek.molter@icemiller.com

Thomas Eugene Mixdorf
ICE MILLER LLP
thomas.mixdorf@icemiller.com

Jonathan M. Weiss
KIRKLAND & ELLIS LLP
jonathan.weiss@kirkland.com

Amanda Warford Edge
WYATT TARRANT & COMBS
(Louisville)
aedge@wyattfirm.com